**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>Optim Energy, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 14-10262 (BLS)<br><br>(Jointly Administered)<br><br>**Hearing Date: June 12, 2014 at 10:00 a.m. (ET)**<br>**Objections Due: June 3, 2014 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE AND SOLICIT VOTES ON CHAPTER 11 PLANS**

Optim Energy, LLC ("***Optim Energy***") and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "***Debtors***") hereby submit this motion (the "***Motion***") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "***Order***"), pursuant to section 1121(d) of title 11 of the United States Code (the "***Bankruptcy Code***"), extending the periods during which the Debtors have the exclusive right: (i) to file chapter 11 plans (the "***Exclusive Filing Period***") through and including October 10, 2014; and (ii) to solicit acceptances thereof (the "***Exclusive Solicitation Period***" and, together with the Exclusive Filing Period, the "***Exclusive Periods***") through and including December 9, 2014. In support of this Motion, the Debtors respectfully represent:

[1] The Debtors in these chapter 11 cases are: Optim Energy, LLC; OEM 1, LLC; Optim Energy Cedar Bayou 4, LLC; Optim Energy Altura Cogen, LLC; Optim Energy Marketing, LLC; Optim Energy Generation, LLC; Optim Energy Twin Oaks GP, LLC; Optim Energy Twin Oaks, LP. The Debtors' main corporate and mailing address for purposes of these chapter 11 cases is: c/o Competitive Power Ventures, Inc., 8403 Colesville Road, Suite 915, Silver Spring, MD 20910.

**Preliminary Statement**

1. Based on the Petition Date (defined below), the current Exclusive Filing Period under section 1121(b) of the Bankruptcy Code extends through June 12, 2014, and the current Exclusive Solicitation Period under section 1121(c)(3) of the Bankruptcy Code extends through August 11, 2014, absent further orders of this Court.

2. The Debtors have made substantial progress in these chapter 11 cases and continue to work on matters relating to their reorganization. Since the Petition Date, the Debtors have devoted significant resources and efforts to, among other things: (i) obtain "first day" and other relief; (ii) review their books and records to assemble and file with the Court their schedules of assets and liabilities and statements of financial affairs (collectively, the "***Schedules***"); (iii) review potential executory contracts and unexpired leases, including the Standard Market Form Participation Agreements with Electric Reliability Council of Texas, Inc. ("***ERCOT***"), to determine whether it is in the best interests of the Debtors' estates to assume or reject them; (iv) negotiate with the Robertson County Appraisal District regarding the proper tax assessment of the Twin Oaks Plant for the 2013 and 2014 tax years; (v) manage a comprehensive process to sell the Twin Oaks Plant; (vi) negotiate and enter into a stipulation with Walnut Creek Mining Company ("***Walnut Creek***") to resolve Walnut Creek's motion to compel adequate assurance of performance from the Debtors regarding the Debtors' obligations under the Fuel Supply Agreement; (vii) negotiate and enter into a stipulation with NRG Cedar Bayou Development Company, LLC and NRG Texas Power LLC (together, the "***NRG Entities***"), which authorizes the Debtors, among other things, to set off certain amounts and enter into new confirmations for the sale of gas generated by the Cedar Bayou Plant; (viii) implement a key employee incentive program; and (ix) respond to a voluminous discovery request and a standing motion from Walnut Creek.

3. In light of the Debtors' significant progress made to date in these chapter 11 cases, and especially considering the extraordinary time commitments required to sell the Twin Oaks Plant and manage discovery and ongoing litigation with Walnut Creek,[2] the Debtors respectfully submit that additional time is reasonably necessary to allow the Debtors to continue to develop restructuring alternatives and propose a chapter 11 plan or plans and solicit acceptances thereof free of any interference from creditors or other parties in interest. Accordingly, the Debtors seek to extend the Exclusive Filing Period through and including October 10, 2014 to correspond with the DIP Milestones (defined below) present in these chapter 11 cases, and the Exclusive Solicitation Period through and including December 9, 2014.

**Jurisdiction**

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The basis for the relief requested herein is section 1121(d) of the Bankruptcy Code.

