**<u>Exhibit B</u>**

**DIP Lender Consent Letter for Extension to June 17, 2014**

#4602798.2

CONSENT AND AMENDMENT

June 13, 2014

Cascade Investment, L.L.C.
in its capacity as Majority Lender
2365 Carillon Point
Kirkland, Washington 98033
Attention: General Counsel

Re: <u>Amendments to Schedule 12.1</u>

Ladies and Gentlemen:

   Reference is made to (i) the Senior Secured Debtor in Possession Credit, Security, and Guaranty Agreement, dated as February 12, 2014 (as amended, restated, supplemented or otherwise modified from time to time, the "<u>DIP Credit Agreement</u>"), among Optim Energy, LLC, as Borrower, the entities party thereto as Guarantors, the entities from time to time party thereto as Lenders and Wells Fargo Bank, National Association, as the Agent and the L/C Issuer, and to (ii) the Consent dated April 7, 2014 between Optim Energy, LLC and Cascade Investment, L.L.C., as Majority Lender (the "<u>Consent</u>"). Capitalized terms used herein but not defined shall have the same meaning assigned to them in the DIP Credit Agreement.

   <u>Revised Schedule 12.1 (Milestones).</u> Pursuant to the Consent, Schedule 12.1 to the Credit Agreement was amended to extend certain milestones. Borrower now desires to extend further such milestones under Schedule 12.1. Pursuant to Section 14.2 of the DIP Credit Agreement, Borrower hereby requests a further amendment and restatement of Schedule 12.1 to the DIP Credit Agreement, in the form attached hereto as Annex A ("<u>Amended Schedule 12.1</u>").

   By acknowledging and executing this letter agreement (this "<u>Agreement</u>"), Cascade Investment, L.L.C., which constitutes the Majority Lenders as of the date hereof, hereby consents to the amendment and restatement of Schedule 12.1 in the form of Amended Schedule 12.1, which shall supersede all prior versions of Schedule 12.1.

   The parties hereto acknowledge and agree that Amended Schedule 12.1 (i) does not affect the rights of the L/C Issuer or the Agent under the DIP Credit Agreement, and therefore does not require the consent of such parties under Section 14.2 of the DIP Credit Agreement and (ii) constitutes a "non-material amendment" to the DIP Credit Agreement and therefore, in accordance with the Final DIP Order, approval from the Court is not required to give effect to such amendment.

   This Agreement shall be governed by the laws of the State of New York and will be binding upon, and inure to the benefit of, each party's respective successors and assigns. This

Agreement may be executed in any number of counterparts, each of which shall be an original and all of which when taken together shall constitute one and the same agreement.

        Please indicate your acceptance of the foregoing by signing this Agreement and returning it to the undersigned.

[Signature Pages to Follow]

Very truly yours,

OPTIM ENERGY, LLC, as Borrower

By: *[signature]*
Name: Nicholas R. Rahn
Title: Chief Executive Officer

cc: Yvette McQueen
Wells Fargo Bank, National Association

David Minnick
Pillsbury Winthrop Shaw Pittman LLP

Lindsee Granfield, Filip Moerman, and Luke Barefoot
Cleary Gottlieb Steen & Hamilton LLP

[Signature Page to Consent and Amendment]

The foregoing is accepted and agreed to as of the date first written above:

CASCADE INVESTMENT, L.L.C., as Majority Lender

By: _____
Name: Alan Heyberger
Title: Authorized Representative

[Signature Page to Consent]

ANNEX A
As of June 13, 2014

## SCHEDULE 12.1

### Milestones

Within the time periods set forth below, Borrower shall perform each action with respect to the Cases of each of the Obligors as set forth below:

1. As soon as practicable, but in any event no later than June 17, 2014, either (i) execute a sale agreement with a stalking horse bidder relating to the sale of, at a minimum, Twin Oaks or substantially all of Twin Oaks' assets, and file a sale motion and bidding procedures motion relating to such sale with the Bankruptcy Court, or (ii) file a bidding procedures motion and an auction sale motion with the Bankruptcy Court to implement bidding procedures for a sale of Twin Oaks or substantially all of Twin Oaks' assets without a stalking horse bidder; in each case acceptable to the Majority Lenders in their sole discretion;

2. No later than July 11, 2014, obtain entry of a bidding procedures order from the Bankruptcy Court approving bidding procedures for a sale of Twin Oaks or substantially all of Twin Oaks' assets;

3. No later than August 12, 2014, obtain Bankruptcy Court approval of a sale of Twin Oaks or substantially all of Twin Oaks' assets, to the extent a successful bidder has been selected;

4. No later than August 12, 2014, deliver to the Lenders either (a) a draft Plan of Reorganization and Disclosure Statement, in each case acceptable to the Majority Lenders in their reasonable discretion or (b) a Sale Proposal acceptable to the Majority Lenders in their reasonable discretion;

5. No later than October 10, 2014, file the Plan of Reorganization and the Disclosure Statement or file a sale and bidding procedures motion relating to the Sale Proposal with the Bankruptcy Court; and

6. No later than February 12, 2015, obtain confirmation by the Bankruptcy Court of the Plan of Reorganization and attain the effective date thereof or consummate the sale contemplated by the Sale Proposal; provided, however, that if the Plan of Reorganization or the Sale Proposal has been filed, and the Extension has been elected by the Borrower and consented by the Majority Lenders in writing, this Milestone deadline shall be 15 months.