**Background**

7. On February 12, 2014 (the "***Petition Date***"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

8. The Debtors are power plant owners principally engaged in the production of energy in Texas' deregulated energy market through three power plants with an aggregate output of more than 1200 megawatts. The depressed and changing economic environment of the

[2] On May 13, 2014, the Court entered its *Order* (D.I. 289) and *Opinion* (D.I. 288) regarding Walnut Creek's standing motion, ruling that Walnut Creek does not have standing to challenge the characterization of the Debtors' prepetition secured indebtedness. On May 14, 2014, Walnut Creek appealed this Court's ruling (D.I. 296).

electric power industry—particularly with respect to coal-fired plants—and the Debtors' continuous liquidity constraints culminated in aggregated and continuing losses requiring the Debtors to file voluntary petitions under the Bankruptcy Code.

9. The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee of unsecured creditors has been appointed in the Debtors' cases.

10. A full description of the Debtors' business, corporate structure, prepetition indebtedness, and events leading to these chapter 11 cases is set forth in the *Declaration of Nick Rahn, Chief Executive Officer of Optim Energy, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* (D.I. 4) (the "***First Day Declaration***"),[3] which was filed on the Petition Date and incorporated herein by reference.

**Relief Requested**

11. By this Motion, the Debtors respectfully request entry of the Order, pursuant to section 1121(d) of the Bankruptcy Code, extending: (a) the Exclusive Filing Period through and including October 10, 2014;[4] and (b) the Exclusive Solicitation Period through and including December 9, 2014. The Debtors reserve their right to request further extensions of the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

[3] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

[4] Reference is made to that certain Senior Secured Debtor in Possession Credit, Security, and Guaranty Agreement, dated as of February 12, 2014 (as amended, restated, supplemented or otherwise modified from time to time, the "***DIP Credit Agreement***"), among Optim Energy, as Borrower, the entities party thereto as Guarantors, the entities from time to time party thereto as Lenders and Wells Fargo Bank, National Association, as the Agent and the L/C Issuer. Pursuant to Section 12.1 of the DIP Credit Agreement, it is an event of default if the Debtors fail to meet certain agreed upon milestones relating to progress of these chapter 11 cases as to asset sales and/or a plan of reorganization (the "***DIP Milestones***"). The DIP Milestones were since extended pursuant to that certain *Notice of Amendment to DIP Milestones and Appointment of Independent Director* (D.I. 222). The DIP Milestones require the Debtors to file a plan and disclosure statement with the Court, in each case in a form acceptable to the Majority Lenders under the DIP Credit Agreement, no later than October 10, 2014. The Debtors respectfully request an extension of the Exclusive Filing Period through and including this date.

**Basis for Relief**

12. The Exclusive Periods under sections 1121(b) and 1121(c)(3) of the Bankruptcy Code are intended to afford a debtor the opportunity to propose a chapter 11 plan and to solicit acceptances of such a plan without the disruption to a debtor's business operations caused by competing plans from non-debtor parties. "[T]he point of exclusivity is 'to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated.'" *In re Burns & Roe Enters., Inc.*, CIV.A. 05-2529 (KSH), 2005 WL 6289213, *4 (D.N.J. Nov. 2, 2005) (quoting H.R. Rep. No. 103-835, at 36 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3344)). Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a plan. *See* 11 U.S.C. § 1121(b). Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor proposes and files a plan within the initial 120-day exclusive period, the debtor then has until 180 days after the commencement of the chapter 11 case to solicit and obtain acceptances of such plan. *See id.* § 1121(c)(3).

13. However, pursuant to section 1121(d)(1) of the Bankruptcy Code, "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d)(1). Such extensions are capped, however, by section 1121(d)(2) of the Bankruptcy Code, which limits any extension of the exclusive filing period to 18 months after the chapter 11 filing and any extension of the solicitation period to 20 months after the chapter 11 filing. *See id.* § 1121(d)(2)(A)-(B). By this Motion, the Debtors seek an extension of the Exclusive Periods well short of the maximum allowable under section 1121(d)(2) of the Bankruptcy Code.

14. The decision to extend exclusive filing and solicitation periods is left to the sound discretion of the bankruptcy court and should be based on the facts and circumstances of each particular case. *See, e.g.*, *First Am. Bank of New York v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *see also In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *In re Reetz*, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). Although the Bankruptcy Code does not define the term "cause," the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. 95-595, at 232 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191; *see also In re Public Serv. Co. of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent . . . [is] to promote maximum flexibility to suit various types of reorganization proceedings."). To facilitate this legislative intent, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors. *See, e.g., McLean*, 87 B.R. at 833-34; *see also In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128, 133 (D.N.J. 1995); *In re Texaco, Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

15. In exercising their discretion to extend exclusivity, courts consider a variety of factors including: (a) the size and complexity of the case; (b) the necessity of sufficient time to negotiate and prepare adequate information; (c) whether the debtor is paying its debts as they come due; (d) whether creditors are prejudiced by the extension; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress negotiating with creditors; (g) the length and time a case has been pending; (h) whether

the debtor is seeking an extension to pressure creditors; and (i) whether or not unresolved contingencies exist. *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (citing *Dow Corning*, 208 B.R. at 664), *aff'd*, 342 B.R. 122 (S.D.N.Y. 2006); *see also In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002).

16. When a court considers the enumerated factors in deciding whether to grant an exclusivity extension, it is not limited to the task of counting factors. *Dow Corning*, 208 B.R. at 669. Not all factors are relevant to every case and courts tend to use a relevant subset of the above factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See, e.g.*, *Express One Int'l*, 194 B.R. at 100 (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *see also Texaco*, 76 B.R. at 327 (finding size and complexity of cases sufficient to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two factors in holding that cause existed to extend exclusivity).

**Cause Exists to Extend the Exclusive Periods**

17. Ample "cause" exists to extend the Exclusive Periods by the requested 120 days. Each of the relevant factors weighs in favor of an extension.

**A. The Debtors' Chapter 11 Cases Are Complex.**

18. Both Congress and the courts have recognized that the size and complexity of a debtor's case alone may constitute cause for the extension of a debtor's exclusive period to file a plan and the period to solicit acceptances of such a plan. The legislative history provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep.

95-595, at 232 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191. In fact, the size and complexity of a chapter 11 case is the basis upon which courts most commonly grant extensions. *See, e.g.*, *Express One Int'l*, 194 B.R. at 100 ("The traditional ground for cause is the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization." (citing *Pine Run Trust*, 67 B.R. at 435)); *see also Texaco*, 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."(citations omitted)).

19. These chapter 11 cases involve eight Debtors with significant assets, substantial secured debt and myriad unsecured creditors. As described above, since the Petition Date the Debtors have devoted significant resources and efforts to achieving a successful transition into chapter 11 by, among other things: (a) obtaining "first day" and other relief; (b) reviewing their books and records in order to assemble and file with the Court their Schedules; and (c) reviewing potential executory contracts and unexpired leases, including the Standard Market Form Participation Agreements with ERCOT, to determine whether it is in the best interests of the Debtors' estates to assume or reject them.

20. In addition to these traditional bankruptcy tasks, the Debtors have spent considerable time since the Petition Date focusing on case-specific tasks, including: (a) negotiating with the Robertson County Appraisal District regarding the proper tax assessment of the Twin Oaks Plant for the 2013 and 2014 tax years; (b) managing a comprehensive process to sell the Twin Oaks Plant; (c) negotiating and entering into a stipulation with Walnut Creek to resolve Walnut Creek's motion to compel adequate assurance of performance from the Debtors regarding the Debtors' obligations under the Fuel Supply Agreement; (d) negotiating and

entering into a stipulation with the NRG Entities, which authorizes the Debtors, among other things, to set off certain amounts and enter into new confirmations for the sale of gas generated by the Cedar Bayou Plant; (f) implementing a key employee incentive program; and (g) responding to a voluminous discovery request and a standing motion from Walnut Creek.

21. Accordingly, the size, circumstances, and complexity of the Debtors' chapter 11 cases, and the Debtors' progress to date meeting their obligations as debtors in possession constitute sufficient evidence standing alone to warrant the requested extension of the Exclusive Periods.

**B. The Debtors Are Making Good Faith Progress In These Chapter 11 Cases.**

22. As already demonstrated, the Debtors have made substantial good faith progress in these chapter 11 cases already, and they continue to work diligently each day to move these chapter 11 cases towards a successful resolution. With respect to the "first day" motions mentioned above, the Debtors submitted a variety of motions and obtained related relief resulting in orders authorizing, *inter alia*: (a) a program to preserve relations with certain critical vendors; (b) adequate assurance of future performance to utility companies to avoid disruptions in service; (c) payment of prepetition taxes and fees; (d) borrowings under the DIP Credit Agreement; (e) comfort for certain energy trading contract counterparties that the Debtors would honor their obligations to these constituents postpetition pending the decision to assume or reject their contracts; (f) the filing of a consolidated list of creditors; (g) an extended deadline for filing the Debtors' Schedules; and (h) joint administration of these chapter 11 cases. Furthermore, the Debtors obtained related relief authorizing them to retain bankruptcy counsel, local bankruptcy counsel, financial and restructuring advisors, tax and audit professionals and a variety of ordinary course professionals who have provided services to the Debtors in the past. Additionally, the Debtors have devoted considerable time and effort reviewing their books and

records to prepare for their initial interview and the 341 meeting conducted by the United States Trustee, as well as to assemble and file with the Court their Schedules, the initial operating report and monthly operating reports.

23. The Debtors have also been heavily involved in the sale of the Twin Oaks Plant, including but not limited to drafting the asset purchase agreement, preparing bid procedures and a related motion to sell the plant pursuant to section 363 of the Bankruptcy Code, conducting management presentations and plant tours, and participating in due diligence activities with a large universe of interested parties. This has required a considerable amount of the Debtors' time and resources, as evidenced by the extension of the DIP Milestones related to the sale process by an additional 30 days.

24. In addition to the foregoing, the Debtors have spent significant time managing their business operations on a number of fronts essential to their reorganization efforts. For instance, the Debtors have entered into stipulations with Walnut Creek and the NRG Entities resolving key operational issues affecting the Debtors as going concerns. The Debtors have worked consensually with ERCOT to assume the Standard Market Form Participation Agreements that authorize the Debtors to sell the electricity generated by the Altura Cogen Plant and the Twin Oaks Plant to the public through ERCOT. The Debtors have been negotiating with the Robertson County Appraisal District regarding the proper tax assessment of the Twin Oaks Plant for the 2013 and 2014 tax years.

25. The Debtors have also filed a motion, which this Court has granted, to establish the claims bar date in order to determine fully the potential claimants in these chapter 11 cases. The general bar date in these cases is June 18, 2014, after which the Debtors will immediately

begin a comprehensive review of the claims filed in these cases to begin the reconciliation process necessary to formulating a plan of reorganization.

26. Through all of the above initiatives, the Debtors submit they have worked diligently and in good faith towards an expeditious resolution of these chapter 11 cases. The Debtors respectfully submit that this factor weighs in favor of the Debtors' requested extension of the Exclusive Periods.

**C. Little Time Has Elapsed In These Chapter 11 Cases.**

27. As of the date of this Motion, the Debtors have been in bankruptcy approximately 90 days. While the Debtors have made significant strides, there is much work left to be done—in particular regarding the sale of the Twin Oaks Plant and development and negotiation of chapter 11 plans. This is the Debtors' first motion to extend the Exclusive Periods. The Debtors anticipate with the requested extension that they will be able to file a chapter 11 plan or plans that meet the confirmation requirements of the Bankruptcy Code. Given little time has elapsed since the Petition Date, the Debtors respectfully submit this factor weighs in favor of an extension of the Exclusive Periods.

**D. The Debtors Have Had Insufficient Time To Negotiate A Plan Of Reorganization.**

28. Based on the foregoing discussion, there should be little doubt that the Debtors have not yet been afforded sufficient time to negotiate a plan of reorganization or prepare adequate information for a disclosure statement. As just described, the Debtors have only been in bankruptcy a short while. The Debtors have been focused on traditional chapter 11 issues while managing negotiations, discovery and litigation with their key constituents. The Debtors have also been acutely focused on the sale of the Twin Oaks Plant.

29. Congress intended a debtor's exclusivity period "to provide for an opportunity for the debtor to negotiate with its constituents and reach a consensual plan, a successful plan."

*In re Innkeepers USA Trust*, 442 B.R. 227, 234 (Bankr. S.D.N.Y. 2010). Due to the limited passage of time and the plethora of activities consuming the Debtors' time, the Debtors have had insufficient time to negotiate reorganization plans. The Debtors respectfully submit that the requested extension of the Exclusive Periods will afford them sufficient time to formulate, negotiate and file chapter 11 plans in these cases for the benefit of their creditors and parties in interest. This factor surely weighs in favor of the requested extension, considering the significant achievements by the Debtors to date and their expressed commitment to develop, and file, a chapter 11 plan or plans in an expeditious manner.

**E. The Requested Extension Will Not Harm Creditors.**

30. An extension of the Exclusive Periods will not harm creditors, particularly where the Debtors are meeting all administrative obligations as they come due. To the contrary, allowing the Exclusive Periods to lapse now would defeat the very purpose of section 1121 and deprive the Debtors and their creditors of the benefit of a meaningful and reasonable opportunity to negotiate and propose and confirm a consensual plan of reorganization. Furthermore, allowing the Exclusive Periods to lapse now may have materially negative implications for the ongoing sale of the Twin Oaks Plant to the detriment of all stakeholders.

31. The Debtors will use the requested extension to pursue additional strategic transactions, complete a review of their executory contracts and unexpired leases, review and prosecute claims filed against the Debtors after the bar date has passed and engage in discussions with their secured lender and other key constituents regarding the parameters of a chapter 11 plan or plans. Affording the Debtors ample time to complete these initiatives and formulate and file a plan or plans of reorganization in a coordinated fashion free of outside influence is in the best interests of all creditors of these estates.

32. For this reason, the Debtors have conferred with counsel to their secured lender in these chapter 11 cases and, following appropriate discussion and consultation, the secured lender has no objection to the relief requested. This factor merits extension of the Exclusive Periods due to a lack of potential creditor harm that will ensue.

**F. The Debtors Are Paying Their Debts As They Come Due.**

33. The Debtors are paying their postpetition debts as they come due. The availability of borrowings under the DIP Credit Agreement provides added assurance that the Debtors will continue to meet their postpetition obligations to operate their businesses in the ordinary course. An extension of the Exclusive Periods will not harm the many creditors and other parties with whom the Debtors transact business. The Debtors submit this factor weighs in favor of an extension of the Exclusive Periods.

**G. The Debtors Have Reasonable Prospects For Filing A Viable Plan.**

34. As described above, the Debtors have been focused on typical chapter 11 responsibilities while at the same time pursuing value-creation measures. The Debtors have not yet had the opportunity to demonstrate their ability to file a viable chapter 11 plan or plans. The Debtors will use the next four months to do just that. Without an extension of the Exclusive Periods, another party in interest could use the opportunity to file a competing plan—even a truly unworkable plan—to interrupt the Debtors' efforts. An intervening party may file a plan (even an unviable one) merely to gain unfair leverage over the Debtors by forcing the Debtors to devote substantial time, money and human resources to defeat such a plan. Thus, providing the Debtors with additional time to formulate their plans and to obtain acceptances thereof is in the best interests of the Debtors, their estates, and their creditors. This factor weighs in favor of the requested extension of the Exclusive Periods.

**H. The Debtors Have Made Progress Negotiating With Their Creditors.**

35. As mentioned, the Debtors have not yet had an opportunity to negotiate meaningfully with their creditors regarding chapter 11 plans. However, the Debtors have exhibited an ability to negotiate effectively with key constituents on matters of importance to the estates. The Debtors entered into stipulations with Walnut Creek and the NRG Entities ameliorating these parties' concerns over certain issues. The Debtors have been engaged in ongoing discussions with the Robertson County Appraisal District regarding the appropriate appraisal value of the Twin Oaks Plant for the 2013 and 2014 years. The Debtors filed a consensual motion to assume the Standard Market Form Participation Agreements with ERCOT that will facilitate the Debtors' ongoing operations in this market as going concerns. All the while, the Debtors have been marketing the sale of the Twin Oaks Plant while satisfying the day-to-day tasks associated with administering chapter 11 cases. The Debtors submit cause exists for an extension of the Exclusive Periods, based on these negotiations with creditors and parties in interest and the probability the Debtors will be able to negotiate with these parties regarding the terms of a chapter 11 plan or plans.

**I. The Debtors Are Not Pressuring Creditors To Submit To Reorganization Demands.**

36. The Debtors are not seeking this extension as a means to pressure creditors. The Debtors seek adequate time to devote resources to develop plans that will benefit their creditors and these estates. The Debtors submit that cause exists to give the Debtors a window of opportunity to do just that.

**J. Unresolved Contingencies Exist Preventing The Development Of Plans.**

37. As of the filing of this Motion, there are unresolved contingencies in these cases preventing the Debtors from filing plans and disclosure statements. For instance, the sale of the Twin Oaks Plant is underway, but not completed. In addition, the bar date has not passed in

these chapter 11 cases, so the Debtors cannot be certain they have accounted for all of the claims that may exist against the estates. Moreover, while the Debtors have performed a preliminary analysis of their executory contracts and unexpired leases, the Debtors have not completed their review. These are just some examples of unresolved contingencies that currently exist, and an extension of the Exclusive Periods will afford the Debtors additional time to resolve these contingencies and cultivate a chapter 11 plan or plans in these cases.

38. Requests by debtors for exclusivity extensions have been routinely granted by courts in this district. *See, e.g.*, *In re Global Aviation Holdings Inc.*, Case No. 13-12945 (MFW) (Bankr. D. Del. Feb. 24, 2014); *see also In re Adoc Holdings, Inc.*, Case No. 13-11153 (CSS) (Bankr. D. Del. Jan. 24. 2014); *In re IPC Int'l Corp.*, Case No. 13-12050 (MFW) (Bankr. D. Del. Dec. 11, 2013); *In re OnCure Holdings, Inc.*, Case No. 13-11540 (KG) (Bankr. D. Del. Oct. 31, 2013); *In re School Specialty, Inc.*, Case No. 13-10125 (KJC) (Bankr. D. Del. June 17, 2013); *In re DDMG Estate*, Case No. 12-12568 (BLS) (Bankr. D. Del. Feb. 5, 2013); *In re The PMI Group, Inc.*, Case No. 11-13730 (BLS) (Bankr. D. Del. Apr. 11, 2012); *In re NewPage Corp.*, Case No. 11-12804 (KG) (Bankr. D. Del. Jan. 11, 2012); *In re Nebraska Book Co., Inc.*, Case No. 11-12005 (PJW) (Bankr. D. Del. Oct. 18, 2011); *In re Fairfield Residential LLC*, Case No. 09-14378 (BLS) (Bankr. D. Del. May 18, 2010).

39. For all of the foregoing reasons, the Debtors respectfully submit that cause exists for entry of the Order extending: (a) the Exclusive Filing Period through and including October 10, 2014; and (b) the Exclusive Solicitation Period through and including December 9, 2014.

**<u>Notice, Hearing Date and Bridge Order</u>**

40. Pursuant to Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, a bridge order is automatically entered for motions to extend the time to take any action as long as the motion is

filed before the expiration of the time period prescribed. As such, pending the Court's action on the Motion (whether at the June 12 hearing or otherwise), the Exclusive Periods are automatically extended until the Court acts on the Motion.

41. The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to Cascade Investment, L.L.C. and ECJV Holdings, LLC; and (d) any party who has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

**No Prior Request**

42. No prior motion for the relief requested herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order and grant such other and further relief as is just and proper.

Dated: May 20, 2014
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ William M. Alleman, Jr.*
Robert J. Dehney (No. 3578)
William M. Alleman, Jr. (No. 5449)
Christopher M. Hayes (No. 5902)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
rdehney@mnat.com
walleman@mnat.com
chayes@mnat.com

-and-

**BRACEWELL & GIULIANI LLP**

Kurt Mayr (*admitted pro hac vice*)
Mark Dendinger (*admitted pro hac vice)*
Goodwin Square
225 Asylum Street, Suite 2600
Hartford, Connecticut 06103
Telephone: (860) 947-9000
Facsimile: (860) 246-3201
Kurt.Mayr@bgllp.com
Mark.Dendinger@bgllp.com
-and-
Robert G. Burns (*admitted pro hac vice*)
Joseph A. Pack (*admitted pro hac vice)*
1251 Avenue of Americas, 49th Floor
New York, New York 10020-1104
Telephone: (212) 508-6100
Facsimile: (800) 404-3970
Robert.Burns@bgllp.com
Joe.Pack@bgllp.com

*Counsel For The Debtors And Debtors In Possession*