## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Optim Energy, LLC, *et al.*, | Case No. 14-10262 (BLS) |
| Debtors.[1] | (Jointly Administered) |

## DEBTORS' JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**BRACEWELL & GIULIANI LLP**

Kurt Mayr (admitted *pro hac vice*)
Mark E. Dendinger (admitted *pro hac vice*)
CityPlace I, 34th Floor
185 Asylum Street
Hartford, Connecticut 06103
Telephone: (860) 947-9000
Facsimile: (800) 404-3970

-and-

Robert G. Burns (admitted *pro hac vice*)
1251 Avenue of Americas, 49th Floor
New York, New York 10020-1104
Telephone: (212) 508-6100
Facsimile: (800) 404-3970

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

Robert J. Dehney (No. 3578)
Eric D. Schwartz (No. 3134)
William M. Alleman, Jr. (No. 5449)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel to the Debtors and Debtors in Possession*

Dated: March 18, 2015

---

[1] The Debtors in these chapter 11 cases are: Optim Energy, LLC; OEM 1, LLC; Optim Energy Cedar Bayou 4, LLC; Optim Energy Altura Cogen, LLC; Optim Energy Marketing, LLC; Optim Energy Generation, LLC; Optim Energy Twin Oaks GP, LLC; and Optim Energy Twin Oaks, LP. The Debtors' main corporate and mailing address for purposes of these chapter 11 cases is: c/o Competitive Power Ventures, Inc., 8403 Colesville Road, Suite 915, Silver Spring, MD 20910.

# TABLE OF CONTENTS

**Page**

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND OTHER REFERENCES**.................................................................................1
Section 1.01. Defined Terms .................................................................1
Section 1.02. Rules of Interpretation ....................................................16
Section 1.03. Computation of Time.......................................................17
Section 1.04. Governing Law ...............................................................17
Section 1.05. Reference to Monetary Figures.........................................17
Section 1.06. Reorganizing Versus Liquidating Debtors.........................17
Section 1.07. Severability of Plan Provisions........................................17
Section 1.08. No Substantive Consolidation..........................................18

**ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS** ................................18
Section 2.01. DIP Facility Claims.........................................................18
Section 2.02. Administrative Claims .....................................................18
Section 2.03. Priority Tax Claims.........................................................19

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN REORGANIZING DEBTORS**..............................20
Section 3.01. Classification..................................................................20
Section 3.02. Subplan OG: Treatment of Claims Against and Equity Interests in Optim Generation..................................................21
Section 3.03. Subplan CB: Treatment of Claims Against and Equity Interests in Cedar Bayou........................................................24
Section 3.04. Subplan AC: Treatment of Claims Against and Equity Interests in Altura Cogen........................................................26

**ARTICLE IV CLASSIFICATION AND TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN LIQUIDATING DEBTORS** .....................................29
Section 4.01. Classification..................................................................29
Section 4.02. Subplan OE: Treatment of Claims Against and Equity Interests in Optim Energy.....................................................31
Section 4.03. Subplan OM: Treatment of Claims Against and Equity Interests in Optim Marketing.................................................35
Section 4.04. Subplan OEM: Treatment of Claims Against and Equity Interests in OEM....................................................................38
Section 4.05. Subplan TOGP: Treatment of Claims Against and Equity Interests in Twin Oaks GP.............................................41
Section 4.06. Subplan TOLP: Treatment of Claims Against and Equity Interests in Twin Oaks LP .............................................43

**ARTICLE V ACCEPTANCE OR REJECTION OF THE SUBPLANS** ................47
Section 5.01. Acceptance by an Impaired Class .....................................47
Section 5.02. Nonconsensual Confirmation............................................48
Section 5.03. Limited Deficiency Waiver...............................................48

i

# TABLE OF CONTENTS (CONT'D)

**Page**

**ARTICLE VI IMPLEMENTATION OF THE SUBPLANS FOR THE
REORGANIZING DEBTORS** ......................................................................**48**
    Section 6.01. Restructuring Transactions ...........................................................48
    Section 6.02. Sale Transaction............................................................................49
    Section 6.03. Exit Financing................................................................................49
    Section 6.04. Organization of the Reorganized Debtors.....................................49
    Section 6.05. Assets and Liabilities of the Reorganized Debtors .......................50
    Section 6.06. Governance of the Reorganized Debtors ......................................50
    Section 6.07. Funding of Reserves .....................................................................51
    Section 6.08. Distribution Trust ..........................................................................51
    Section 6.09. Post-Confirmation Property Sales.................................................55
    Section 6.10. Causes of Action of the Reorganizing Debtors.............................55

**ARTICLE VII IMPLEMENTATION OF THE SUBPLANS FOR THE
LIQUIDATING DEBTORS**........................................................................**56**
    Section 7.01. Organization of the Liquidating Debtors ......................................56
    Section 7.02. Assets and Liabilities of the Liquidating Debtors.........................56
    Section 7.03. Governance of the Liquidating Debtors........................................56
    Section 7.04. Funding of Reserves .....................................................................56
    Section 7.05. Liquidation Trust ..........................................................................57
    Section 7.06. Causes of Action of the Liquidating Debtors ...............................61

**ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND LEASES**............**62**
    Section 8.01. Executory Contracts and Unexpired Leases of the Reorganizing
    Debtors ................................................................................................62
    Section 8.02. Executory Contracts and Unexpired Leases of the Liquidating
    Debtors ................................................................................................62
    Section 8.03. Effect of Confirmation Order on Assumption/Rejection............................62
    Section 8.04. Cure of Defaults and Objections to Assumption .........................63
    Section 8.05. Rejection Damages Claims and Objections to Rejection .............................63
    Section 8.06. Preexisting Obligations to the Debtors Under Executory Contracts
    and Unexpired Leases .........................................................................64
    Section 8.07. Modifications, Amendments, Supplements, Restatements or Other
    Agreements ..........................................................................................64
    Section 8.08. Reservation of Rights....................................................................64
    Section 8.09. Non-Occurrence of the Effective Date .........................................64

**ARTICLE IX PROVISIONS GOVERNING DISTRIBUTIONS** ...........................................**65**
    Section 9.01. Amount of Distributions ...............................................................65
    Section 9.02. Method of Distributions ................................................................65
    Section 9.03. Delivery of Distributions ..............................................................65
    Section 9.04. No Fractional or De Minimis Distributions ..................................66
    Section 9.05. Undeliverable Distributions ..........................................................66
    Section 9.06. Tax Withholding From Distributions............................................67

## TABLE OF CONTENTS (CONT'D)

**Page**

Section 9.07. Allocations .................................................................67
Section 9.08. Time Bar to Cash Payments.........................................67
Section 9.09. Means of Cash Payments .............................................68
Section 9.10. Foreign Currency Exchange Rates...............................68
Section 9.11. Setoffs .........................................................................68
Section 9.12. Cancellation of Instruments Evidencing Claims or Equity Interests...........68
Section 9.13. Claims Paid or Payable by Third Parties .....................68

**ARTICLE X PROCEDURES FOR RESOLVING DISPUTED CLAIMS ............69**
Section 10.01. Prosecution of Objections to Claims..........................69
Section 10.02. Estimation of Claims..................................................69
Section 10.03. No Distributions on Disputed Claims .........................70
Section 10.04. Reserve of Cash for Disputed Claims .........................70

**ARTICLE XI CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN..........................................70**
Section 11.01. Conditions Precedent to Confirmation.........................70
Section 11.02. Effect of Non-Occurrence of Conditions to Confirmation or Conditions Precedent to the Effective Date ..........................71
Section 11.03. Conditions Precedent to the Effective Date .................71
Section 11.04. Waiver of Conditions Precedent ..................................72

**ARTICLE XII EFFECT OF CONFIRMATION OF THIS PLAN ........................73**
Section 12.01. Discharge of Claims....................................................73
Section 12.02. Certain Releases by the Debtors .................................73
Section 12.03. Certain Releases by Holders of Claims and Equity Interests ...................74
Section 12.04. Exculpation ................................................................75
Section 12.05. Injunction ...................................................................76
Section 12.06. Protection Against Discriminatory Treatment ...........76
Section 12.07. Release of Liens .........................................................76
Section 12.08. Cancellation of Securities ..........................................77

**ARTICLE XIII MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN...................................................................................77**
Section 13.01. Modification of a Subplan ..........................................77
Section 13.02. Revocation or Withdrawal of a Subplan......................78

**ARTICLE XIV RETENTION OF JURISDICTION .............................................78**
**ARTICLE XV MISCELLANEOUS PROVISIONS ...............................................80**
Section 15.01. Corporate Action........................................................80
Section 15.02. Securities Issued Under this Plan...............................80
Section 15.03. General Settlement of Claims .....................................81
Section 15.04. Preservation of Causes of Action Not Expressly Released .....................81
Section 15.05. Section 1146(a) Exemption.........................................82
Section 15.06. Elimination of Vacant Classes ...................................82

## TABLE OF CONTENTS (CONT'D)

**Page**

Section 15.07. Intercompany Claims ...................................................................................83

Section 15.08. Additional Documents ..................................................................................83

Section 15.09. Successors and Assigns.................................................................................83

Section 15.10. Reservation of Rights...................................................................................83

Section 15.11. Notices ..........................................................................................................83

Section 15.12. Term of Injunctions or Stay .........................................................................84

Section 15.13. Entire Agreement ..........................................................................................84

Section 15.14. Plan Supplement Exhibits.............................................................................84

Section 15.15. Severability ...................................................................................................85

Section 15.16. Substantial Consummation ...........................................................................85

The Debtors hereby respectfully propose the following joint plan of reorganization (including the subplans contained herein). Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan, and certain related matters. There are other agreements and documents, which have been or will be filed with the Bankruptcy Court that are referenced in this Plan or the Disclosure Statement as exhibits, the Plan Supplement or otherwise. All such agreements, documents, exhibits and the Plan Supplement are incorporated into and are made a part herein as if fully set forth herein.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND OTHER REFERENCES

### Section 1.01.  Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in this Plan:

"Administrative Claim" means a Claim under section 503(b) of the Bankruptcy Code, and referred to in section 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) Claims under section 503(b)(9) of the Bankruptcy Code, (b) any actual and necessary costs and expenses of preserving any of the Estates, (c) any actual and necessary costs and expenses of operating any of the Debtors' businesses after the Petition Date, (d) all Professional Claims, (e) any fees or charges assessed against any of the Estates under section 1930 of chapter 123 of title 28 of the United States Code, (f) Claims under any key employee incentive plan or key employee retention plan approved pursuant to a Final Order of the Bankruptcy Court, (g) all post-petition taxes, (h) the DIP Facility Claims, and (i) all other Claims entitled to administrative expense status pursuant to a Final Order of the Bankruptcy Court, in each case relating to the period from the Petition Date through and including the Effective Date but not beyond (but excluding any Intercompany Claims); provided, however, that the DIP Facility Claims are superpriority Administrative Claims under the Final DIP Order pursuant to section 364(c)(1) of the Bankruptcy Code.

"Administrative Claims Bar Date" means the first Business Day that is thirty (30) days after the Effective Date (or such date(s) otherwise ordered by the Bankruptcy Court). For the avoidance of doubt, holders of the DIP Facility Claims shall not be subject to the Administrative Claims Bar Date.

"Affiliate" (and, with a correlative meaning "affiliated") means, with respect to any Person, any Person who would be an affiliate pursuant to section 101(2) of the Bankruptcy Code, as well as any direct or indirect subsidiary of such Person, and any other Person that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with such first Person. As used in this definition, "control" (including with correlative meanings, "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of such

Person (whether through ownership of securities or partnership or other ownership interests, by contract or otherwise).

"Allowed" means, as to a Claim or an Equity Interest, or applicable portion thereof, (a) that has been listed by the applicable Debtor in its Schedules (and thereafter continues to be listed in any subsequently filed amended versions of such Schedules) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim or Equity Interest has been filed, (b) where proof of such Claim or Equity Interest was timely and properly filed by the applicable deadline under the Bar Date Order as to which (i) such Claim or Equity Interest is not Disputed, or (ii) an objection has been interposed and such Claim or Equity Interest has been allowed, in whole or in part, by a Final Order and/or by the agreement of the holder of such Claim or Equity Interest, on the one hand, and the Debtors, the Reorganizing Debtors, the Reorganized Debtors, the Liquidating Debtors, or the Plan Administrator, as applicable, on the other, or (c) any Claims allowed under the Final DIP Order, any other Final Order, or any Subplan whether or not such Claims were scheduled or the subject of filed Proofs of Claim; provided, however, that any Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.  Unless otherwise specified herein or pursuant to a Final Order of the Bankruptcy Court, "Allowed" shall not include interest, fees, or charges for the period on and after the Petition Date.  When used in this Plan or Disclosure Statement with respect to the timing of distributions, "Allowed" means on the date a Claim or Equity Interest has been Allowed or as soon as reasonably practicable thereafter.

"Allowed Pre-Petition Secured Parties Deficiency Claim" means the Allowed Pre-Petition Secured Parties Secured Claim less the value of the Collateral securing such Claim, determined in accordance with section 506(a) of the Bankruptcy Code.

"Allowed Pre-Petition Secured Parties Secured Claim" means the Secured Claim arising under the Pre-Petition Reimbursement Agreement Security Documents in the amount of $712,974,677.95.  For the avoidance of doubt, the Allowed Pre-Petition Secured Parties Secured Claim has been deemed Allowed pursuant to the terms of the Final DIP Order.

"Altura Cogen" means Optim Energy Altura Cogen, LLC.

"Assets" means all tangible and intangible assets of every kind and nature of the Debtors and their respective Estates, the Reorganizing Debtors, the Liquidating Debtors, the Distribution Trust, or the Liquidation Trust, as applicable, including, without limitation, all Causes of Action (except those released by this Plan, or by the Final DIP Order, the Confirmation Order or other Final Order) and all proceeds thereof, existing as of the Effective Date.

"Avoidance Actions" means any and all Causes of Action that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under Chapter 5 of the Bankruptcy Code, including under sections 502, 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code, or similar avoidance or fraudulent transfer actions under applicable non-bankruptcy law.

2

"Ballot" means each of the ballots distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject a Subplan and on which such holder is to indicate, among other things, acceptance or rejection of the Subplan.

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with all amendments and modifications thereto that are subsequently made applicable to the Chapter 11 Cases.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases.

"Bankruptcy Rules" means: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code; (b) the applicable Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court; and (c) any general or specific chamber rules or procedures, or standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, and each of the foregoing together with all amendments and modifications thereto that are subsequently made and as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

"Bar Date Order" means the *Order (I) Establishing Bar Dates for Filing Proofs of Claim; (II) Approving Proof of Claim Form, Bar Date Notices, and Mailing and Publication Procedures; (III) Implementing Uniform Procedures Regarding 503(b)(9) Claims; and (IV) Providing Certain Supplemental Relief*, entered by the Bankruptcy Court on May 9, 2014 [Docket No. 275].

"Bidding Procedures" means bidding procedures approved by the Bidding Procedures Order.

"Bidding Procedures Order" means the *Order (I) Approving Bidding Procedures in Connection with the Sale of Certain of the Debtors' Equity Interests, (II) Scheduling an Auction and (III) Granting Related Relief*, entered by the Bankruptcy Court on [____] [Docket No. [____]].

"Business Day" means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

"Cascade" means Cascade Investment, L.L.C.

"Cash" means the legal tender of the U.S. or the equivalent thereof, including bank deposits and checks.

"Causes of Action" means any and all claims, actions, causes of action (including Avoidance Actions), suits, debts, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims,

3

contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims of any of the Debtors and/or the Estates, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, that are or may be pending on the Effective Date or commenced after the Effective Date against any Entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order, unless otherwise waived or released pursuant to any Subplan, Confirmation Order, a Final Order or by the Plan Administrator.  For the avoidance of doubt, on the Effective Date of the Subplans for the Reorganizing Debtors and the Liquidating Debtors any and all Avoidance Actions relating to the Reorganizing Debtors and the Liquidating Debtors shall be deemed waived and released pursuant to Section 6.10 and Section 7.06 of this Plan.

"Cedar Bayou" means Optim Energy Cedar Bayou 4, LLC.

"Certificate" means any instrument evidencing a Claim or an Equity Interest.

"Chapter 11 Cases" means the chapter 11 cases of the Debtors pending before the Bankruptcy Court as Case Nos. 14-10262 (BLS) through 14-10269 (BLS), jointly administered under the lead Case No. 14-10262 (BLS).

"Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.

"Claims and Solicitation Agent" means Prime Clerk LLC, or such other the claims and solicitation agent the Debtors may retain in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court.

"Claims Objection Deadline" means the last day for filing objections to Claims, other than Administrative Claims and Professional Claims, which day shall be: (a) the later of (i) one hundred eighty (180) days after the Effective Date or (ii) one hundred eighty (180) days after the filing of a Proof of Claim for, or request for payment of, such Claim; or (b) such other date as the Bankruptcy Court may order.  The filing of a motion to extend the Claims Objection Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered on such motion.  In the event that such motion to extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the then-current Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Claims Objection Deadline.

"Claims Register" means the official register of Claims against or Equity Interests in the Debtors maintained by the Claims and Solicitation Agent.

"Class" means a category of holders of Claims or Equity Interests under section 1122(a) of the Bankruptcy Code.

"Closing Cash Payment" means the Cash payment from the Purchaser pursuant to the Membership Interest Purchase and Sale Agreement, if any.

"Collateral" means any property or interest in property of the Estate subject to a Lien, not otherwise subject to avoidance under the Bankruptcy Code, to secure the payment or performance of a Claim.

"Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

"Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of any of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors will seek entry of the Confirmation Order.

"Confirmation Order" means the order of the Bankruptcy Court confirming any Subplan, as applicable, pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance acceptable to the and the Consultation Parties.

"Consultation Parties" means the DIP Lenders and the Pre-Petition Secured Parties.

"Consummation" means the occurrence of the Effective Date.

"Convenience Class Claim" means a General Unsecured Claim included in a separate class of the type referred to in section 1122(b) of the Bankruptcy Code, either: (a) because such General Unsecured Claim is in an amount equal to or less than $10,000.00; or (b) the holder of a General Unsecured Claim in excess of $10,000.00 has agreed by an irrevocable written election to reduce the amount of its General Unsecured Claim to $10,000.00.

"Creditor" has the meaning set forth in section 101(10) of the Bankruptcy Code.

"Cure Costs" means any and all amounts, costs or expenses that must be paid or actions that must be performed pursuant to sections 365 and 1123 of the Bankruptcy Code in connection with the assumption and/or assignment of each of the Executory Contracts and Unexpired Leases pursuant to the Confirmation Order.

"Debtors" means, collectively, Altura Cogen, Cedar Bayou, OEM, Optim Energy, Optim Generation, Optim Marketing, Twin Oaks GP and Twin Oaks LP.

"Deficiency Claim" means a Claim in the amount by which an Allowed Secured Claim exceeds the value of any Collateral securing such Claim, determined in accordance with section 506(a) of the Bankruptcy Code.

"DIP Agent" means Wells Fargo.

"DIP Credit Agreement" means the Senior Secured Debtor in Possession Credit, Security and Guaranty Agreement dated as of February 12, 2014, by and among the lenders from time to time party thereto, Wells Fargo, Optim Energy and its debtor Affiliates, as may be amended,

restated, supplemented or otherwise modified from time to time in accordance with the terms therein or the Final DIP Order.

"DIP Facility" means the post-petition debtor in possession loan facility pursuant to: (a) the DIP Credit Agreement and any and all documents, instruments or agreements executed or delivered in connection therewith; and (b) the DIP Orders.

"DIP Facility Claims" means any and all of the first-priority senior secured, superpriority Administrative Claims, pursuant to sections 364(c) and (d) of the Bankruptcy Code, held by the DIP Agent and the DIP Lenders against the Debtors arising under or in connection with the DIP Facility.

"DIP Lenders" means, collectively, Cascade and ECJV and their respective successors in interest as lenders under the DIP Facility.

"DIP Orders" means, together, the Interim DIP Order, the Final DIP Order and any amendment, modification or supplement of such orders in form and substance acceptable to the Majority Lenders (as defined in the DIP Credit Agreement).

"Disclosure Statement" means the *Disclosure Statement for the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated March 18, 2015, including all exhibits and schedules thereto, as the same may be altered, amended, modified or supplemented from time to time subject to the written approval of the Consultation Parties, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

"Disclosure Statement Order" means the *Order (A) Approving the Disclosure Statement, (B) Approving the Solicitation Procedures, (C) Approving the Form of Ballots and Notices in Connection Therewith, (D) Establishing the Plan Confirmation Schedule and (E) Granting Related Relief*, entered by the Bankruptcy Court on [_____] [Docket No. [_____]].

"Disputed" means any Claim or Equity Interest, or any portion thereof, that: (a) is listed on the Schedules as unliquidated, disputed, or contingent, which dispute has not been withdrawn, resolved or overruled by a Final Order; (b) is the subject of an objection or request for estimation filed in the Bankruptcy Court and which objection or request for estimation has not been withdrawn, resolved or overruled by a Final Order of the Bankruptcy Court; or (c) is otherwise disputed by the Debtors, the Liquidating Debtors, the Reorganizing Debtors, the Reorganized Debtors or the Plan Administrator, as applicable, in accordance with applicable law; provided, however, that for purposes of determining the status (i.e., Allowed or Disputed) of a particular Claim prior to the expiration of the period fixed for filing objections to the allowance or disallowance of Claims, any such Claim which has not been previously allowed or disallowed by Final Order of the Bankruptcy Court or Subplan shall be deemed a Disputed Claim unless such Claim is specifically identified by the Debtors, the Reorganizing Debtors, the Reorganized Debtors, the Liquidating Debtors, or the Plan Administrator, as applicable, as being an Allowed Claim.

"Distribution Record Date" means the record date for purposes of making distributions under this Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date designated in the Confirmation Order.

"Distribution Trust" means the trust to be created on the Effective Date in accordance with the provisions of Section 6.08 of this Plan and the Distribution Trust Agreement for the benefit of the holders of Allowed Claims against the Reorganizing Debtors.

"Distribution Trust Agreement" means the agreement establishing and governing the Distribution Trust, in form and substance acceptable to the Debtors and the Consultation Parties, in substantially the form included in the Plan Supplement.

"Distribution Trust Assets" means, collectively, the Reorganizing Debtors Claims Reserve and Causes of Action of the Reorganizing Debtors.

"ECJV" means ECJV Holdings, LLC.

"Effective Date" means, as to any Subplan, the date that is one (1) Business Day after which all conditions precedent to the occurrence of the Effective Date set forth in Section 11.03 of this Plan have been satisfied or waived in accordance with Section 11.04 of this Plan. When used in this Plan or Disclosure Statement with respect to the timing of distributions, "Effective Date" means "on the Effective Date or as soon as reasonably practicable thereafter."

"Effective Date Class OE 1 Distributable Cash" means the Cash being held by each of the Liquidating Debtors on the Effective Date (including any Cash being held in any account of any Liquidating Debtor that is listed in Docket Nos. 30 or 140) less each of the following, on the Effective Date: (a) Cash in an amount to pay in full in Cash the Allowed DIP Facility Claims against the Liquidating Debtors; (b) Cash in an amount to be deposited into the Liquidating Debtors Claims Reserve; and (c) Cash in an amount to be deposited into the Liquidating Debtors Wind-Down Costs Reserve. For the avoidance of doubt, the Effective Date Class OE 1 Distributable Cash shall be paid in accordance with Section 4.02(a)(ii) of this Plan and shall not be a Liquidation Trust Asset.

"Effective Date Class OG 1 Distributable Cash" means Cash being held by each of the Reorganizing Debtors or Reorganized Debtors (as applicable) on the Effective Date (including the Closing Cash Payment, if any, and any Cash being held in any account of any Reorganizing Debtor that is listed in Docket Nos. 30 or 140) less each of the following, on the Effective Date: (a) Cash in an amount to pay in full in Cash the Allowed DIP Facility Claims against the Reorganizing Debtors; (b) Cash in an amount to be deposited into the Reorganizing Debtors Claims Reserve; and (c) Cash in an amount to be deposited into the Reorganizing Debtors Wind-Down Costs Reserve. For the avoidance of doubt, the Effective Date Class OG 1 Distributable Cash shall be paid in accordance with Section 3.02(a)(ii) of this Plan and shall not be a Distribution Trust Asset.

"Entity" means a natural person, corporation, limited liability company, association, partnership (whether general or limited), joint venture, proprietorship, estate, trust,

Governmental Unit or any other individual or entity, whether acting in an individual, fiduciary, representative or other capacity, including the U.S. Trustee, within the meaning of section 101(15) of the Bankruptcy Code.

"Equity Interest" means all issued, unissued, authorized, or outstanding shares of stock, membership interests, and other ownership interests in any Debtor, Reorganizing Debtor, or Liquidating Debtor, as applicable, together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

"Estate" means the bankruptcy estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

"Exculpated Claim" means a Claim arising out of or related to any act or omission in connection with or relating to: (a) the formulation, preparation, solicitation, dissemination, negotiation, or filing of this Plan, the Plan Supplement, the Disclosure Statement, the Membership Interest Purchase and Sale Agreement, if any, the Exit Financing or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing; (b) the Chapter 11 Cases; (c) the pursuit of Confirmation; (d) the pursuit of Consummation; (e) the administration and implementation of this Plan; and/or (f) the distribution of property under this Plan.

"Exculpated Party" means, collectively: (a) the Debtors; (b) the Reorganized Debtors; (c) the Reorganizing Debtors, (d) the Liquidating Debtors; (e) the Pre-Petition Secured Parties; (f) the DIP Agent; (g) the DIP Lenders; (h) the L/C Issuer; (i) the Plan Administrator; (j) the Distribution Trust; (k) the Liquidation Trust; (l) the Exit Lenders; and (m) in each case, the respective Related Persons of each of the foregoing Entities.

"Executory Contract" means a contract to which one or more of the Debtors are party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"Exit Financing" means a secured credit facility(ies) obtained by the Reorganized Debtors on the Effective Date, if the Sale does not occur.

"Exit Financing Facility Documents" means agreements and related documents and instruments evidencing the new financing to be obtained by the Reorganized Debtors on the Effective Date, if the Sale does not occur, including revolving ABL credit, term credit and/or letters of credit as determined by the Reorganized Debtors to be reasonably necessary, in substantially the form included in the Plan Supplement.

"Exit Lenders" means the initial lenders pursuant to the Exit Financing Facility Documents and their respective successors in interest as the lenders providing the Exit Financing.

"Federal Judgment Rate" means 0.12% per annum, which is the post-judgment interest rate in effect as of the Petition Date established by Section 1961 of Title 28 of the United States Code and provided by the Federal Reserve and published every Monday for the preceding week.

"Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

"Final DIP Order" means the *Final Order (I) Authorizing Debtors to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) Utilize Cash Collateral of Pre-Petition Secured Parties Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; and (III) Granting Related Relief*, entered by the Bankruptcy Court on March 6, 2014 [Docket No. 144], and any amendment, modification or supplement of such order in form and substance acceptable to the Majority Lenders (as defined in the DIP Credit Agreement) and approved by the Bankruptcy Court.

"Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, which has been entered on the docket, and that has not been stayed, reversed, modified or amended and as to which the time to file an appeal, a motion for re-hearing, re-argument or reconsideration or a petition for writ of certiorari has expired or been waived by the Debtors, the Reorganizing Debtors, the Liquidating Debtors, or the Plan Administrator, as applicable, and as to which no appeal, petition for certiorari, or other proceedings for re-argument, reconsideration or re-hearing are then pending; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

"General Unsecured Claim" means a Claim that is not an Administrative Claim, DIP Facility Claim, Intercompany Claim, Other Priority Claim, Other Secured Claim, Allowed Pre-Petition Secured Parties Secured Claim, Priority Tax Claim, Professional Claim or Subordinated Claim.

"Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"Impaired" means, with respect to any Class of Claims or Equity Interests, a Claim or an Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Intercompany Claim" means a Claim by a Debtor against another Debtor.

"Interim DIP Order" means the *Interim Order (I) Authorizing Debtors to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) Utilize Cash Collateral of Pre-Petition Secured Parties Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; and (III) Granting Related Relief*, entered by the Bankruptcy Court on February 12, 2014 [Docket No. 36].

"L/C Issuer" means Wells Fargo, in its capacity as the issuer of the post-petition commercial, standby, or documentary letters of credit issued pursuant to the DIP Credit Agreement and the DIP Facility.

"Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"Liquidating Debtors" means, collectively, OEM, Optim Energy, Optim Marketing, Twin Oaks GP and Twin Oaks LP.

"Liquidating Debtors Claims Reserve" means Cash in an amount approved by the Bankruptcy Court pursuant to the Confirmation Order sufficient to fund: (a) the anticipated Allowed Claims (other than DIP Facility Claims) against the Liquidating Debtors, to the extent unpaid; and (b) the anticipated Allowed amount of Disputed Claims against the Liquidating Debtors.

"Liquidating Debtors Wind-Down Costs Reserve" means Cash sufficient to fund the anticipated fees, costs and expenses for winding down the Liquidating Debtors Chapter 11 Cases and the Estates after the Effective Date, including but not limited to the Professional Claims Reserve, as set forth in the Wind-Down Budget and approved by the Bankruptcy Court pursuant to the Confirmation Order.  For the avoidance of doubt, the Liquidating Debtors Wind-Down Costs Reserve shall not be a Liquidation Trust Asset.

"Liquidation Trust" means the trust to be created on the Effective Date in accordance with the provisions of Section 7.05 of this Plan and the Liquidation Trust Agreement for the benefit of the holders of Allowed Claims against the Liquidating Debtors.

"Liquidation Trust Agreement" means the agreement establishing and governing the Liquidation Trust, in form and substance acceptable to the Debtors and the Consultation Parties, in substantially the form included in the Plan Supplement.

"Liquidation Trust Assets" means, collectively, the Liquidating Debtors Claims Reserve and Causes of Action of the Liquidating Debtors.

"Membership Interest Purchase and Sale Agreement" means any ownership interest purchase and sale agreement that is executed to consummate the Sale (as may be amended, modified, or supplemented in accordance with the terms therein).

"New Governance Documents" means the new corporate governance documents related to Reorganized Generation, including, but not limited to, certificates of formation, operating agreements or other organizational documents, which shall be consistent with the provisions of this Plan and the Bankruptcy Code, and shall include, among other things (and only to the extent required by section 1123(a)(6) of the Bankruptcy Code), provisions prohibiting the issuance of non-voting equity securities.  The New Governance Documents shall be in form and substance acceptable to the Debtors and the Consultation Parties, in substantially the form included in the Plan Supplement.

"NRG Rotor Lien Claim" means the Claims asserted by NRG Energy Services LLC against Altura Cogen pursuant to Proof of Claim No. 40.

"OEM" means OEM 1, LLC.

"Optim Energy" means Optim Energy, LLC.

"Optim Generation" means Optim Energy Generation, LLC.

"Optim Marketing" means Optim Energy Marketing, LLC.

"Other Priority Claim" means a Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

"Other Secured Claim" means a Secured Claim other than a DIP Facility Claim or an Allowed Pre-Petition Secured Parties Secured Claim.  For the avoidance of doubt, the NRG Rotor Lien Claim is an Other Secured Claim.

"Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

"Petition Date" means February 12, 2014.

"Plan" means the *Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (as it may be altered, amended, modified or supplemented from time to time subject to the written approval of the Consultation Parties, and including the Plan Supplement).

"Plan Administrator" means the Person or Entity announced in the Plan Supplement, or such other Person or Entity established as plan administrator pursuant to the Distribution Trust Agreement and the Liquidation Trust Agreement.  For the avoidance of doubt, the Plan Administrator shall be the same Person or Entity for the Distribution Trust and the Liquidation Trust.

"Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to this Plan, which shall be filed in the Chapter 11 Cases by the Debtors no later than ten (10) days prior to the date first scheduled for the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, as may be amended or supplemented by additional documents filed in the Chapter 11 Cases prior to the Effective Date as amendments to the Plan Supplement.

"Post-Petition Interest" means simple interest per annum at the Federal Judgment Rate, based on a three hundred sixty (360)-day year for the period from the Petition Date to, but excluding, the Effective Date.

"Pre-Petition Reimbursement Agreement" means the Guaranty Reimbursement Agreement, dated as of June 1, 2007, between the Debtors and the Pre-Petition Secured Parties (as amended, restated, supplemented or otherwise modified from time to time).

"Pre-Petition Reimbursement Agreement Security Documents" means (a) the Pledge & Security Agreement dated as of June 1, 2007, by and among Optim Energy, Cascade, as collateral agent for the benefit of itself and ECJV, and each other party signatory thereto (as amended, restated, supplemented or otherwise modified), (b) the Deed of Trust, Assignment of Rents and Security Agreement dated as of June 1, 2007 by Altura Power L.P. (as amended, restated, supplemented or otherwise modified), and (c) all other mortgages, security agreements, control agreements and other instruments or documents delivered by any Debtor to create or

grant to the Pre-Petition Secured Parties any lien on any property as security for liabilities under the Pre-Petition Reimbursement Agreement or to perfect, assure or preserve any lien or any rights or remedies created thereby.

"Pre-Petition Secured Parties" means, collectively, Cascade and ECJV, and additionally any successor-in-interest to either of the foregoing.

"Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"Pro Rata" means the proportion that an Allowed Claim or an Allowed Equity Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Equity Interests in that Class.

"Professional" means a Person or Entity: (a) employed in the Chapter 11 Cases in accordance with sections 327, 328 and/or 1103 of the Bankruptcy Code pursuant to a Final Order and to be compensated for services rendered from the Petition Date through and including the Effective Date, but not beyond, pursuant to sections 327 through 331 and/or 1103 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

"Professional Claim" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation and reimbursement of expenses incurred from the Petition Date through and including the Effective Date, but not beyond, under sections 327, 328, 330, 331, 503(b), 1103, or 1129(a)(4) of the Bankruptcy Code.

"Professional Claims Bar Date" means the date that is sixty (60) days after the Effective Date.

"Professional Claims Reserve" means Cash on hand (which is Cash Collateral) and/or Cash from the Exit Financing, if any, sufficient to fund the anticipated Allowed Professional Claims against the Debtors as estimated in good faith by the Debtors' professionals, as set forth in the Wind-Down Budget and approved by the Bankruptcy Court pursuant to the Confirmation Order; provided, however, that if the Professional Claims Reserve is funded into the Reorganized Debtors Wind-Down Costs Reserve, it will not also be funded into the Liquidating Debtors Wind-Down Costs Reserve; provided further that if the Professional Claims Reserve is funded into the Liquidating Debtors Wind-Down Costs Reserve, it will not also be funded into the Reorganizing Debtors Wind-Down Costs Reserve.  For the avoidance of doubt, the Professional Claims Reserve shall not be a Distribution Trust Asset or a Liquidation Trust Asset.

"Proof of Claim" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases in a manner consistent with the Bar Date Order.

"Purchaser" means any Prevailing Bidder or Back-up Bidder (as such terms are defined in the Bidding Procedures) that consummates the Sale.

"Reinstatement" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Equity Interest entitles the holder thereof so as to leave such Claim or Equity Interest Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Equity Interest to demand or receive accelerated payment of such Claim or Equity Interest after the occurrence of a default (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity of such Claim as such maturity existed before such default (to the extent such maturity has not otherwise accrued by the passage of time); (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be reinstated in order to accomplish reinstatement.

"Rejection Damages Claim" means a Claim for damages arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to sections 365 or 1123 of the Bankruptcy Code.

"Related Persons" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and with respect to each of the foregoing, each of their respective current and former officers, directors, principals, employees, shareholders, members, managers, management companies, advisory board members, partners, limited partners, general partners, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and any Person claiming by or through any of them, including heirs, executors, estates, servants, and nominees.

"Released Parties" means, collectively, the following in its/their capacity as such: (a) the Debtors and their Estates; (b) each of the Debtors' current and former officers and directors; (c) the Pre-Petition Secured Parties; (d) the DIP Agent; (e) the DIP Lenders; (f) the L/C Issuer; (g) the Distribution Trust; (h) the Liquidation Trust; (i) the Exit Lenders; and (k) the respective Related Persons of each of the foregoing.

"Releasing Parties" means each holder of a Claim against or Equity Interest in the Debtors that (i) affirmatively votes to accept the applicable Subplan, (ii) is Unimpaired pursuant to the applicable Subplan and therefore is deemed to accept the applicable Subplan pursuant to section 1126(f) of the Bankruptcy Code, or (iii) rejects this Plan or abstains from voting on the applicable Subplan and who does not mark its Ballot indicating its desire to opt out of the releases provided in Section 12.03 of this Plan.  For the avoidance of doubt, "Releasing Party" shall not include holders of Claims against or Equity Interests in the Debtors that either: (a) are

deemed to reject the applicable Subplan pursuant to section 1126(g) of the Bankruptcy Code; or (b) are entitled to vote on the applicable Subplan and opts out of granting the releases provided in Section 12.03 of this Plan by checking the appropriate box on the Ballot.

"Reorganized Altura Cogen" means Altura Cogen, on and after the Effective Date.

"Reorganized Cedar Bayou" means Cedar Bayou, on and after the Effective Date.

"Reorganized Debtors" means, collectively, Reorganized Altura Cogen, Reorganized Cedar Bayou, and Reorganized Generation

"Reorganized Generation" means Optim Generation, on and after the Effective Date.

"Reorganized OEG Equity Interests" means the Equity Interests in Reorganized Generation.

"Reorganizing Debtors" means Optim Generation, Cedar Bayou, and Altura Cogen, in each case prior to the Effective Date.

"Reorganizing Debtors Claims Reserve" means Cash on hand (which is Cash Collateral) and/or Cash from the Exit Financing, if any, in an amount approved by the Bankruptcy Court pursuant to the Confirmation Order sufficient to fund: (a) the anticipated Allowed Claims (other than DIP Facility Claims) against the Reorganizing Debtors, to the extent unpaid; and (b) the anticipated Allowed amount of Disputed Claims against the Reorganized Debtors.

"Reorganizing Debtors Wind-Down Costs Reserve" means Cash on hand (which is Cash Collateral) and/or Cash from the Exit Financing, if any, sufficient to fund the anticipated fees, costs and expenses for winding down the Reorganizing Debtors' Chapter 11 Cases and the Estates after the Effective Date, including but not limited to the Professional Claims Reserve, as set forth in the Wind-Down Budget and approved by the Bankruptcy Court pursuant to the Confirmation Order.  For the avoidance of doubt, the Reorganizing Debtors Wind-Down Costs Reserve will not be a Distribution Trust Asset.

"Reserve Price" means Cash in an amount equal to at least $355 million (net of all deductions and/or adjustments and with no right of set off) payable pursuant to the Membership Interest Purchase and Sale Agreement, if any.

"Restructuring Transactions" means one or more transactions pursuant to section 1123(a)(5)(D) of the Bankruptcy Code to occur on or before the Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, the Membership Interest Purchase and Sale Agreement and/or the Exit Financing, including (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with or reasonably necessary to implement the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or

obligation on terms consistent with the terms of this Plan; and (c) all other actions that the Debtors determine are necessary or appropriate.

"Sale" means the Purchaser's acquisition of the Reorganized OEG Equity Interests pursuant to the Membership Interest Purchase and Sale Agreement, if any.

"Schedule of Assumed Executory Contracts and Unexpired Leases" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Reorganizing Debtors or the Liquidating Debtors, as applicable, pursuant to this Plan, including any Cure Costs related thereto, in the form filed as part of the Plan Supplement, as the same may be amended, modified or supplemented from time to time subject to the written approval of the Consultation Parties.

"Schedules" means, collectively, the schedules of assets and liabilities, the list of holders of Equity Interests and the statements of financial affairs and such other documents filed by each of the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments pursuant to Bankruptcy Rule 1009 and modifications thereto through the Confirmation Date.

"Secured Claim" means a Claim: (a) secured by a Lien on property of an Estate to the extent of the value of such property; or (b) subject to a valid right of setoff to the extent of the amount subject to valid setoff pursuant to section 553 of the Bankruptcy Code.

"Subordinated Claim" means a Claim against the Debtors arising from rescission of a purchase or sale of a security of the Debtors or an Affiliate, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such a Claim, or any Claim that has been otherwise subordinated by Final Order of the Bankruptcy Court.

"Subplan" means this Plan for each Debtor.

"Twin Oaks GP" means Optim Energy Twin Oaks GP, LLC.

"Twin Oaks LP" means Optim Energy Twin Oaks, LP.

"U.S." means the United States of America.

"U.S. Trustee" means the United States Trustee for the District of Delaware.

"Undeliverable Distribution" means any distribution under this Plan on account of an Allowed Claim to a holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Plan Administrator or any third-party disbursing agent of an intent to accept a particular distribution; (c) responded to the Plan Administrator or third-party disbursing agent's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

15

"Unexpired Lease" means an unexpired lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

"Unimpaired" means a Class of Claims or Equity Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

"Voting Deadline" means [May 26, 2015 at 4:00 p.m. ET], or such other date approved by the Bankruptcy Court.

"Walnut Creek" means Walnut Creek Mining Company and its successor or assigns, including but not limited to Black Walnut Mining, LLC.

"Walnut Creek Motion" means the standing motion filed by Walnut Creek to prosecute certain claims on behalf of the Debtors' Estates against Cascade, filed in the Chapter 11 Cases on April 14, 2014 [Docket No. 194], the order and opinion of the Bankruptcy Court with respect thereto, entered by the Bankruptcy Court on May 13, 2014 [Docket Nos. 288-89], the notice of appeal filed by Walnut Creek on May 14, 2014 [Docket No. 296], the order and opinion of the district court with respect thereto [Docket Nos. 769-70] and any defenses or counterclaims the Debtors or the Plan Administrator (on behalf of the Liquidation Trust) may assert with respect thereto.

"Walnut Creek Claims" means the Claims (other than Claims under section 503(b)(9) of the Bankruptcy Code) asserted by Walnut Creek against Twin Oaks LP and Optim Energy, pursuant to Proofs of Claim Nos. 52, 63, 113-15 or otherwise.

"Wells Fargo" means Wells Fargo Bank, National Association.

"Wind-Down Budget" means the budget mutually agreed to by the Debtors and Cascade, in substantially the form included in the Plan Supplement, and approved by the Bankruptcy Court pursuant to the Confirmation Order.

## Section 1.02.  Rules of Interpretation

For purposes herein, the following rules of interpretation apply: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections herein or hereto; (e) the words "herein" and "hereto" refer to this Plan in its entirety rather than to any particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not

16

intended to be a part of, or to affect, the interpretation herein; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**Section 1.03.   Computation of Time**

Bankruptcy Rule 9006(a) applies in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur, or be required to be done, shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**Section 1.04.   Governing Law**

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflict-of-laws principles; provided that the corporate or limited liability company governance matters shall be governed by the laws of the state of incorporation or formation of the applicable Entity.

**Section 1.05.   Reference to Monetary Figures**

All references in this Plan to monetary figures refer to currency of the U.S., unless otherwise expressly provided.

**Section 1.06.   Reorganizing Versus Liquidating Debtors**

This Plan distinguishes between two categories of Debtors: the Reorganizing Debtors on the one hand, and the Liquidating Debtors on the other hand.  The classification and treatment of Claims against and Equity Interests in the Reorganizing Debtors is contained in ARTICLE III of this Plan, and the classification and treatment of Claims against and Equity Interests in the Liquidating Debtors is contained in ARTICLE IV of this Plan.

**Section 1.07.   Severability of Plan Provisions**

Although styled as a "joint" plan, this Plan consists of eight (8) separate Subplans (one for each of the Debtors), and each Debtor is a proponent herein within the meaning of section 1129 of the Bankruptcy Code in its respective Chapter 11 Case.  If any Subplan(s) is not confirmed, then the Debtors reserve the right, subject to the written approval of Consultation Parties, to either (a) request that other Subplans be confirmed or (b) withdraw some or all Subplans.  The Debtors' inability to confirm, or election to withdraw, any Subplan(s) shall not impair the confirmation of any other Subplan(s).

**Section 1.08.  No Substantive Consolidation**

The Estates of the Debtors have not been substantively consolidated.  Nothing in this Plan shall constitute or be deemed to constitute an admission that one of the Debtors is subject to or liable for any Claim against any other Debtor.  Claims against more than one Debtor will be treated as separate Claims with respect to each applicable Debtor's Estate for all purposes (including, but not limited to, distributions and voting), and such Claims shall be administered as provided in this Plan and any Subplan; provided, however, that no Creditor shall be entitled to recover more than 100% of the value of its Allowed Claim.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, DIP Facility Claims, Administrative Claims (including Professional Claims) and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in ARTICLE III and ARTICLE IV of this Plan.  For any Subplan, the following designation and treatment of unclassified Claims applies:

**Section 2.01.  DIP Facility Claims**

Consistent with the Final DIP Order, all DIP Facility Claims are and shall be deemed Allowed Claims against each of the Debtors.  On the Effective Date of each of the Subplans for the Debtors, the holders of the Allowed DIP Facility Claims shall receive, in full and final satisfaction of such Claims, an amount of Cash equal to the amount of such Claims (including, without limitation, all outstanding principal and accrued but unpaid interest, costs, fees and expenses owing as of the Effective Date, or any other amounts due and owing under the DIP Facility) to the extent not previously paid during the Chapter 11 Cases.

**Section 2.02.  Administrative Claims**

To the extent not previously paid during the Chapter 11 Cases, except as otherwise provided herein or unless the holder agrees to a different treatment, each holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, release and discharge of such Claim, an amount of Cash equal to the amount of such Allowed Administrative Claim on the later of: (a) the Effective Date; or (b) the date such Administrative Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto (x) on or prior to the Effective Date, by the Debtors from their operating accounts, and (y) after the Effective Date, by the Plan Administrator, in the ordinary course of business solely from the Reorganizing Debtors Claims Reserve or the Liquidating Debtors Claims Reserve, as the case may be, subject to the provisions of this Plan, the Distribution Trust Agreement and/or the Liquidation Trust Agreement.

18

(a)     Administrative Claims Bar Date

Holders of Administrative Claims (other than Professional Claims) shall file any request for allowance and payment of Administrative Claims by the Administrative Claims Bar Date or otherwise be forever barred, estopped, and enjoined from asserting such Claims against the Debtors, the Liquidating Debtors, the Reorganizing Debtors, the Reorganized Debtors and their respective Estates and property, the Plan Administrator, the Distribution Trust, the Liquidation Trust or otherwise, and such Administrative Claim shall be deemed discharged and released as of the Effective Date.

(b)     Professional Claims Bar Date

Holders of Professional Claims shall file any request for allowance and payment of Professional Claims by the Professional Claims Bar Date or otherwise be forever barred, estopped, and enjoined from asserting such Claims against the Debtors, the Liquidating Debtors, the Reorganizing Debtors, the Reorganized Debtors and their respective Estates and property, the Plan Administrator, the Distribution Trust, the Liquidation Trust or otherwise, and such Professional Claim shall be deemed discharged as of the Effective Date.  For the avoidance of doubt, Allowed Professional Claims against the Debtors shall be paid from the Professional Claims Reserve after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and prior Bankruptcy Court orders.

(c)     U.S. Trustee Fees

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the applicable Debtor, or the Plan Administrator (for and on behalf of the Distribution Trust and/or Liquidation Trust, as applicable), as the case may be, for each quarter (including any fraction therein) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first. For the avoidance of doubt, all fees payable pursuant to 28 U.S.C. § 1930(a) incurred on or before the Effective Date shall be paid from Cash being held by the Debtors on the Effective Date.  All fees payable pursuant to 28 U.S.C. § 1930(a) incurred after the Effective Date shall be paid in Cash from the Reorganizing Debtors Wind-Down Costs Reserve or the Liquidating Debtors Wind-Down Costs Reserve, as the case may be.

**Section 2.03.  Priority Tax Claims**

To the extent not previously paid during the Chapter 11 Cases, unless the holder agrees to a different treatment each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release and discharge of such Claim, an amount of Cash equal to the amount of such Allowed Priority Tax Claim on the later of: (a) the Effective Date; or (b) the date such Priority Tax Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.  For the avoidance of doubt, Allowed Priority Tax Claims against the Debtors shall be paid in Cash solely from the Reorganizing Debtors Claims Reserve or the Liquidating Debtors Claims Reserve, as the case may be, subject to the provisions of this Plan, the Distribution Trust Agreement and/or the Liquidation Trust Agreement.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN REORGANIZING DEBTORS

This Plan distinguishes between two categories of Debtors: the Reorganizing Debtors on the one hand, and the Liquidating Debtors on the other.  The classification and treatment of Claims against and Equity Interests in the Reorganizing Debtors is contained in this ARTICLE III.  For the avoidance of doubt, unless otherwise specified in this ARTICLE III, any holder of a Claim or Claims against or Equity Interests in any of the Reorganizing Debtors that is entitled to receive Cash on account of such Allowed Claim or Equity Interest under the Subplan for the applicable Reorganizing Debtor(s) shall be paid in Cash solely from the Reorganizing Debtors Claims Reserve, subject to the provisions of this Plan and the Distribution Trust Agreement, without recourse to (i) any other Asset of the Distribution Trust or (ii) the Reorganizing Debtors, the Reorganized Debtors, the Liquidating Debtors, the Liquidation Trust, the Plan Administrator, or any of their property or Assets.  In the event no holder of a Claim with respect to a specific Class for a particular Debtor timely submits a Ballot that complies with the Disclosure Statement Order indicating acceptance or rejection of this Plan, such Class will be deemed to have accepted this Plan (including for purposes of satisfying section 1129(a)(10) of the Bankruptcy Code). FURTHER, ANY HOLDER OF A CLAIM OR CLAIMS AGAINST ANY OF THE REORGANIZING DEBTORS WHO REJECTS THE PLAN AND OPTS OUT OF THE RELEASES DESCRIBED IN SECTION 12.03 OF THIS PLAN WILL NOT RECEIVE ANY DISTRIBUTIONS UNDER THE SUBPLAN(S) FOR THE APPLICABLE REORGANIZING DEBTOR(S).

**Section 3.01.  Classification**

This Plan constitutes a separate Subplan with respect to each Reorganizing Debtor.  The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation and distribution pursuant to any Subplan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

Holders of Allowed Other Secured Claims against the Reorganizing Debtors shall receive Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any) on account of such Allowed Claims.  Holders of Allowed Other Priority Claims against the Reorganizing Debtors shall receive Post-Petition Interest on account of such Allowed Claims.

Claims against (other than those listed in ARTICLE II of this Plan, which are not required to be classified pursuant to section 1123(a)(1) of the Bankruptcy Code) and Equity Interests in the Reorganizing Debtors are classified as follows:

(a)    Subplan OG: Claims Against and Equity Interests in Optim Generation

| Class | Claim or Equity Interest | Status | Voting Rights |
|---|---|---|---|
| OG 1 | Allowed Pre-Petition Secured Parties Secured Claims | Impaired | Entitled to Vote |
| OG 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| OG 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| OG 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| OG 5 | Equity Interests | Impaired | Deemed to Reject |

(b)    Subplan CB: Claims Against and Equity Interests in Cedar Bayou

| Class | Claim or Equity Interest | Status | Voting Rights |
|---|---|---|---|
| CB 1 | Allowed Pre-Petition Secured Parties Secured Claims | Impaired | Entitled to Vote |
| CB 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| CB 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| CB 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| CB 5 | Equity Interests | Unimpaired | Deemed to Accept |

(c)    Subplan AC: Claims Against and Equity Interests in Altura Cogen

| Class | Claim or Equity Interest | Status | Voting Rights |
|---|---|---|---|
| AC 1 | Allowed Pre-Petition Secured Parties Secured Claims | Impaired | Entitled to Vote |
| AC 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| AC 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| AC 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| AC 5 | Equity Interests | Unimpaired | Deemed to Accept |

**Section 3.02.  Subplan OG: Treatment of Claims Against and Equity Interests in Optim Generation**

(a)    Class OG 1—Allowed Pre-Petition Secured Parties Secured Claims

(i)    *Allowance*: The Class OG 1 Allowed Pre-Petition Secured Claims against Optim Generation have been deemed Allowed against Optim Generation pursuant to the terms of the Final DIP Order.

(ii)    *Treatment*: The holders of Class OG 1 Allowed Pre-Petition Secured Parties Secured Claims against Optim Generation shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, their Allowed Claims, either:

a.    In the event the Sale closes by September 30, 2015 at or above the Reserve Price on terms satisfactory to the Debtors and the Consultation Parties, (x) the Effective Date Class OG 1 Distributable Cash, on the Effective Date; (y) the residual Cash in the Reorganizing

21

Debtors Wind-Down Costs Reserve, if any, following payment of all amounts budgeted for thereunder; and (z) the residual Distribution Trust Assets, if any, following dissolution of the Distribution Trust in accordance with Section 6.08(j) of this Plan; or

b.  In the event the Debtors do not receive a Qualifying Bid by the Bid Deadline (both as defined in the Bidding Procedures) or the Sale does not close as prescribed in Section 3.02(a)(ii)a of this Plan, (x) the Reorganized OEG Equity Interests, on the Effective Date; (y) the residual Cash in the Reorganizing Debtors Wind-Down Costs Reserve, if any, following payment of all amounts budgeted for thereunder; and (z) the residual Distribution Trust Assets, if any, following dissolution of the Distribution Trust in accordance with Section 6.08(j) of this Plan.

(iii)  *Voting*: Class OG 1 is Impaired.  The holders of the Class OG 1 Allowed Pre-Petition Secured Parties Secured Claims against Optim Generation are entitled to vote to accept or reject the Subplan for Optim Generation.

(b)  Class OG 2—Other Secured Claims

(i)  *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class OG 2 Allowed Other Secured Claim against Optim Generation shall receive, in Optim Generation's sole discretion and in full and final satisfaction, release, settlement and discharge of, and in exchange for, such holder's Allowed Other Secured Claim, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court:

a.  Cash equal to the amount of such Allowed Other Secured Claim plus Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any), payable solely from the Reorganized Debtors Claims Reserve subject to the provisions of this Plan and the Distribution Trust Agreement;

b.  Reinstatement of the legal, equitable and contractual rights of the holder of such Allowed Other Secured Claim, subject to the provisions of the Subplan for Optim Generation;

c.  the Collateral securing such Allowed Other Secured Claim plus Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any); or

d.  such other treatment as necessary to satisfy the requirements of section 1124(2) of the Bankruptcy Code for such Allowed Other Secured Claim to be rendered Unimpaired.

22

(ii)    *Voting*: Class OG 2 is Unimpaired.  The holders of Class OG 2 Allowed Other Secured Claims against Optim Generation are conclusively deemed to accept the Subplan for Optim Generation pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(c)    Class OG 3—Other Priority Claims

(i)    *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class OG 3 Allowed Other Priority Claim against Optim Generation shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to the amount of such Allowed Claim plus Post-Petition Interest, payable solely from the Reorganized Debtors Claims Reserve subject to the provisions of this Plan and the Distribution Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.

(ii)    *Voting*: Class OG 3 is Unimpaired.  The holders of Class OG 3 Allowed Other Priority Claims against Optim Generation are conclusively deemed to accept the Subplan for Optim Generation pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(d)    Class OG 4—General Unsecured Claims

(i)    *Treatment*: Unless the holder agrees to a different treatment each holder of a Class OG 4 Allowed General Unsecured Claim against Optim Generation (other than a holder of a Class OG 4 Allowed Pre-Petition Secured Parties Deficiency Claim against Optim Generation) shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to the amount of such Allowed Claim, payable solely from the Reorganized Debtors Claims Reserve subject to the provisions of this Plan and the Distribution Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.  For the avoidance of doubt, in consideration for the Class OG 1—Allowed Pre-Petition Secured Parties Secured Claims treatment in Section 3.02(a)(ii) of this Plan, the holders of Class OG 4 Allowed Pre-Petition Secured Parties Deficiency Claims against Optim Generation have agreed to waive and withdraw such Claims on the Effective Date.

(ii)    *Voting*: Class OG 4 is Impaired.  The holders of Class OG 4 Allowed General Unsecured Claims against Optim Generation are entitled to vote to accept or reject the Subplan for Optim Generation.

(e)     Class OG 5—Equity Interests

(i)     *Treatment*: On the Effective Date, the Class OG 5 Equity Interests in Optim Generation shall be cancelled, extinguished and discharged; and either (x) the Purchaser shall receive 100% of the Reorganized OEG Equity Interests if the Sale closes as prescribed in Section 3.02(a)(ii)a of this Plan; or (y) the Pre-Petition Secured Parties (or their nominee) shall receive 100% of the Reorganized OEG Equity Interests if the Sale does not close as prescribed in Section 3.02(a)(ii)a of this Plan.

(ii)    *Voting*: Class OG 5 is Impaired.  The holders of the Equity Interests in Optim Generation are conclusively deemed to reject the Subplan for Optim Generation pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

**Section 3.03.  Subplan CB: Treatment of Claims Against and Equity Interests in Cedar Bayou**

(a)     Class CB 1—Allowed Pre-Petition Secured Parties Secured Claims

(i)     *Allowance*: The Class CB 1 Allowed Pre-Petition Secured Parties Secured Claims against Cedar Bayou have been deemed Allowed against Cedar Bayou pursuant to the terms of the Final DIP Order.

(ii)    *Treatment*: On the Effective Date, the holders of Class CB 1 Allowed Pre-Petition Secured Parties Secured Claims against Cedar Bayou shall release, settle and discharge their Class CB 1 Allowed Pre-Petition Secured Parties Secured Claims against Cedar Bayou in consideration for the Class OG 1— Allowed Pre-Petition Secured Parties Secured Claims treatment in Section 3.02(a)(ii) of this Plan.

(iii)   *Voting*: Class CB 1 is Impaired.  The holders of the Class CB 1 Allowed Pre-Petition Secured Parties Secured Claims against Cedar Bayou are entitled to vote to accept or reject the Subplan for Cedar Bayou.

(b)     Class CB 2—Other Secured Claims

(i)     *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class CB 2 Allowed Other Secured Claim against Cedar Bayou shall receive, in Cedar Bayou's sole discretion and in full and final satisfaction, release, settlement and discharge of, and in exchange for, such holder's Allowed Other Secured Claim, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court:

a.     Cash equal to the amount of such Allowed Other Secured Claim <u>plus</u> Post-Petition Interest required to be paid under section 506(b) of the

Bankruptcy Code (if any), payable solely from the Reorganized Debtors Claims Reserve subject to the provisions of this Plan and the Distribution Trust Agreement;

b. Reinstatement of the legal, equitable and contractual rights of the holder of such Allowed Other Secured Claim, subject to the provisions of the Subplan for Cedar Bayou;

c. the Collateral securing such Allowed Other Secured Claim plus Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any); or

d. such other treatment as necessary to satisfy the requirements of section 1124(2) of the Bankruptcy Code for such Allowed Other Secured Claim to be rendered Unimpaired.

(ii) *Voting*: Class CB 2 is Unimpaired.  The holders of Class CB 2 Allowed Other Secured Claims against Cedar Bayou are conclusively deemed to accept the Subplan for Cedar Bayou pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(c)    Class CB 3—Other Priority Claims

(i) *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class CB 3 Allowed Other Priority Claim against Cedar Bayou shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to the amount of such Allowed Claim plus Post-Petition Interest, payable solely from the Reorganized Debtors Claims Reserve subject to the provisions of this Plan and the Distribution Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.

(ii) *Voting*: Class CB 3 is Unimpaired.  The holders of Class CB 3 Allowed Other Priority Claims against Cedar Bayou are conclusively deemed to accept the Subplan for Cedar Bayou pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(d)    Class CB 4—General Unsecured Claims

(i) *Treatment*: Unless the holder agrees to a different treatment each holder of a Class CB 4 Allowed General Unsecured Claim against Cedar Bayou (other than a holder of a Class CB 4 Allowed Pre-Petition Secured Parties Deficiency Claim against Cedar Bayou) shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its

Allowed Claim, Cash equal to the amount of such Allowed Claim, payable solely from the Reorganized Debtors Claims Reserve subject to the provisions of this Plan and the Distribution Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court. For the avoidance of doubt, in consideration for the Class OG 1—Allowed Pre-Petition Secured Parties Secured Claims treatment in Section 3.02(a)(ii) of this Plan, the holders of Class CB 4 Allowed Pre-Petition Secured Parties Deficiency Claims against Cedar Bayou have agreed to waive and withdraw such Claims on the Effective Date.

    (ii)    *Voting*: Class CB 4 is Impaired. The holders of Class CB 4 Allowed General Unsecured Claims against Cedar Bayou are entitled to vote to accept or reject the Subplan for Cedar Bayou.

  (e)    Class CB 5—Equity Interests

    (i)    *Treatment*: On the Effective Date, the legal, equitable and contractual rights of the holders of the Class CB 5 Equity Interests shall be reinstated and otherwise unaltered by the Subplan for Cedar Bayou. Class CB 5 Equity Interests are Unimpaired solely to preserve the Reorganized Debtors' corporate structure, and holders of those Equity Interests shall not otherwise receive or retain any property on account of such Equity Interests.

    (ii)    *Voting*: Class CB 5 is Unimpaired. The holders of the Equity Interests in Cedar Bayou are conclusively deemed to accept the Subplan for Cedar Bayou pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

## Section 3.04. Subplan AC: Treatment of Claims Against and Equity Interests in Altura Cogen

  (a)    Class AC 1—Allowed Pre-Petition Secured Parties Secured Claims

    (i)    *Allowance*: The Class AC 1 Allowed Pre-Petition Secured Parties Secured Claims against Altura Cogen have been deemed Allowed against Altura Cogen pursuant to the terms of the Final DIP Order.

    (ii)    *Treatment*: On the Effective Date, the holders of Class AC 1 Allowed Pre-Petition Secured Parties Secured Claims against Altura Cogen shall release, settle and discharge their Class AC 1 Allowed Pre-Petition Secured Parties Secured Claims against Altura Cogen in consideration for the Class OG 1—Allowed Pre-Petition Secured Parties Secured Claims treatment in Section 3.02(a)(ii) of this Plan.

(iii)    *Voting*: Class AC 1 is Impaired.  The holders of the Class AC 1 Allowed Pre-Petition Secured Parties Secured Claims against Altura Cogen are entitled to vote to accept or reject the Subplan for Altura Cogen.

(b)    Class AC 2—Other Secured Claims

(i)    *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class AC 2 Allowed Other Secured Claim against Altura Cogen shall receive, in Altura Cogen's sole discretion and in full and final satisfaction, release, settlement and discharge of, and in exchange for, such holder's Allowed Other Secured Claim, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court:

a.    Cash equal to the amount of such Allowed Other Secured Claim plus Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any), payable solely from the Reorganized Debtors Claims Reserve subject to the provisions of this Plan and the Distribution Trust Agreement;

b.    Reinstatement of the legal, equitable and contractual rights of the holder of such Allowed Other Secured Claim, subject to the provisions of the Subplan for Altura Cogen;

c.    the Collateral securing such Allowed Other Secured Claim plus Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any); or

d.    such other treatment as necessary to satisfy the requirements of section 1124(2) of the Bankruptcy Code for such Allowed Other Secured Claim to be rendered Unimpaired.

(ii)    *Voting*: Class AC 2 is Unimpaired.  The holders of Class AC 2 Allowed Other Secured Claims against Altura Cogen are conclusively deemed to accept the Subplan for Altura Cogen pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(c)    Class AC 3—Other Priority Claims

(i)    *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class AC 3 Allowed Other Priority Claim against Altura Cogen shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to the amount of such Allowed Claim plus Post-Petition Interest, payable solely from the Reorganized Debtors Claims Reserve subject to the provisions of this Plan and the Distribution Trust Agreement, on the later of: (x) the Effective

27

Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.

    (ii)    *Voting*: Class AC 3 is Unimpaired.  The holders of Class AC 3 Allowed Other Priority Claims against Altura Cogen are conclusively deemed to accept the Subplan for Altura Cogen pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(d)    <u>Class AC 4—General Unsecured Claims</u>

    (i)    *Treatment*: Unless the holder agrees to a different treatment each holder of a Class AC 4 Allowed General Unsecured Claim against Altura Cogen (other than a holder of a Class AC 4 Allowed Pre-Petition Secured Parties Deficiency Claim against Altura Cogen) shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to the amount of such Allowed Claim, payable solely from the Reorganized Debtors Claims Reserve subject to the provisions of this Plan and the Distribution Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court. For the avoidance of doubt, in consideration for the Class OG 1—Allowed Pre-Petition Secured Parties Secured Claims treatment in Section 3.02(a)(ii) of this Plan, the holders of Class AC 4 Allowed Pre-Petition Secured Parties Deficiency Claims against Altura Cogen have agreed to waive and withdraw such Claims on the Effective Date.

    (ii)    *Voting*: Class AC 4 is Impaired.  The holders of Class AC 4 Allowed General Unsecured Claims against Altura Cogen are entitled to vote to accept or reject the Subplan for Altura Cogen.

(e)    <u>Class AC 5—Equity Interests</u>

    (i)    *Treatment*: On the Effective Date, the legal, equitable and contractual rights of the holders of the Class AC 5 Equity Interests shall be reinstated and are unaltered by the Subplan for Altura Cogen.  Class AC 5 Equity Interests are Unimpaired solely to preserve the Reorganized Debtors' corporate structure, and holders of those Equity Interests shall not otherwise receive or retain any property on account of such Equity Interests.

    (ii)    *Voting*: Class AC 5 is Unimpaired.  The holders of the Equity Interests in Altura Cogen are conclusively deemed to accept the Subplan for Altura Cogen pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

# ARTICLE IV

# CLASSIFICATION AND TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN LIQUIDATING DEBTORS

The classification and treatment of Claims against and Equity Interests in the Liquidating Debtors is contained in this ARTICLE IV.  For the avoidance of doubt, unless otherwise specified in this ARTICLE IV, any holder of a Claim or Claims against or Equity Interests in any of the Liquidating Debtors that is entitled to receive Cash on account of such Allowed Claim or Equity Interest under the Subplan for the applicable Liquidating Debtor(s) shall be paid in Cash solely from the Liquidating Debtors Claims Reserve, subject to the provisions of this Plan and the Liquidation Trust Agreement, without recourse to (i) any other Asset of the Liquidation Trust or (ii) the Reorganizing Debtors, the Reorganized Debtors, the Liquidating Debtors, the Distribution Trust, the Plan Administrator, or any of their property or Assets.  In the event no holder of a Claim with respect to a specific Class for a particular Debtor timely submits a Ballot that complies with the Disclosure Statement Order indicating acceptance or rejection of the Plan, such Class will be deemed to have accepted the Plan (including for purposes of satisfying section 1129(a)(10) of the Bankruptcy Code).  ANY HOLDER OF A CLAIM OR CLAIMS AGAINST ANY OF THE LIQUIDATING DEBTORS WHO REJECTS THE PLAN AND OPTS OUT OF THE RELEASES DESCRIBED IN SECTION 12.03 OF THIS PLAN WILL NOT RECEIVE ANY DISTRIBUTIONS UNDER THE SUBPLAN(S) FOR THE APPLICABLE LIQUIDATING DEBTOR(S).

## Section 4.01.  Classification

This Plan constitutes a separate Subplan with respect to each Liquidating Debtor.  The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation and distribution pursuant to any Subplan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

Holders of Allowed Other Secured Claims against the Liquidating Debtors shall receive Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any) on account of such Allowed Claims.

Claims against (other than those listed in ARTICLE II of this Plan, which are not required to be classified pursuant to section 1123(a)(1) of the Bankruptcy Code) and Equity Interests in the Liquidating Debtors are classified as follows:

29

(a)    <u>Subplan OE: Claims Against and Equity Interests in Optim Energy</u>

| Class | Claim or Equity Interest | Status | Voting Rights |
|-------|--------------------------|--------|---------------|
| OE 1 | Allowed Pre-Petition Secured Parties Secured Claims | Impaired | Entitled to Vote |
| OE 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| OE 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| OE 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| OE 5 | Convenience Class Claims | Impaired | Entitled to Vote |
| OE 6 | Walnut Creek Claims | Impaired | Entitled to Vote |
| OE 7 | Subordinated Claims | Impaired | Deemed to Reject |
| OE 8 | Equity Interests | Impaired | Deemed to Reject |

(b)    <u>Subplan OM: Claims Against and Equity Interests in Optim Marketing</u>

| Class | Claim or Equity Interest | Status | Voting Rights |
|-------|--------------------------|--------|---------------|
| OM 1 | Allowed Pre-Petition Secured Parties Secured Claims | Impaired | Entitled to Vote |
| OM 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| OM 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| OM 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| OM 5 | Subordinated Claims | Impaired | Deemed to Reject |
| OM 6 | Equity Interests | Impaired | Deemed to Reject |

(c)    <u>Subplan OEM: Claims Against and Equity Interests in OEM</u>

| Class | Claim or Equity Interest | Status | Voting Rights |
|-------|--------------------------|--------|---------------|
| OEM 1 | Allowed Pre-Petition Secured Parties Secured Claims | Impaired | Entitled to Vote |
| OEM 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| OEM 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| OEM 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| OEM 5 | Subordinated Claims | Impaired | Deemed to Reject |
| OEM 6 | Equity Interests | Impaired | Deemed to Reject |

(d)    <u>Subplan TOGP: Claims Against and Equity Interests in Twin Oaks GP</u>

| Class | Claim or Equity Interest | Status | Voting Rights |
|-------|--------------------------|--------|---------------|
| TOGP 1 | Allowed Pre-Petition Secured Parties Secured Claims | Impaired | Entitled to Vote |
| TOGP 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| TOGP 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| TOGP 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| TOGP 5 | Subordinated Claims | Impaired | Deemed to Reject |
| TOGP 6 | Equity Interests | Impaired | Deemed to Reject |

(e)    Subplan TOLP: Claims Against and Equity Interests in Twin Oaks LP

| Class | Claim or Equity Interest | Status | Voting Rights |
|-------|--------------------------|--------|---------------|
| TOLP 1 | Allowed Pre-Petition Secured Parties Secured Claims | Impaired | Entitled to Vote |
| TOLP 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| TOLP 3 | Other Priority Secured | Unimpaired | Deemed to Accept |
| TOLP 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| TOLP 5 | Convenience Class Claims | Impaired | Entitled to Vote |
| TOLP 6 | Walnut Creek Claims | Impaired | Entitled to Vote |
| TOLP 7 | Subordinated Claims | Impaired | Deemed to Reject |
| TOLP 8 | Equity Interests | Impaired | Deemed to Reject |

## Section 4.02. Subplan OE: Treatment of Claims Against and Equity Interests in Optim Energy

(a)    Class OE 1—Allowed Pre-Petition Secured Parties Secured Claims

(i)    *Allowance*: The Class OE 1 Allowed Pre-Petition Secured Parties Secured Claims against Optim Energy have been deemed Allowed against Optim Energy pursuant to the terms of the Final DIP Order.

(ii)    *Treatment*: The holders of Class OE 1 Allowed Pre-Petition Secured Parties Secured Claims against Optim Energy shall receive the following, in full and final satisfaction, release, settlement and discharge of, and in exchange for, their Allowed Claims: (x) the Effective Date Class OE 1 Distributable Cash, on the Effective Date; (y) the residual Cash in the Liquidating Debtors Wind-Down Costs Reserve, if any, following payment of all amounts budgeted for thereunder; and (z) the residual Liquidation Trust Assets, if any, following dissolution of the Liquidation Trust in accordance with Section 7.05(j) of this Plan.

(iii)    *Voting*: Class OE 1 is Impaired.  The holders of the Class OE 1 Allowed Pre-Petition Secured Parties Secured Claims against Optim Energy are entitled to vote to accept or reject the Subplan for Optim Energy.

(b)    Class OE 2—Other Secured Claims

(i)    *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class OE 2 Allowed Other Secured Claim against Optim Energy shall receive, in Optim Energy's sole discretion and in full and final satisfaction, release, settlement and discharge of, and in exchange for, such holder's Allowed Other Secured Claim, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court:

31

a. Cash equal to the amount of such Allowed Other Secured Claim plus Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any), payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of the Plan and the Liquidation Trust Agreement;

b. Reinstatement of the legal, equitable and contractual rights of the holder of such Allowed Other Secured Claim, subject to the provisions of the Subplan for Optim Energy;

c. the Collateral securing such Allowed Other Secured Claim plus Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any); or

d. such other treatment as necessary to satisfy the requirements of section 1124(2) of the Bankruptcy Code for such Allowed Other Secured Claim to be rendered Unimpaired.

(ii)    *Voting*: Class OE 2 is Unimpaired.  The holders of Class OE 2 Allowed Other Secured Claims against Optim Energy are conclusively deemed to accept the Subplan for Optim Energy pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(c)    Class OE 3—Other Priority Claims

(i)    *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class OE 3 Allowed Other Priority Claim against Optim Energy shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to the amount of such Allowed Claim, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.

(ii)    *Voting*: Class OE 3 is Unimpaired.  The holders of Class OE 3 Allowed Other Priority Claims against Optim Energy are conclusively deemed to accept the Subplan for Optim Energy pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(d)    Class OE 4—General Unsecured Claims

(i)    *Treatment*: In the event that Class OE 4 votes to accept the Subplan for Optim Energy, unless the holder agrees to a different treatment each holder of a Class OE 4 Allowed General Unsecured Claim against Optim Energy

(other than a holder of a Class OE 4 Allowed Pre-Petition Secured Parties Deficiency Claim against Optim Energy) shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to its Pro Rata share of $10,000.00 (not to exceed such holder's possible percentage recovery under Class OE 5), payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.   For the avoidance of doubt, in consideration for the Class OE 1—Allowed Pre-Petition Secured Parties Secured Claims treatment in Section 4.02(a)(ii) of this Plan, and in the event that Class OE 4 votes to accept the Subplan for Optim Energy, the holders of Class OE 4 Allowed Pre-Petition Secured Parties Deficiency Claims against Optim Energy have agreed to waive and withdraw such Claims on the Effective Date.

In the event that Class OE 4 does not vote to accept the Subplan for Optim Energy, on the Effective Date each holder of a Class OE 4 Allowed General Unsecured Claim against Optim Energy: (x) shall be enjoined from pursuing any Class OE 4 Allowed General Unsecured Claim against Optim Energy; and (y) shall not receive or retain any distribution on account of its Class OE 4 Allowed General Unsecured Claim under the Subplan for Optim Energy.

(ii)   *Voting*: Class OE 4 is Impaired.   The holders of Class OE 4 Allowed General Unsecured Claims against Optim Energy are entitled to vote to accept or reject the Subplan for Optim Energy.

(e)   Class OE 5—Convenience Class Claims

(i)   *Treatment*: In the event that Class OE 5 votes to accept the Subplan for Optim Energy, unless the holder agrees to a different treatment each holder of a Class OE 5 Allowed Convenience Class Claim against Optim Energy shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to its Pro Rata share of $1,393.00, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.

In the event that Class OE 5 does not vote to accept the Subplan for Optim Energy, on the Effective Date each holder of a Class OE 5 Allowed Convenience Class Claim against Optim Energy: (x) shall be enjoined from pursuing any Class OE 5 Allowed Convenience Class Claim against Optim Energy; and (y) shall not receive or retain any distribution on account of its

Class OE 5 Allowed Convenience Class Claim under the Subplan for Optim Energy.

(ii) *Voting*: Class OE 5 is Impaired.  The holders of Class OE 5 Allowed Convenience Class Claims against Optim Energy are entitled to vote to accept or reject the Subplan for Optim Energy.

(f)    Class OE 6—Walnut Creek Claims

(i) *Treatment*: In the event that Class OE 6 votes to accept the Subplan for Optim Energy, unless the holder agrees to a different treatment each holder of a Class OE 6 Allowed Walnut Creek Claim against Optim Energy shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, the Class TOLP 6— Allowed Walnut Creek Claims treatment in Section 4.06(f)(i) of this Plan.

In the event that Class OE 6 does not vote to accept the Subplan for Optim Energy, on the Effective Date each holder of a Class OE 6 Allowed Walnut Creek Claim against Optim Energy: (x) shall be enjoined from pursuing any Class OE 6 Allowed Walnut Creek Claim against Optim Energy; and (y) shall not receive or retain any distribution on account of its Class OE 6 Allowed Walnut Creek Claim under the Subplan for Optim Energy.

(ii) *Voting*: Class OE 6 is Impaired.  The holders of Class OE 6 Allowed Walnut Creek Claims against Optim Energy are entitled to vote to accept or reject the Subplan for Optim Energy.

(g)    Class OE 7—Subordinated Claims

(i) *Allowance*: A Subordinated Claim (if any) against Optim Energy may only become Allowed by Final Order of the Bankruptcy Court.

(ii) *Treatment*: On the Effective Date, each holder of a Class OE 7 Allowed Subordinated Claim against Optim Energy: (x) shall be enjoined from pursuing any Class OE 7 Subordinated Claim against Optim Energy; and (y) shall not receive or retain any distribution on account of its Class OE 7 Subordinated Claim under the Subplan for Optim Energy.

(iii) *Voting*: Class OE 7 is Impaired.  The holders of Class OE 7 Allowed Subordinated Claims against Optim Energy are conclusively deemed to reject the Subplan for Optim Energy pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(h)     Class OE 8—Equity Interests

    (i)     *Treatment*: On the Effective Date, the Class OE 8 Equity Interests in Optim Energy shall be cancelled, extinguished and discharged and each holder thereof shall not receive or retain any distribution on account of its Class OE 8 Equity Interests under the Subplan for Optim Energy.

    (ii)    *Voting*: Class OE 8 is Impaired.  The holders of the Equity Interests in Optim Energy are conclusively deemed to reject the Subplan for Optim Energy pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

**Section 4.03.  Subplan OM: Treatment of Claims Against and Equity Interests in Optim Marketing**

(a)     Class OM 1—Allowed Pre-Petition Secured Parties Secured Claims

    (i)     *Allowance*: The Class OM 1 Allowed Pre-Petition Secured Parties Secured Claims against Optim Marketing have been deemed Allowed against Optim Marketing pursuant to the terms of the Final DIP Order.

    (ii)    *Treatment*: On the Effective Date, the holders of Class OM 1 Allowed Pre-Petition Secured Parties Secured Claims against Optim Marketing shall release, settle and discharge their Class OM 1—Allowed Pre-Petition Secured Parties Secured Claims against Optim Marketing in consideration for the Class OE 1—Allowed Pre-Petition Secured Parties Secured Claims treatment in Section 4.02(a)(ii) of this Plan.

    (iii)   *Voting*: Class OM 1 is Impaired.  The holders of the Class OM 1 Allowed Pre-Petition Secured Parties Secured Claims against Optim Marketing are entitled to vote to accept or reject the Subplan for Optim Marketing.

(b)     Class OM 2—Other Secured Claims

    (i)     *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class OM 2 Allowed Other Secured Claim against Optim Marketing shall receive, in Optim Marketing's sole discretion and in full and final satisfaction, release, settlement and discharge of, and in exchange for, such holder's Allowed Other Secured Claim, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court:

        a.   Cash equal to the amount of such Allowed Other Secured Claim plus Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any), payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of the Plan and the Liquidation Trust Agreement;

35

b. Reinstatement of the legal, equitable and contractual rights of the holder of such Allowed Other Secured Claim, subject to the provisions of the Subplan for Optim Marketing;

c. the Collateral securing such Allowed Other Secured Claim <u>plus</u> Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any); or

d. such other treatment as necessary to satisfy the requirements of section 1124(2) of the Bankruptcy Code for such Allowed Other Secured Claim to be rendered Unimpaired.

(ii) *Voting*: Class OM 2 is Unimpaired.  The holders of Class OM 2 Allowed Other Secured Claims against Optim Marketing are conclusively deemed to accept the Subplan for Optim Marketing pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(c)  Class OM 3—Other Priority Claims

(i) *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class OM 3 Allowed Other Priority Claim against Optim Marketing shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to the amount of such Allowed Claim, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.

(ii) *Voting*: Class OM 3 is Unimpaired.  The holders of Class OM 3 Allowed Other Priority Claims against Optim Marketing are conclusively deemed to accept the Subplan for Optim Marketing pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(d)  Class OM 4—General Unsecured Claims

(i) *Treatment*: In the event that Class OM 4 votes to accept the Subplan for Optim Marketing, unless the holder agrees to a different treatment each holder of a Class OM 4 Allowed General Unsecured Claim against Optim Marketing (other than a holder of a Class OM 4 Allowed Pre-Petition Secured Parties Deficiency Claim against Optim Marketing) shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to its Pro Rata share of $10,000.00, payable solely from the Liquidating Debtors Claims Reserve

subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court. For the avoidance of doubt, in consideration for the Class OE 1—Allowed Pre-Petition Secured Parties Secured Claims treatment in Section 4.02(a)(ii) of this Plan, and in the event that Class OM 4 votes to accept the Subplan for Optim Marketing, the holders of Class OM 4 Allowed Pre-Petition Secured Parties Deficiency Claims against Optim Marketing have agreed to waive and withdraw such Claims on the Effective Date.

In the event that Class OM 4 does not vote to accept the Subplan for Optim Marketing, on the Effective Date each holder of a Class OM 4 Allowed General Unsecured Claim against Optim Marketing: (x) shall be enjoined from pursuing any Class OM 4 Allowed General Unsecured Claim against Optim Marketing; and (y) shall not receive or retain any distribution on account of its Class OM 4 Allowed General Unsecured Claim under the Subplan for Optim Marketing.

(ii)    *Voting*: Class OM 4 is Impaired.  The holders of Class OM 4 Allowed General Unsecured Claims against Optim Marketing are entitled to vote to accept or reject the Subplan for Optim Marketing.

(e)    Class OM 5—Subordinated Claims

(i)    *Allowance*: A Subordinated Claim (if any) against Optim Marketing may only become Allowed by Final Order of the Bankruptcy Court.

(ii)    *Treatment*: On the Effective Date, each holder of a Class OM 5 Allowed Subordinated Claim against Optim Marketing: (x) shall be enjoined from pursuing any Class OM 5 Subordinated Claim against Optim Marketing; and (y) shall not receive or retain any distribution on account of its Class OM 5 Subordinated Claim under the Subplan for Optim Marketing.

(iii)    *Voting*: Class OM 5 is Impaired.  The holders of Class OM 5 Allowed Subordinated Claims against Optim Marketing are conclusively deemed to reject the Subplan for Optim Marketing pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(f)    Class OM 6—Equity Interests

(i)    *Treatment*: On the Effective Date, the Class OM 6 Equity Interests in Optim Marketing shall be cancelled, extinguished and discharged and each holder thereof shall not receive or retain any distribution on account of its Class OM 6 Equity Interests under the Subplan for Optim Marketing.

37

(ii)    *Voting*: Class OM 6 is Impaired.  The holders of the Equity Interests in Optim Marketing are conclusively deemed to reject the Subplan for Optim Marketing pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

**Section 4.04.    Subplan OEM: Treatment of Claims Against and Equity Interests in OEM**

(a)    Class OEM 1—Allowed Pre-Petition Secured Parties Secured Claims

(i)    *Allowance*: The Class OEM 1 Allowed Pre-Petition Secured Parties Secured Claims against OEM have been deemed Allowed against OEM pursuant to the terms of the Final DIP Order.

(ii)    *Treatment*: On the Effective Date, the holders of Class OEM 1 Allowed Pre-Petition Secured Parties Secured Claims against OEM shall release, settle and discharge their Class OEM 1—Allowed Pre-Petition Secured Parties Secured Claims against OEM in consideration for the Class OE 1— Allowed Pre-Petition Secured Parties Secured Claims treatment in Section 4.02(a)(ii) of this Plan.

(iii)    *Voting*: Class OEM 1 is Impaired.  The holders of the Class OEM 1 Allowed Pre-Petition Secured Parties Secured Claims against OEM are entitled to vote to accept or reject the Subplan for OEM.

(b)    Class OEM 2—Other Secured Claims

(i)    *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class OEM 2 Allowed Other Secured Claim against OEM shall receive, in OEM's sole discretion and in full and final satisfaction, release, settlement and discharge of, and in exchange for, such holder's Allowed Other Secured Claim, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court:

a.    Cash equal to the amount of such Allowed Other Secured Claim plus Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any), payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of the Plan and the Liquidation Trust Agreement;

b.    Reinstatement of the legal, equitable and contractual rights of the holder of such Allowed Other Secured Claim, subject to the provisions of the Subplan for OEM;

c.    the Collateral securing such Allowed Other Secured Claim plus Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any); or

38

      d.  such other treatment as necessary to satisfy the requirements of section 1124(2) of the Bankruptcy Code for such Allowed Other Secured Claim to be rendered Unimpaired.

(ii)    *Voting*: Class OEM 2 is Unimpaired.  The holders of Class OEM 2 Allowed Other Secured Claims against OEM are conclusively deemed to accept the Subplan for OEM pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(c)    <u>Class OEM 3—Other Priority Claims</u>

(i)    *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class OEM 3 Allowed Other Priority Claim against OEM shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to the amount of such Allowed Claim, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.

(ii)    *Voting*: Class OEM 3 is Unimpaired.  The holders of Class OEM 3 Allowed Other Priority Claims against OEM are conclusively deemed to accept the Subplan for OEM pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(d)    <u>Class OEM 4—General Unsecured Claims</u>

(i)    *Treatment*: In the event that Class OEM 4 votes to accept the Subplan for OEM, unless the holder agrees to a different treatment each holder of a Class OEM 4 Allowed General Unsecured Claim against OEM (other than a holder of a Class OEM 4 Allowed Pre-Petition Secured Parties Deficiency Claim against OEM) shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to its Pro Rata share of $10,000.00, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.  For the avoidance of doubt, in consideration for the Class OE 1—Allowed Pre-Petition Secured Parties Secured Claims treatment in Section 4.02(a)(ii) of this Plan, and in the event that Class OEM 4 votes to accept the Subplan for OEM, the holders of Class OEM 4 Allowed Pre-Petition Secured Parties Deficiency Claims against OEM have agreed to waive and withdraw such Claims on the Effective Date.

In the event that Class OEM 4 does not vote to accept the Subplan for OEM, on the Effective Date each holder of a Class OEM 4 Allowed General Unsecured Claim against OEM: (x) shall be enjoined from pursuing any Class OEM 4 Allowed General Unsecured Claim against OEM; and (y) shall not receive or retain any distribution on account of its Class OEM 4 Allowed General Unsecured Claim under the Subplan for OEM.

(ii)    *Voting*: Class OEM 4 is Impaired.  The holders of Class OEM 4 Allowed General Unsecured Claims against OEM are entitled to vote to accept or reject the Subplan for OEM.

(e)    Class OEM 5—Subordinated Claims

(i)    *Allowance*: A Subordinated Claim (if any) against OEM may only become Allowed by Final Order of the Bankruptcy Court.

(ii)    *Treatment*: On the Effective Date, each holder of a Class OEM 5 Allowed Subordinated Claim against OEM: (x) shall be enjoined from pursuing any Class OEM 5 Subordinated Claim against OEM; and (y) shall not receive or retain any distribution on account of its Class OEM 5 Subordinated Claim under the Subplan for OEM.

(iii)    *Voting*: Class OEM 5 is Impaired.  The holders of Class OEM 5 Allowed Subordinated Claims against OEM are conclusively deemed to reject the Subplan for OEM pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(f)    Class OEM 6—Equity Interests

(i)    *Treatment*: On the Effective Date, the Class OEM 6 Equity Interests in OEM shall be cancelled, extinguished and discharged and each holder thereof shall not receive or retain any distribution on account of its Class OEM 6 Equity Interests under the Subplan for OEM.

(ii)    *Voting*: Class OEM 6 is Impaired.  The holders of the Equity Interests in OEM are conclusively deemed to reject the Subplan for OEM pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

**Section 4.05.  Subplan TOGP: Treatment of Claims Against and Equity Interests in Twin Oaks GP**

    (a)    <u>Class TOGP 1—Allowed Pre-Petition Secured Parties Secured Claims</u>

        (i)    *Allowance*: The Class TOGP 1 Allowed Pre-Petition Secured Parties Secured Claims against Twin Oaks GP have been deemed Allowed against Twin Oaks GP pursuant to the terms of the Final DIP Order.

        (ii)    *Treatment*: On the Effective Date, the holders of Class TOGP 1 Allowed Pre-Petition Secured Parties Secured Claims against Twin Oaks GP shall release, settle and discharge their Class TOGP 1—Allowed Pre-Petition Secured Parties Secured Claims against Twin Oaks GP in consideration for the Class OE 1—Allowed Pre-Petition Secured Parties Secured Claims treatment in Section 4.02(a)(ii) of this Plan.

        (iii)    *Voting*: Class TOGP 1 is Impaired.  The holders of the Class TOGP 1 Allowed Pre-Petition Secured Parties Secured Claims against Twin Oaks GP are entitled to vote to accept or reject the Subplan for Twin Oaks GP.

    (b)    <u>Class TOGP 2—Other Secured Claims</u>

        (i)    *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class TOGP 2 Allowed Other Secured Claim against Twin Oaks GP shall receive, in Twin Oaks GP's sole discretion and in full and final satisfaction, release, settlement and discharge of, and in exchange for, such holder's Allowed Other Secured Claim, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court:

            a.    Cash equal to the amount of such Allowed Other Secured Claim <u>plus</u> Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any), payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of the Plan and the Liquidation Trust Agreement;

            b.    Reinstatement of the legal, equitable and contractual rights of the holder of such Allowed Other Secured Claim, subject to the provisions of the Subplan for Twin Oaks GP;

            c.    the Collateral securing such Allowed Other Secured Claim <u>plus</u> Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any); or

            d.    such other treatment as necessary to satisfy the requirements of section 1124(2) of the Bankruptcy Code for such Allowed Other Secured Claim to be rendered Unimpaired.

41

(ii) *Voting*: Class TOGP 2 is Unimpaired.  The holders of Class TOGP 2 Allowed Other Secured Claims against Twin Oaks GP are conclusively deemed to accept the Subplan for Twin Oaks GP pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(c)     Class TOGP 3—Other Priority Claims

(i) *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class TOGP 3 Allowed Other Priority Claim against Twin Oaks GP shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to the amount of such Allowed Claim, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.

(ii) *Voting*: Class TOGP 3 is Unimpaired.  The holders of Class TOGP 3 Allowed Other Priority Claims against Twin Oaks GP are conclusively deemed to accept the Subplan for Twin Oaks GP pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(d)     Class TOGP 4—General Unsecured Claims

(i) *Treatment*: In the event that Class TOGP 4 votes to accept the Subplan for Twin Oaks GP, unless the holder agrees to a different treatment each holder of a Class TOGP 4 Allowed General Unsecured Claim against Twin Oaks GP (other than a holder of a Class TOGP 4 Allowed Pre-Petition Secured Parties Deficiency Claim against Twin Oaks GP) shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to its Pro Rata share of $10,000.00, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.  For the avoidance of doubt, in consideration for the Class OE 1—Allowed Pre-Petition Secured Parties Secured Claims treatment in Section 4.02(a)(ii) of this Plan, and in the event that Class TOGP 4 votes to accept the Subplan for Twin Oaks GP, the holders of Class TOGP 4 Allowed Pre-Petition Secured Parties Deficiency Claims against Twin Oaks GP have agreed to waive and withdraw such Claims on the Effective Date.

In the event that Class TOGP 4 does not vote to accept the Subplan for Twin Oaks GP, on the Effective Date each holder of a Class TOGP 4

42

Allowed General Unsecured Claim against Twin Oaks GP: (x) shall be enjoined from pursuing any Class TOGP 4 Allowed General Unsecured Claim against Twin Oaks GP; and (y) shall not receive or retain any distribution on account of its Class TOGP 4 Allowed General Unsecured Claim under the Subplan for Twin Oaks GP.

(ii)   *Voting*: Class TOGP 4 is Impaired.  The holders of Class TOGP 4 Allowed General Unsecured Claims against Twin Oaks GP are entitled to vote to accept or reject the Subplan for Twin Oaks GP.

(e)   Class TOGP 5—Subordinated Claims

(i)   *Allowance*: A Subordinated Claim (if any) against Twin Oaks GP may only become Allowed by Final Order of the Bankruptcy Court.

(ii)   *Treatment*: On the Effective Date, each holder of a Class TOGP 5 Allowed Subordinated Claim against Twin Oaks GP: (x) shall be enjoined from pursuing any Class TOGP 5 Subordinated Claim against Twin Oaks GP; and (y) shall not receive or retain any distribution on account of its Class TOGP 5 Subordinated Claim under the Subplan for Twin Oaks GP.

(iii)   *Voting*: Class TOGP 5 is Impaired.  The holders of Class TOGP 5 Allowed Subordinated Claims against Twin Oaks GP are conclusively deemed to reject the Subplan for Twin Oaks GP pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(f)   Class TOGP 6—Equity Interests

(i)   *Treatment*: On the Effective Date, the Class TOGP 6 Equity Interests in Twin Oaks GP shall be cancelled, extinguished and discharged and each holder thereof shall not receive or retain any distribution on account of its Class TOGP 6 Equity Interests under the Subplan for Twin Oaks GP.

(ii)   *Voting*: Class TOGP 6 is Impaired.  The holders of the Equity Interests in Twin Oaks GP are conclusively deemed to reject the Subplan for Twin Oaks GP pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

**Section 4.06.  Subplan TOLP: Treatment of Claims Against and Equity Interests in Twin Oaks LP**

(a)   Class TOLP 1—Allowed Pre-Petition Secured Parties Secured Claims

(i)   *Allowance*: The Class TOLP 1 Allowed Pre-Petition Secured Parties Secured Claims against Twin Oaks LP have been deemed Allowed against Twin Oaks LP pursuant to the terms of the Final DIP Order.

(ii)   *Treatment*: On the Effective Date, the holders of Class TOLP 1 Allowed Pre-Petition Secured Parties Secured Claims against Twin Oaks LP shall release, settle and discharge their Class TOLP 1—Allowed Pre-Petition Secured Parties Secured Claims against Twin Oaks LP in consideration for the Class OE 1—Allowed Pre-Petition Secured Parties Secured Claims treatment in Section 4.02(a)(ii) of this Plan.

(iii)  *Voting*: Class TOLP 1 is Impaired.  The holders of the Class TOLP 1 Allowed Pre-Petition Secured Parties Secured Claims against Twin Oaks LP are entitled to vote to accept or reject the Subplan for Twin Oaks LP.

(b)    Class TOLP 2—Other Secured Claims

(i)    *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class TOLP 2 Allowed Other Secured Claim against Twin Oaks LP shall receive, in Twin Oaks LP's sole discretion and in full and final satisfaction, release, settlement and discharge of, and in exchange for, such holder's Allowed Other Secured Claim, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court:

a.   Cash equal to the amount of such Allowed Other Secured Claim plus Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any), payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of the Plan and the Liquidation Trust Agreement;

b.   Reinstatement of the legal, equitable and contractual rights of the holder of such Allowed Other Secured Claim, subject to the provisions of the Subplan for Twin Oaks LP;

c.   the Collateral securing such Allowed Other Secured Claim plus Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any); or

d.   such other treatment as necessary to satisfy the requirements of section 1124(2) of the Bankruptcy Code for such Allowed Other Secured Claim to be rendered Unimpaired.

(ii)   *Voting*: Class TOLP 2 is Unimpaired.  The holders of Class TOLP 2 Allowed Other Secured Claims against Twin Oaks LP are conclusively deemed to accept the Subplan for Twin Oaks LP pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

44

(c)     Class TOLP 3—Other Priority Claims

    (i)     *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class TOLP 3 Allowed Other Priority Claim against Twin Oaks LP shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to the amount of such Allowed Claim, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.

    (ii)     *Voting*: Class TOLP 3 is Unimpaired.  The holders of Class TOLP 3 Allowed Other Priority Claims against Twin Oaks LP are conclusively deemed to accept the Subplan for Twin Oaks LP pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(d)     Class TOLP 4—General Unsecured Claims

    (i)     *Treatment*: In the event that Class TOLP 4 votes to accept the Subplan for Twin Oaks LP, unless the holder agrees to a different treatment each holder of a Class TOLP 4 Allowed General Unsecured Claim against Twin Oaks LP (other than a holder of a Class TOLP 4 Allowed Pre-Petition Secured Parties Deficiency Claim against Twin Oaks LP) shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to its Pro Rata share of $80,000.00, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.  For the avoidance of doubt, in consideration for the Class OE 1—Allowed Pre-Petition Secured Parties Secured Claims treatment in Section 4.02(a)(ii) of this Plan, and in the event that Class TOLP 4 votes to accept the Subplan for Twin Oaks LP, the holders of Class TOLP 4 Allowed Pre-Petition Secured Parties Deficiency Claims against Twin Oaks LP have agreed to waive and withdraw such Claims on the Effective Date.

    In the event that Class TOLP 4 does not vote to accept the Subplan for Twin Oaks LP, on the Effective Date each holder of a Class TOLP 4 Allowed General Unsecured Claim against Twin Oaks LP: (x) shall be enjoined from pursuing any Class TOLP 4 Allowed General Unsecured Claim against Twin Oaks LP; and (y) shall not receive or retain any distribution on account of its Class TOLP 4 Allowed General Unsecured Claim under the Subplan for Twin Oaks LP.

(ii)     *Voting*: Class TOLP 4 is Impaired.  The holders of Class TOLP 4 Allowed General Unsecured Claims against Twin Oaks LP are entitled to vote to accept or reject the Subplan for Twin Oaks LP.

(e)     <u>Class TOLP 5—Convenience Class Claims</u>

(i)     *Treatment*: In the event that Class TOLP 5 votes to accept the Subplan for Twin Oaks LP, unless the holder agrees to a different treatment each holder of a Class TOLP 5 Allowed Convenience Class Claim against Twin Oaks LP shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to its Pro Rata share of $80,000.00, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.

In the event that Class TOLP 5 does not vote to accept the Subplan for Twin Oaks LP, on the Effective Date each holder of a Class TOLP 5 Allowed Convenience Class Claim against Twin Oaks LP: (x) shall be enjoined from pursuing any Class TOLP 5 Allowed Convenience Class Claim against Twin Oaks LP; and (y) shall not receive or retain any distribution on account of its Class TOLP 5 Allowed Convenience Class Claim under the Subplan for Twin Oaks LP.

(ii)     *Voting*: Class TOLP 5 is Impaired.  The holders of Class TOLP 5 Allowed Convenience Class Claims against Twin Oaks LP are entitled to vote to accept or reject the Subplan for Twin Oaks LP.

(f)     <u>Class TOLP 6—Walnut Creek Claims</u>

(i)     *Treatment*: In the event that Class TOLP 6 votes to accept the Subplan for Twin Oaks LP, unless the holder agrees to a different treatment each holder of a Class TOLP 6 Allowed Walnut Creek Claim against Twin Oaks LP shall receive, in full and final satisfaction, release, settlement and discharge of, and in exchange for, its Allowed Claim, $80,000.00, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.

In the event that Class TOLP 6 does not vote to accept the Subplan for Twin Oaks LP, on the Effective Date each holder of a Class TOLP 6 Allowed Walnut Creek Claim against Twin Oaks LP: (x) shall be enjoined from pursuing any Class TOLP 6 Allowed Walnut Creek Claim against Twin Oaks LP; and (y) shall not receive or retain any distribution on

account of its Class TOLP 6 Allowed Walnut Creek Claim under the Subplan for Twin Oaks LP.

(ii) *Voting*: Class TOLP 6 is Impaired.  The holders of Class TOLP 6 Allowed Walnut Creek Claims against Twin Oaks LP are entitled to vote to accept or reject the Subplan for Twin Oaks LP.

(g)    Class TOLP 7—Subordinated Claims

(i) *Allowance*: A Subordinated Claim (if any) against Twin Oaks LP may only become Allowed by Final Order of the Bankruptcy Court.

(ii) *Treatment*: On the Effective Date, each holder of a Class TOLP 7 Allowed Subordinated Claim against Twin Oaks LP: (x) shall be enjoined from pursuing any Class TOLP 7 Subordinated Claim against Twin Oaks LP; and (y) shall not receive or retain any distribution on account of its Class TOLP 7 Subordinated Claim under the Subplan for Twin Oaks LP.

(iii) *Voting*: Class TOLP 7 is Impaired.  The holders of Class TOLP 7 Allowed Subordinated Claims against Twin Oaks LP are conclusively deemed to reject the Subplan for Twin Oaks LP pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(h)    Class TOLP 8—Equity Interests

(i) *Treatment*: On the Effective Date, the Class TOLP 8 Equity Interests in Twin Oaks LP shall be cancelled, extinguished and discharged and each holder thereof shall not receive or retain any distribution on account of its Class TOLP 8 Equity Interests under the Subplan for Twin Oaks LP.

(ii) *Voting*: Class TOLP 8 is Impaired.  The holders of the Equity Interests in Twin Oaks LP are conclusively deemed to reject the Subplan for Twin Oaks LP pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

# ARTICLE V

## ACCEPTANCE OR REJECTION OF THE SUBPLANS

### Section 5.01.  Acceptance by an Impaired Class

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, Impaired Classes entitled to vote under a Subplan shall have accepted the applicable Subplan if it is accepted by the holders of at least two-thirds (2/3) in

dollar amount and more than one-half (1/2) in number of the Allowed Claims that have timely and properly voted to accept or reject the Subplan.

## Section 5.02.  Nonconsensual Confirmation

The Debtors may request confirmation under section 1129(b) of the Bankruptcy Code with respect to (a) any Impaired Class of Claims and Equity Interests that have not accepted a Subplan in accordance with sections 1126 and 1129(a)(8) of the Bankruptcy Code and (b) any Class that is deemed to reject the applicable Subplan pursuant to section 1126(g) of the Bankruptcy Code or the terms of the Subplan or otherwise.  The Debtors reserve the right, subject to the written approval of the Consultation Parties to amend or modify any Subplan in accordance with Section 13.01 of this Plan to the extent, if any, that Confirmation of the Subplan pursuant to section 1129(b) of the Bankruptcy Code requires such amendment or modification. If any Subplan(s) is not confirmed, then the Debtors reserve the right, subject to the written approval of the Consultation Parties, to either (a) request that other Subplans be confirmed or (b) withdraw some or all Subplans.  The Debtors' inability to confirm or election to withdraw any Subplan(s) shall not impair the confirmation of any other Subplan(s).

## Section 5.03.  Limited Deficiency Waiver

For the avoidance of doubt, the holders of the Allowed Pre-Petition Secured Parties Deficiency Claims against a Liquidating Debtor agree to waive and withdraw such Claims on the Effective Date only if the respective Class of General Unsecured Claims against that particular Liquidating Debtor (i.e., Class OE 4, Class OM 4, Class OEM 4, Class TOGP 4 and/or Class TOLP 4) votes, as a Class, to accept the Subplan for the Liquidating Debtor.

## ARTICLE VI

## IMPLEMENTATION OF THE SUBPLANS FOR THE REORGANIZING DEBTORS

The transactions required to implement the Subplans for the Reorganizing Debtors shall be implemented in accordance with this ARTICLE VI.

## Section 6.01.  Restructuring Transactions

On or before the Effective Date or as soon as reasonably practicable thereafter, the Plan Administrator, the Reorganizing Debtors or the Reorganized Debtors (as applicable), the Liquidating Debtors, the Purchaser (if any) and the Exit Lenders are authorized, without further order of the Bankruptcy Court, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Restructuring Transactions under and in connection with this Plan, the Membership Interest Purchase and Sale Agreement and/or the Exit Financing, including, without limitation: (a) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of this Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the

48

execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (c) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; (d) selection of the board of directors of Reorganized Generation or any employees or trustee of the Distribution Trust or Liquidation Trust; (e) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; (f) the consummation of the transactions contemplated by the Membership Interest Purchase and Sale Agreement, if any; (g) the consummation of the transactions contemplated by the Exit Financing and the execution of all documents related thereto; (h) the issuance of the Reorganized OEG Equity Interests and the execution of all documents related thereto; and (i) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

**Section 6.02.  Sale Transaction**

Optim Generation and the Purchaser shall be authorized to consummate the Sale pursuant to the terms of the Membership Interest Purchase and Sale Agreement, if any, and the Confirmation Order.

**Section 6.03.  Exit Financing**

In the event the Sale does not close as prescribed in Section 3.02(a)(ii)a of this Plan, the Exit Financing shall become effective on the Effective Date.  From and after the Effective Date, the Reorganized Debtors, subject to any applicable limitations set forth in any post-Effective Date financing, shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as the boards of directors of the applicable Reorganized Debtors deem appropriate.

**Section 6.04.  Organization of the Reorganized Debtors**

(a)  <u>Reorganized Generation</u>

(i)  Formation

On or before the Effective Date of the Subplan for Optim Generation, Reorganized Generation will be formed pursuant to the New Governance Documents.  Except as otherwise provided in the New Governance Documents, including as they may be amended or modified from time to time in accordance with applicable law, Reorganized Generation will be a "private" company that is not required to register any Securities pursuant to the Securities Exchange Act of 1934.

(ii)  Issuance of New Equity Interests

On the Effective Date of the Subplan for Optim Generation: (x) the existing Equity Interests in Optim Generation will be cancelled, extinguished and discharged; and (y) 100% of the Reorganized OEG Equity Interests will be issued (A) in the event the Sale closes as

49

prescribed in Section 3.02(a)(ii)a of this Plan, to the Purchaser, or (B) in the event the Sale does not close as prescribed in Section 3.02(a)(ii)a of this Plan, to the Pre-Petition Secured Parties (or their nominee). The Reorganized OEG Equity Interests shall have the rights, privileges, limitations and restrictions set forth in the New Governance Documents.

      (b)      Reorganized Cedar Bayou and Reorganized Altura Cogen

On the Effective Date of any Subplan for Cedar Bayou and Altura Cogen, Reorganized Generation will continue to own 100% of the Equity Interests in each of Reorganized Cedar Bayou and Reorganized Altura Cogen, which shall be in such amount and have the rights, privileges, limitations and restrictions set forth in their existing certificates of formation (or other constitutive documents, as applicable), except as such terms may be amended pursuant to the terms of the Subplans for each of Cedar Bayou and Altura Cogen, and as may be permitted under their respective constitutive documents and applicable non-bankruptcy law.

**Section 6.05.  Assets and Liabilities of the Reorganized Debtors**

      (a)      Reorganized Generation

On the Effective Date of the Subplan for Optim Generation, all of the Assets of Optim Generation and its Estate except for the Distribution Trust Assets, including but not limited to 100% of the outstanding membership interests in Reorganized Cedar Bayou and Reorganized Altura Cogen, shall vest in Reorganized Generation free and clear of all Liens, Claims and encumbrances (except for Liens, if any, granted to secure the repayment of the Exit Financing, and Claims and obligations provided for in the Subplan for Optim Generation).

      (b)      Reorganized Cedar Bayou and Reorganized Altura Cogen

On the Effective Date of the Subplans for Cedar Bayou and Altura Cogen, all of the Assets of Cedar Bayou, Altura Cogen, and their Estates except for the Distribution Trust Assets, including but not limited to their respective operating assets and 100% of the ownership interests of the entities they each owned before the Effective Date, shall vest in Reorganized Cedar Bayou and Reorganized Altura Cogen, respectively, free and clear of all Liens, Claims and encumbrances (except for Liens, if any, granted to secure the repayment of the Exit Financing, and Claims or obligations provided for in the Subplans for Cedar Bayou and Altura Cogen, respectively).

**Section 6.06.  Governance of the Reorganized Debtors**

On and after the Effective Date of the Subplans for the Reorganizing Debtors, the Reorganized Debtors' businesses will be managed by and under the direction of their respective boards of directors or other governing body, as they may be constituted from time to time pursuant to their certificates of formation (or other constituent documents, including the New Governance Documents, as applicable) and applicable non-bankruptcy law. The officers and directors of the Reorganized Debtors will be those individuals listed in the Plan Supplement.

**Section 6.07.  Funding of Reserves**

On the Effective Date of the Subplans for the Reorganizing Debtors, the Reorganizing Debtors Claims Reserve, the Reorganizing Debtors Wind-Down Costs Reserve and the Professional Claims Reserve shall be funded with either (a) Cash from the Sale proceeds, or (b) in the event the Sale does not close by September 30, 2015 pursuant to Section 3.02(a)(ii)a of this Plan, and with the consent of the Pre-Petition Secured Parties, Cash on hand (which is Cash Collateral) and/or Cash from the Exit Financing.  The reserves funded pursuant to this Section 6.07 shall be deemed authorized and approved by the Bankruptcy Court pursuant to the Confirmation Order.

**Section 6.08.  Distribution Trust[2]**

(a)  <u>Creation of the Distribution Trust</u>

On the Effective Date of the Subplans for the Reorganizing Debtors, the Distribution Trust shall be created and established by the execution and delivery of the Distribution Trust Agreement.

(b)  <u>Transfer of the Distribution Trust Assets</u>

On the Effective Date of the Subplans for the Reorganizing Debtors, the Pre-Petition Secured Parties and the Debtors, as applicable, shall transfer the Distribution Trust Assets to the Distribution Trust, for and on behalf of the holders of Allowed Claims against the Reorganizing Debtors, with no reversionary interest in the Debtors.

(c)  <u>Purpose of the Distribution Trust</u>

The Distribution Trust shall be established for the sole purpose of making distributions to holders of Allowed Claims under the Subplans for the Reorganizing Debtors (to the extent such Allowed Claims were not previously paid under the Subplans), and winding up the remaining affairs of the Estates of Optim Generation, Altura Cogen, and Cedar Bayou in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Distribution Trust.

(d)  <u>Administration of the Distribution Trust</u>

The Distribution Trust shall be administered by the Plan Administrator pursuant to the Distribution Trust Agreement and the Subplans for the Reorganizing Debtors.

---

[2] This Section 6.08 is a general description of the Distribution Trust and its provisions.  The Distribution Trust Agreement shall be included in the Plan Supplement.  To the extent this Section 6.08 is inconsistent with the Distribution Trust Agreement, the Distribution Trust Agreement shall control for all purposes.

(e)    <u>Powers and Duties of the Plan Administrator</u>

The Plan Administrator shall have the rights and powers set forth in the Distribution Trust Agreement, and shall be governed in all respects by the terms of the Distribution Trust Agreement and the Subplans for the Reorganizing Debtors.  The Plan Administrator shall have reasonable access to the Reorganizing Debtors' and Reorganized Debtors' books and records to the extent necessary to carry out its duties under the Distribution Trust Agreement.  Subject to the terms of the Distribution Trust Agreement, the Plan Administrator shall be authorized, empowered, and directed to take all actions necessary to comply with the Subplans for the Reorganizing Debtors and exercise and fulfill the duties and obligations arising thereunder, including, without limitation, to: (i) act as the trustee for the Distribution Trust and administer the Distribution Trust; (ii) take any action necessary to transfer the Distribution Trust Assets to the Distribution Trust and establish the Distribution Trust in accordance with the Subplans for the Reorganizing Debtors and applicable law, including, without limitation, in respect of the establishment of the Distribution Trusts for the allocation of assets, the making of related reserves and the attribution of rights of holders of beneficial interests based on the classification schemes of the applicable Subplans for the Reorganizing Debtors; (iii) retain attorneys, advisors, and other professionals as may be necessary and appropriate to perform the duties required of, and the obligations assumed by, the Plan Administrator under the applicable Subplans for the Reorganizing Debtors and the Distribution Trust Agreement, and pursuant to Section 6.08(g) of the Plan; (iv) execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Distribution Trust; (v) open, maintain, and administer bank accounts as necessary to discharge the duties of the Plan Administrator under the applicable Subplans for the Reorganizing Debtors and the Distribution Trust Agreement; (vi) administer, sell, liquidate, or otherwise dispose of the Distribution Trust Assets in accordance with the applicable Subplans for the Reorganizing Debtors; (vii) make, on behalf of the Reorganizing Debtors and their Estates, all transfers and distributions required to be made pursuant to the Subplans for the Reorganizing Debtors on and after the Effective Date, including, without limitation, distributions from the proceeds of the Distribution Trust Assets; (viii) file and prosecute objections to, and negotiate, settle, or otherwise resolve without Bankruptcy Court approval, any and all Disputed Claims against the Reorganizing Debtors and their Estates; (ix) review all Proofs of Claim filed against the Reorganizing Debtors for Administrative Claims, requests for payment therein and, if warranted, object thereto; (x) represent the Distribution Trust before the Bankruptcy Court and other courts of competent jurisdiction with respect to matters concerning the Distribution Trust; (xi) investigate, commence, and prosecute all Causes of Action transferred to the Distribution Trust under the Subplans for the Reorganizing Debtors to judgment or settlement, and take all other necessary and appropriate steps to collect, recover, liquidate, or otherwise reduce such Causes of Action and accounts receivable to Cash; (xii) prepare and file quarterly financial reports with the Bankruptcy Court; and (xiii) comply with applicable orders of the Bankruptcy Court and any other court of competent jurisdiction over the matters set forth herein, and all applicable laws and regulations concerning the matters set forth herein.  The Plan Administrator may purchase any insurance the Plan Administrator reasonably deems necessary or appropriate for the benefit of the Reorganized Debtors pursuant to the Distribution Trust Agreement.

(f)     Cash Investments

All Cash held by the Distribution Trust shall be held in a non-interest-bearing account at domestic bank selected by the Plan Administrator and shall not be invested or reinvested.

(g)     Retention of Professionals

The Plan Administrator is authorized to retain, employ, and compensate any attorneys, advisors, or other professionals necessary to assist the Plan Administrator in carrying out its duties under this Plan and the Distribution Trust Agreement, without further order of the Bankruptcy Court.  The past or current retention of any Professional in the Chapter 11 Cases shall not be asserted by any party in interest as a basis to disqualify such Professional from being retained by the Distribution Trust.  From and after the Effective Date, the Plan Administrator, for and on behalf of the Distribution Trust, shall pay in Cash the reasonable legal fees and expenses incurred by the professionals retained by the Plan Administrator pursuant to the Wind-Down Budget, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court.  For the avoidance of doubt, any requirement that a professional retained by the Plan Administrator comply with sections 327 through 331 and/or 1103 of the Bankruptcy Code in seeking compensation for services rendered, for and on behalf of the Distribution Trust, shall terminate.

In no event shall the Plan Administrator or any agent, employee, attorney, advisor or other professional retained by the Plan Administrator have any recourse against the Debtors, the Reorganizing Debtors, the Reorganized Debtors, the Consultation Parties, or any of their respective Related Persons, with respect to compensation for services rendered, and reimbursement for expenses incurred by, the Plan Administrator or any agent, employee, attorney, advisor or other professional retained by the Plan Administrator, with respect to the administration of the Subplans for the Reorganizing Debtors, regardless of whether sufficient Cash or other property remains for payment of such compensation or reimbursement in the Wind-Down Budget at the time such request for compensation or reimbursement is made.

(h)     Accounting and Reporting

The Plan Administrator shall maintain an accounting of receipts and disbursements with respect to the Distribution Trust, which shall be open to inspection and review by the Bankruptcy Court and any holder of an Allowed Claim against the Reorganizing Debtors, upon reasonable notice to the Plan Administrator.  After the Effective Date, the Plan Administrator shall continue the reporting obligations for the Estate of each Reorganized Debtor pursuant to U.S. Trustee guidelines until the Bankruptcy Court enters a Final Decree closing each of the Chapter 11 Cases of the Reorganizing Debtors.

(i)     Resignation/Removal of Plan Administrator

The Plan Administrator for the Distribution Trust may resign or be removed in accordance with the Distribution Trust Agreement.  Any successor Plan Administrator for the

Distribution Trust shall be appointed in accordance with the Distribution Trust Agreement and subject to the written approval of the Consultation Parties.

(j)    Termination of the Distribution Trust; Final Distribution

The Distribution Trust shall terminate upon the earlier of: (i) satisfaction of all Allowed Claims against the Reorganizing Debtors; (ii) the one (1) year anniversary of the Effective Date; or (iii) the entry by the Bankruptcy Court of a Final Decree(s) closing each of the Chapter 11 Cases of the Reorganizing Debtors, and submission by the Plan Administrator of the final financial report to the Bankruptcy Court pursuant to the applicable Subplan for each Reorganized Debtor.  On or prior to the date of termination of the Distribution Trust, the Bankruptcy Court, upon motion by the Plan Administrator, may extend the term of the Distribution Trust for cause shown.  Upon termination of the Distribution Trust and as soon as practicable thereafter, the balance of any Cash and other assets of the Distribution Trust shall be transferred to the Pre-Petition Secured Parties pursuant to Section 3.02(a)(ii) of this Plan.

(k)    Governing Law

The establishment of the Distribution Trust and all transfers to the Distribution Trust shall be governed by the laws of the State of Delaware.

(l)    Limitation on Liability

No recourse shall ever be had, directly or indirectly, against the Plan Administrator or its officers, directors, agents, employees, attorneys, advisors or other professionals by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, or upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Plan Administrator under the Subplans for the Reorganizing Debtors or the Distribution Trust Agreement, or by reason of the creation of any indebtedness by the Plan Administrator under the Subplans for the Reorganizing Debtors for any purpose authorized by such Subplans.  Every undertaking, contract, covenant or agreement entered into in writing by the Plan Administrator shall provide expressly against the personal liability of the Plan Administrator under the Distribution Trust Agreement.  The Plan Administrator and its officers, directors, agents, employees, attorneys, advisors and other professionals shall not be liable for any act they may do, or omit to do under the Distribution Trust Agreement in good faith and in the exercise of their respective best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as counsel for the Plan Administrator shall be conclusive evidence of such good faith and best judgment; provided, however, that this Section 6.08(l) shall not apply to any bad faith, fraud, gross negligence or willful misconduct by the Plan Administrator under the Distribution Trust Agreement or its officers, directors, agents, employees, attorneys, advisors or other professionals.

(m)     Reliance on Documents

The Plan Administrator may rely, and shall be protected in acting or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper Entity.

## Section 6.09.  Post-Confirmation Property Sales

To the extent the Reorganizing Debtors, the Reorganized Debtors or the Distribution Trust, as applicable, purchase or sell any property prior to or including the date that is one (1) year after the Confirmation Date, the Debtors or the Reorganized Debtors, as applicable, may elect to purchase or sell such property pursuant to sections 363, 1123(a)(5)(D), 1141(c), and 1146(a) of the Bankruptcy Code.

## Section 6.10.  Causes of Action of the Reorganizing Debtors

(a)     Preservation of Causes of Action Other Than Avoidance Actions

In accordance with section 1123(b) of the Bankruptcy Code or any corresponding provision of federal or state laws, and except as expressly released by this Plan, Final DIP Order, Confirmation Order or other Final Order: (i) on the Effective Date of the Subplans for the Reorganizing Debtors, all Causes of Action of the Reorganizing Debtors shall be transferred to and vest in the Distribution Trust as part of the Distribution Trust Assets; and (ii) on and after the Effective Date of the Subplans for the Reorganizing Debtors, all such Causes of Action for the Reorganizing Debtors shall be retained by the Distribution Trust, and the Distribution Trust and/or the Plan Administrator may, in accordance with the Distribution Trust Agreement, enforce, sue on, settle, or compromise (or decline to do any of the foregoing) any or all of such Causes of Action on behalf of the Reorganizing Debtors; provided, however, that as of the Effective Date, all Avoidance Actions of the Reorganizing Debtors shall be waived and released.

(b)     No Waiver

Except as otherwise provided in Section 12.02 of this Plan, or as released by the Final DIP Order, the Confirmation Order or other Final Order, nothing in this Plan shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, account receivable, right of setoff, or other legal or equitable right or defense that the Plan Administrator may have or choose to assert on behalf of the Reorganizing Debtors or their respective Estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law.  No Entity may rely on the absence of a specific reference in this Plan to any Cause of Action or account receivable against it as an indication that the Plan Administrator will not pursue any and all available Causes of Action or accounts receivable against it, and all such rights to prosecute or pursue any and all Causes of Action or accounts receivable against any Entity are expressly reserved for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action or accounts receivable upon or after the Confirmation or Consummation of the Subplans for the Reorganizing Debtors.

## ARTICLE VII

## IMPLEMENTATION OF THE SUBPLANS FOR THE LIQUIDATING DEBTORS

The transactions required to implement the Subplans for the Liquidating Debtors shall be implemented in accordance with this ARTICLE VII.

### Section 7.01.  Organization of the Liquidating Debtors

On the Effective Date of the Subplans for the Liquidating Debtors: (a) the Equity Interests of the respective Liquidating Debtor will be deemed cancelled and of no further force and effect, and deemed extinguished without any further corporate action; and (b) the existing members of the Liquidating Debtors' board(s) of directors will resign or be deemed to have been terminated.

### Section 7.02.  Assets and Liabilities of the Liquidating Debtors

On the Effective Date of the Subplans for the Liquidating Debtors, the Liquidation Trust Assets shall be transferred to, and vest in, the Liquidation Trust free and clear of Liens, Claims and encumbrances (except for Claims and obligations provided for in the Subplans for the Liquidating Debtors).

### Section 7.03.  Governance of the Liquidating Debtors

On and after the Effective Date of the Subplans for the Liquidating Debtors, the Liquidating Debtors' affairs will be managed by and under the direction of the Plan Administrator pursuant to the Liquidation Trust Agreement.  Within the time determined by the Plan Administrator as necessary or appropriate under the circumstances, each Liquidating Debtor shall be dissolved without any further action by its former stockholders, officers, members, or directors.  The Plan Administrator may, in his or her discretion, file all necessary certificates of dissolution and take any other actions necessary or appropriate to effect such dissolution under applicable non-bankruptcy law.  All applicable regulatory or governmental agencies shall accept any certificates of dissolution or other papers filed by the Plan Administrator on behalf of each Liquidating Debtor and shall take all steps necessary to allow and effect the prompt dissolution as provided herein, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates, except as the Plan Administrator may determine in its sole discretion.  Upon entry of a Final Decree in each Chapter 11 Case of each Liquidating Debtor, if not previously dissolved, the applicable Liquidating Debtor shall be deemed automatically dissolved and wound up without any further action or formality which might otherwise be required under applicable non-bankruptcy laws.

### Section 7.04.  Funding of Reserves

On the Effective Date of the Subplans for the Liquidating Debtors, the Liquidating Debtors Claims Reserve, the Liquidating Debtors Wind-Down Costs Reserve and the Professional Claims Reserve shall be funded, with the consent of the Pre-Petition Secured Parties, with Cash on hand (which is Cash Collateral) and/or Cash from the Exit Financing.  The

reserves funded pursuant to this Section 7.04 shall be deemed authorized and approved by the Bankruptcy Court pursuant to the Confirmation Order.

## Section 7.05.   Liquidation Trust[3]

      (a)      Creation of the Liquidation Trust

On the Effective Date of the Subplans for the Liquidating Debtors, the Liquidation Trust shall be created and established by the execution and delivery of the Liquidation Trust Agreement.

      (b)      Transfer of the Liquidation Trust Assets

On the Effective Date of the Subplans for the Liquidating Debtors, the Liquidation Trust Assets shall be deemed irrevocably transferred to the Liquidation Trust free and clear of all Liens, Claims, and encumbrances, for and on behalf of the holders of Allowed Claims against the Liquidating Debtors, with no reversionary interest in the Debtors.

      (c)      Purpose of the Liquidation Trust

The Liquidation Trust shall be established for the sole purpose of making distributions to holders of Allowed Claims under the Subplans for the Liquidating Debtors (to the extent such Allowed Claims were not previously paid under the Subplans), and winding up the remaining affairs of the Liquidating Debtors' Estates in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidation Trust.

      (d)      Administration of the Liquidation Trust

The Liquidation Trust shall be administered by the Plan Administrator pursuant to the Liquidation Trust Agreement and the Subplans for the Liquidating Debtors.

      (e)      Powers and Duties of the Plan Administrator

The Plan Administrator shall be a representative of the Estates of the Liquidating Debtors pursuant to section 1123 of the Bankruptcy Code, and shall have the rights and powers set forth in the Liquidation Trust Agreement, and shall be governed in all respects by the terms of the Liquidation Trust Agreement and the Subplans for the Liquidating Debtors.   The Plan Administrator shall have reasonable access to the Liquidating Debtors' books and records to the extent necessary to carry out its duties under the Liquidation Trust Agreement.  Subject to the terms of the Liquidation Trust Agreement, the Plan Administrator shall be authorized, empowered, and directed to take all actions necessary to comply with the Subplans for the Liquidating Debtors and exercise and fulfill the duties and obligations arising thereunder,

---

[3] This Section 7.05 is a general description of the Liquidation Trust and its provisions.  The Liquidation Trust Agreement shall be included in the Plan Supplement.  To the extent that this Section 7.05 is inconsistent with the Liquidation Trust Agreement, the Liquidation Trust Agreement shall control for all purposes.

including, without limitation, to: (i) act as the trustee for the Liquidation Trust and administer the Liquidation Trust; (ii) take any action necessary to transfer the Liquidation Trust Assets to the Liquidation Trust, establish the Liquidation Trust, and dissolve the Liquidating Debtors in accordance with the Subplans for the Liquidating Debtors and applicable law, including, without limitation, in respect of the establishment of the Liquidation Trust for the allocation of assets, the making of related reserves and the attribution of rights of holders of beneficial interests based on the classification schemes of the applicable Subplans for the Liquidating Debtors; (iii) retain attorneys, advisors, and other professionals as may be necessary and appropriate to perform the duties required of, and the obligations assumed by, the Plan Administrator under the applicable Subplans for the Liquidating Debtors and the Liquidation Trust Agreement, and pursuant to Section 7.05(g) of this Plan; (iv) execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Liquidation Trust; (v) open, maintain, and administer bank accounts as necessary to discharge the duties of the Plan Administrator under the applicable Subplans for the Liquidating Debtors and the Liquidation Trust Agreement; (vi) administer, sell, liquidate, or otherwise dispose of the Liquidation Trust Assets in accordance with the applicable Subplans for the Liquidating Debtors; (vii) make, on behalf of the Liquidating Debtors and their Estates, all transfers and distributions required to be made pursuant to the Subplans for the Liquidating Debtors on and after the Effective Date, including, without limitation, distributions from the proceeds of the Liquidation Trust Assets; (viii) file and prosecute objections to, and negotiate, settle, or otherwise resolve without Bankruptcy Court approval, any and all Disputed Claims against the Liquidating Debtors and their Estates; (ix) review all Proofs of Claim filed against the Liquidating Debtors for Administrative Claims, requests for payment therein and, if warranted, object thereto; (x) represent the Liquidation Trust before the Bankruptcy Court and other courts of competent jurisdiction with respect to matters concerning the Liquidation Trust; (xi) investigate, commence, and prosecute all Causes of Action transferred to the Liquidation Trust under the Subplans for the Liquidating Debtors to judgment or settlement, and take all other necessary and appropriate steps to collect, recover, liquidate, or otherwise reduce such Causes of Action and accounts receivable to Cash; (xii) prepare and file quarterly financial reports with the Bankruptcy Court; and (xiii) comply with applicable orders of the Bankruptcy Court and any other court of competent jurisdiction over the matters set forth herein, and all applicable laws and regulations concerning the matters set forth herein.  The Plan Administrator may purchase any insurance the Plan Administrator reasonably deems necessary or appropriate for the benefit of the Liquidating Debtors pursuant to the Liquidation Trust Agreement.  The Plan Administrator shall have the authority, but not the obligation, to destroy the Liquidating Debtors' books and records following termination of the Liquidation Trust pursuant to Section 7.05(j) of this Plan.

In no event shall the Plan Administrator or any agent, employee, attorney, advisor or other professional retained by the Plan Administrator have any recourse against the Debtors, the Liquidating Debtors, the Consultation Parties, or any of their respective Related Persons, with respect to compensation for services rendered, and reimbursement for expenses incurred by, the Plan Administrator or any agent, employee, attorney, advisor or other professional retained by the Plan Administrator, with respect to the administration of the Subplans for the Liquidating Debtors, regardless of whether sufficient Cash or other property remains for payment of such

compensation or reimbursement in the Wind-Down Budget at the time such request for compensation or reimbursement is made.

(f)        Cash Investments

All Cash held by the Liquidation Trust shall be held in a non-interest-bearing account at domestic bank selected by the Plan Administrator and shall not be invested or reinvested.

(g)        Retention of Professionals

The Plan Administrator is authorized to retain, employ, and compensate any attorneys, advisors, or other professionals necessary to assist the Plan Administrator in carrying out its duties under this Plan and the Liquidation Trust Agreement, without further order of the Bankruptcy Court.  The past or current retention of any Professional in the Chapter 11 Cases shall not be asserted by any party in interest as a basis to disqualify such Professional from being retained by the Liquidation Trust.  From and after the Effective Date, the Plan Administrator, for and on behalf of the Liquidation Trust, shall pay in Cash the reasonable legal fees and expenses incurred by the professionals retained by the Plan Administrator pursuant to the Wind-Down Budget, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court.  For the avoidance of doubt, any requirement that a professional retained by the Plan Administrator comply with sections 327 through 331 and/or 1103 of the Bankruptcy Code in seeking compensation for services rendered, for and on behalf of the Liquidation Trust, shall terminate.

In no event shall the Plan Administrator or any agent, employee, attorney, advisor or other professional retained by the Plan Administrator have any recourse against the Debtors, the Liquidating Debtors, the Consultation Parties, or any of their respective Related Persons, with respect to compensation for services rendered, and reimbursement for expenses incurred by, the Plan Administrator or any agent, employee, attorney, advisor or other professional retained by the Plan Administrator, with respect to the administration of the Subplans for the Liquidating Debtors, regardless of whether sufficient Cash or other property remains for payment of such compensation or reimbursement in the Wind-Down Budget at the time such request for compensation or reimbursement is made.

(h)        Accounting and Reporting

The Plan Administrator shall maintain an accounting of receipts and disbursements with respect to the Liquidation Trust, which shall be open to inspection and review by the Bankruptcy Court and any holder of an Allowed Claim against the Liquidating Debtors, upon reasonable notice to the Plan Administrator.  After the Effective Date, the Plan Administrator shall continue the reporting obligations for the Estate of each Liquidating Debtor pursuant to U.S. Trustee guidelines until the Bankruptcy Court enters a Final Decree closing each of the Chapter 11 Cases of the Liquidating Debtors.

(i)     Resignation/Removal of Plan Administrator

The Plan Administrator for the Liquidation Trust may resign or be removed in accordance with the Liquidation Trust Agreement.  Any successor Plan Administrator for the Liquidation Trust shall be appointed in accordance with the Liquidation Trust Agreement and subject to the written approval of the Consultation Parties.

(j)     Termination of the Liquidation Trust; Final Distribution

The Liquidation Trust shall terminate upon the earlier of: (x) satisfaction of all Allowed Claims against the Liquidating Debtors; (y) the three (3) year anniversary of the Effective Date; or (z) the entry by the Bankruptcy Court of a Final Decree(s) closing each of the Chapter 11 Cases of the Liquidating Debtors, and submission by the Plan Administrator of the final financial report to the Bankruptcy Court pursuant to the applicable Subplan for each Liquidating Debtor. On or prior to the date of termination of the Liquidation Trust, the Bankruptcy Court, upon motion by the Plan Administrator, may extend the term of the Liquidation Trust for cause shown. Upon termination of the Liquidation Trust and as soon as practicable thereafter, the balance of any Cash and other assets of the Liquidation Trust shall be transferred to the Pre-Petition Secured Parties pursuant to Section 4.02(a)(ii) of this Plan.

(k)     Governing Law

The establishment of the Liquidation Trust and all transfers to the Liquidation Trust shall be governed by the laws of the State of Delaware.

(l)     Limitation on Liability

No recourse shall ever be had, directly or indirectly, against the Plan Administrator or its officers, directors, agents, employees, attorneys, advisors or other professionals by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, or upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Plan Administrator under the Subplans for the Liquidating Debtors or the Liquidation Trust Agreement, or by reason of the creation of any indebtedness by the Plan Administrator under the Subplans for the Liquidating Debtors for any purpose authorized by such Subplans.  Every undertaking, contract, covenant or agreement entered into in writing by the Plan Administrator shall provide expressly against the personal liability of the Plan Administrator under the Liquidation Trust Agreement.  The Plan Administrator and its officers, directors, agents, employees, attorneys, advisors and other professionals shall not be liable for any act they may do, or omit to do under the Liquidation Trust Agreement in good faith and in the exercise of their respective best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as counsel for the Plan Administrator shall be conclusive evidence of such good faith and best judgment; provided, however, that this Section 7.05(l) shall not apply to any bad faith, fraud, gross negligence or willful misconduct by the Plan Administrator under the Liquidation Trust Agreement or its officers, directors, agents, employees, attorneys, advisors or other professionals.

60

(m)    Reliance on Documents

The Plan Administrator may rely, and shall be protected in acting or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper Entity.

**Section 7.06.  Causes of Action of the Liquidating Debtors**

(a)    Preservation of Causes of Action Other Than Avoidance Actions

In accordance with section 1123(b) of the Bankruptcy Code or any corresponding provision of federal or state laws, and except as expressly released by this Plan, the Final DIP Order, the Confirmation Order or other Final Order: (i) on the Effective Date of the Subplans for the Liquidating Debtors, all Causes of Action for the Liquidating Debtors shall be transferred to and vest in the Liquidation Trust as part of the Liquidation Trust Assets; and (ii) on and after the Effective Date of the Subplans for the Liquidating Debtors, all such Causes of Action for the Liquidating Debtors shall be retained by the Liquidation Trust, and the Liquidation Trust and/or the Plan Administrator may, in accordance with the Liquidation Trust Agreement, enforce, sue on, settle, or compromise (or decline to do any of the foregoing) any or all of such Causes of Action on behalf of the Liquidating Debtors, including, without limitation, Causes of Action the Plan Administrator may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) against Walnut Creek on account of the Walnut Creek Motion, the Walnut Creek Claims or any other Claims asserted by Walnut Creek against the Debtors, the Liquidating Debtors, or the Liquidation Trust, and any defenses or counterclaims the Plan Administrator may assert with respect to any such Claims; provided, however, that as of the Effective Date, all Avoidance Actions of the Liquidating Debtors shall be waived and released.

(b)    No Waiver

Except as otherwise provided in Section 12.02 of this Plan, or as released by the Final DIP Order, the Confirmation Order or other Final Order, nothing in this Plan shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, account receivable, right of setoff, or other legal or equitable right or defense that the Plan Administrator may have or choose to assert on behalf of the Liquidating Debtors or their respective Estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law.  No Entity, including but not limited to Walnut Creek on account of the Walnut Creek Motion, the Walnut Creek Claim or otherwise, may rely on the absence of a specific reference in this Plan to any Cause of Action or account receivable against it as an indication that the Plan Administrator will not pursue any and all available Causes of Action or accounts receivable against it, and all such rights to prosecute or pursue any and all Causes of Action or accounts receivable against any Entity are expressly reserved for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action or accounts receivable upon or after the Confirmation or Consummation of the Subplans for the Liquidating Debtors.

## ARTICLE VIII

## TREATMENT OF EXECUTORY CONTRACTS AND LEASES

### Section 8.01.   Executory Contracts and Unexpired Leases of the Reorganizing Debtors

Except as otherwise expressly provided in (a) the Subplans for the Reorganizing Debtors, (b) the Plan Supplement, or (c) any other filing made before the Confirmation Hearing, all Executory Contracts and Unexpired Leases of the Reorganizing Debtors shall be cured and assumed by the applicable Reorganized Debtor(s) as of the Effective Date in accordance with, and subject to the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code; provided, however, that this Section 8.01 shall not apply to any Executory Contract and Unexpired Lease of a Reorganizing Debtor that expired or terminated pursuant to its own terms prior to the Petition Date.

### Section 8.02.   Executory Contracts and Unexpired Leases of the Liquidating Debtors

Except as otherwise expressly provided in (a) the Subplans for the Liquidating Debtors, (b) the Plan Supplement, or (c) any other filing made before the Confirmation Hearing, all Executory Contracts and Unexpired Leases of the Liquidating Debtors shall be deemed rejected by the applicable Liquidating Debtor(s) as of the Effective Date in accordance with, and subject to the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code; provided, however, that this Section 8.02 shall not apply to any Executory Contract and Unexpired Lease of a Liquidating Debtor that expired or terminated pursuant to its own terms prior to the Petition Date.

### Section 8.03.   Effect of Confirmation Order on Assumption/Rejection

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order of the Bankruptcy Court pursuant to sections 365 and 1123(b) of the Bankruptcy Code approving the assumption, assumption and assignment, or rejection, as applicable, of the Executory Contracts and Unexpired Leases as of the Effective Date and determining that: (a) with respect to such rejections, such rejected Executory Contracts and Unexpired Leases are burdensome and that the rejection therein is in the best interests of the Estates; (b) with respect to such assumptions, to the extent necessary, that the applicable Debtor has (i) cured any default, (ii) compensated the counterparty for any actual pecuniary loss resulting from any default, and (iii) provided adequate assurance of future performance under such Executory Contract or Unexpired Lease, and (c) with respect to any assignment, to the extent necessary, that the applicable Debtor has (i) cured any default, (ii) compensated the counterparty for any actual pecuniary loss resulting from any default, and (iii) that "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) by the assignee has been demonstrated and no further adequate assurance is required.   Assumption of any Executory Contract or Unexpired Lease and satisfaction of the Cure Costs shall result in the full discharge, release and satisfaction of any claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date

such Executory Contract or Unexpired Lease is assumed.    Each Executory Contract and Unexpired Lease assumed pursuant to this Plan or Bankruptcy Court order shall vest in and be fully enforceable by the applicable Debtor.    To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

## Section 8.04.    Cure of Defaults and Objections to Assumption

Except as may be otherwise agreed to by the parties, the Purchaser, if any, shall pay any undisputed Cure Costs to the Debtors on the Effective Date.    Within five (5) Business Days after the Effective Date, the Plan Administrator shall pay any undisputed Cure Costs to the counterparties to any assumed Executory Contracts and Unexpired Leases from the Distribution Trust or the Liquidation Trust, as applicable.    The Cure Costs for the contracts to be assumed by the Debtors will be included in the Schedule of Assumed Executory Contracts and Unexpired Leases.    If there are no Cure Costs listed for an Executory Contract or Unexpired Lease, then the proposed Cure Costs shall be $0.00.    Such amount shall be deemed full payment of such Debtor's obligations under section 365(b) of the Bankruptcy Code, unless, on or before the Voting Deadline, the contract counter-party files an objection disputing: (a) the amount of any Cure Costs, (b) the ability of the Debtors or any assignee to provide adequate assurance of future performance (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (c) any other matter pertaining to assumption.    The disputed Cure Costs required by section 365(b)(1) of the Bankruptcy Code shall be made only after entry of a Final Order resolving the dispute and approving the assumption.

## Section 8.05.    Rejection Damages Claims and Objections to Rejection

Claims arising out of the rejection of Executory Contract or Unexpired Leases pursuant to this Plan must be filed and served on the Debtors pursuant to the procedures specified in the Bar Date Order, or another order of the Bankruptcy Court, no later than thirty (30) days after the Effective Date.    Holders of any Claim not filed within such time will be forever barred from asserting such Claim against the Debtors, their Estates, the Reorganizing Debtors, the Reorganized Debtors, the Liquidating Debtors, their respective successors or their respective properties, or against the Distribution Trust or the Liquidation Trust.    Unless otherwise ordered by the Bankruptcy Court or specified in this Plan, all Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be treated as General Unsecured Claims under this Plan.

**Section 8.06.   Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases**

The Debtors, the Reorganizing Debtors, the Reorganized Debtors and the Liquidating Debtors, as applicable, reserve the right to assert that rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of obligations owed to the Debtors under such contracts or leases prior to the rejection of such contracts or leases.   Notwithstanding any nonbankruptcy law to the contrary, the Reorganizing Debtors, the Reorganized Debtors or the Liquidating Debtors, as applicable, expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on good previously purchased, or services previously received, by the contracting Debtors from counterparties to rejected Executory Contracts and Unexpired Leases.

**Section 8.07.   Modifications,   Amendments,   Supplements,   Restatements   or   Other Agreements**

Unless otherwise provided in this Plan, each assumed or assumed and assigned Executory Contract and Unexpired Lease shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or is rejected under this Plan or otherwise.

Modifications, amendments, supplements and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claims that may arise in connection therewith.

**Section 8.08.   Reservation of Rights**

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganizing Debtors, the Reorganized Debtors or the Liquidating Debtors, as applicable, have any liability thereunder.   In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganizing Debtors, the Reorganized Debtors or the Liquidating Debtors, as applicable, shall have ninety (90) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

**Section 8.09.   Non-Occurrence of the Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any consensual request to extend the deadline for assuming or

rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, notwithstanding anything to the contrary in this Plan or otherwise.

## ARTICLE IX

## PROVISIONS GOVERNING DISTRIBUTIONS

### Section 9.01.  Amount of Distributions

Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim to the extent payable in accordance with this Plan.

### Section 9.02.  Method of Distributions

(a)      Reorganizing Debtors

Except as otherwise provided in this Plan, the Plan Administrator or such third-party disbursing agent as the Plan Administrator may employ, will make all distributions required under the Subplans for the Reorganizing Debtors pursuant to such Subplans and the Distribution Trust Agreement.  Each third-party disbursing agent will receive from the Distribution Trust, without further Bankruptcy Court approval, reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services. These payments will be made on terms agreed to with the Plan Administrator, and will not be deducted from distributions to be made pursuant to the Subplans for the Reorganizing Debtors to holders of Allowed Claims or Allowed Equity Interests against the Reorganizing Debtors receiving distributions from a third-party disbursing agent.

(b)      Liquidating Debtors

Except as otherwise provided in this Plan, the Plan Administrator or such third-party disbursing agent as the Plan Administrator may employ, will make all distributions required under the Subplans for the Liquidating Debtors pursuant to such Subplans and the Liquidation Trust Agreement.  Each third-party disbursing agent will receive from the Liquidation Trust, without further Bankruptcy Court approval, reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services. These payments will be made on terms agreed to with the Plan Administrator, and will not be deducted from distributions to be made pursuant to the Subplans for the Liquidating Debtors to holders of Allowed Claims against the Liquidating Debtors receiving distributions from a third-party disbursing agent.

### Section 9.03.  Delivery of Distributions

Distributions to holders of Allowed Claims shall be made at the address of the holder of such Claim as indicated in the Claims Register as of the Distribution Record Date.  The Plan Administrator shall have no obligation to recognize the transfer of or sale of any Claim or Equity

Interest that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those holders of Allowed Claims and Equity Interests who are holders as of the close of business on the Distribution Record Date.

**Section 9.04.  No Fractional or De Minimis Distributions**

Notwithstanding anything contained herein to the contrary, payments of fractional dollars will not be made.  Whenever any payment of a fraction of a dollar under the applicable Subplan would otherwise be called for, the actual payment made will reflect a rounding down of such fractions.  The Plan Administrator or any third-party disbursing agent shall not be required to make any payment of less than $20.00 on any distribution.

**Section 9.05.  Undeliverable Distributions**

(a)     <u>Holding of Undeliverable Distributions</u>

If any distribution to a holder of an Allowed Claim is returned to the Plan Administrator or any third-party disbursing agent as undeliverable, no further distributions shall be made to such holder unless and until such Plan Administrator is notified in writing of such holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such holder as soon as practicable.  Undeliverable Distributions shall remain in the possession of the Plan Administrator or the third-party disbursing agent until such time as a distribution becomes deliverable, and shall not be supplemented with any interest, dividends or other accruals of any kind.

(b)     <u>Failure to Claim Undeliverable Distributions</u>

Any holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an Undeliverable Distribution within one hundred eighty (180) days after the distribution is distributed shall be deemed to have waived its Claim for such Undeliverable Distribution and shall be forever barred from asserting any such Claim against the Reorganizing Debtors, the Reorganized Debtors, the Liquidating Debtors or their property.  In such cases, notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary, any Cash held for distribution on account of such Undeliverable Distribution shall be property of the Distribution Trust or the Liquidation Trust, free of any restrictions thereon.  Nothing contained in this Plan shall require the Reorganizing Debtors, the Reorganized Debtors, the Liquidating Debtors or the Plan Administrator to attempt to locate any holder of an Allowed Claim.  Notwithstanding any provision herein to the contrary, Undeliverable Distributions that become property of the Distribution Trust or the Liquidation Trust shall be distributed Pro Rata to the remaining holders of Allowed Claims, which distribution shall be effectuated through the subsequent distributions provided for under the applicable Subplan, it being understood that for purposes of this sentence, "Pro Rata" shall be determined as if the Claims underlying such Undeliverable Distributions had been disallowed.

**Section 9.06.   Tax Withholding From Distributions**

The Plan Administrator shall withhold all amounts required by law to be withheld from payments made under this Plan.   Any amounts so withheld from any payment made under the Plan shall be deemed paid to the holder of the Allowed Claim subject to withholding. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any Governmental Unit on account of such distribution, except for taxes withheld from payments made under the Plan.   The Plan Administrator has the right, but not the obligation, not to make a distribution until such holder has made arrangements satisfactory to the Plan Administrator for payment of any withholding tax obligations.   If the Plan Administrator fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse the Plan Administrator.   Notwithstanding any provision in this Plan to the contrary, the Plan Administrator shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms it believes are reasonable and appropriate. The Plan Administrator may require, as a condition to the receipt of a distribution, that the holder complete the appropriate Form W-8 or Form W-9, as applicable to each holder.   If the holder fails to comply with such a request within six (6) months, such distribution shall be deemed an Undeliverable Distribution.   Finally, the Plan Administrator reserves the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

**Section 9.07.   Allocations**

Unless otherwise provided in this Plan, distributions in respect of Allowed Claims shall be allocated first to the principal amount (as determined for U.S. federal income tax purposes) of such Allowed Claims, and then, to the extent the consideration exceeds the principal amount of such Allowed Claims, to any portion of such Allowed Claims for accrued but unpaid interest.

**Section 9.08.   Time Bar to Cash Payments**

Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance therein.   Requests for reissuance of any check shall be made in writing directly to the Plan Administrator by the holder of the Allowed Claim with respect to which such check originally was issued.   Any Claim in respect of such a voided check shall be made in writing on or before the later of one hundred eighty (180) days after the Effective Date or ninety (90) days after the date of issuance of such check.   After such date, all Claims in respect of void checks shall be discharged and forever barred and the distribution on account of such Claims shall be treated in accordance with Section 9.05 of this Plan.

### Section 9.09.   Means of Cash Payments

Any Cash payment to be made pursuant to this Plan will be made in U.S. dollars by checks drawn on or by wire transfer from a domestic bank selected by the Plan Administrator. No post-Effective Date interest shall be paid on Cash distributions hereunder.

### Section 9.10.   Foreign Currency Exchange Rates

As of the Effective Date, any Claim asserted in currency(ies) other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the mid-range spot rate of exchange for the applicable currency as published in *The Wall Street Journal*, National Edition, the day after the Petition Date.

### Section 9.11.   Setoffs

The Plan Administrator may, pursuant to section 553 of the Bankruptcy Code and applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and Causes of Action of any nature that Debtors, the Reorganizing Debtors, the Reorganized Debtors, the Distribution Trust, the Liquidating Debtors or the Liquidation Trust, as the case may be, may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claims, rights and Causes of Action that the Debtors, the Reorganizing Debtors, the Reorganized Debtors, the Distribution Trust, the Liquidating Debtors or the Liquidation Trust may possess against such holder.

### Section 9.12.   Cancellation of Instruments Evidencing Claims or Equity Interests

On the Effective Date, any Certificate evidencing a Claim against or Equity Interest in the Debtors shall be deemed cancelled solely with respect to the Reorganizing Debtors or the Liquidating Debtors, as the case may be, and such cancellation shall not alter the obligations or rights of any third parties vis-à-vis one another with respect to such Certificate.

### Section 9.13.   Claims Paid or Payable by Third Parties

A Claim shall be reduced in full and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to, or action, order or approval of, the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, Reorganizing Debtor, Reorganized Debtor, or Liquidating Debtor, or from the Plan Administrator or third-party disbursing agent. To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, Reorganizing Debtor, Reorganized Debtor, or Liquidating Debtor, or from the Plan Administrator or third-party disbursing agent, on account of such Claim, such holder shall repay, return or deliver any distribution held by or transferred to the holder to the applicable Debtor, Reorganizing Debtor, Reorganized Debtor, Liquidating Debtor, Distribution Trust or Liquidation Trust, to the extent the holder's total recovery on

account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan.

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE X

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### Section 10.01. Prosecution of Objections to Claims

After the Effective Date, subject to the terms of the Distribution Trust Agreement and the Liquidation Trust Agreement, as applicable, the Plan Administrator shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim and shall have the exclusive authority to file objections and to settle, compromise, withdraw or litigate to judgment objections to Claims against the Debtors (except those Allowed by, or released by, this Plan, or by the Final DIP Order, the Confirmation Order or other Final Order). From and after the Effective Date, the Plan Administrator may settle or compromise any Disputed Claim against the Debtors without approval of the Bankruptcy Court or notice to any other party. The Plan Administrator shall file objections to any Disputed Claims in accordance with the Bankruptcy Rules on or before the Claims Objection Deadline, as the same may be extended pursuant to the terms of this Plan or order of the Bankruptcy Court.

### Section 10.02. Estimation of Claims

The Plan Administrator may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors, the Reorganizing Debtors, the Reorganized Debtors or the Liquidating Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to any Claim, and during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Plan Administrator, on behalf of any Reorganizing Debtor, Reorganized Debtor or Liquidating Debtor, as applicable, may elect to pursue any supplemental proceedings to object to the allowance and any ultimate payment on such Claim. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**Section 10.03. No Distributions on Disputed Claims**

Notwithstanding any provision in this Plan to the contrary, except as otherwise agreed by the Plan Administrator in its sole and absolute discretion, no distributions, partial or otherwise, shall be made with respect to a Disputed Claim until all disputes with respect to such Claim are resolved by Final Order.  Subject to the provisions of this Plan, after a Disputed Claim becomes an Allowed Claim, the holder of such Allowed Claim will receive all distributions to which such holder is then entitled under this Plan.  No post-Effective Date interest shall be paid on distributions hereunder.  If a Creditor incorporates more than one Claim in a Proof of Claim, then: (a) the Claims will be considered one Claim for purposes of this Plan, and (b) unless the Plan Administrator otherwise agrees in its sole and absolute discretion, no Claim will be bifurcated into an Allowed portion and a Disputed portion.

**Section 10.04. Reserve of Cash for Disputed Claims**

      (a)        <u>Reorganizing Debtors</u>

On the Effective Date, the Reorganizing Debtors Claims Reserve shall be held, in part, for the benefit of holders of Disputed Claims, if any, against the Reorganizing Debtors.  As Disputed Claims against the Reorganizing Debtors are resolved, the Plan Administrator shall make distributions under the Subplans to holders of Allowed Claims against the Reorganizing Debtors and the Reorganizing Debtors Claims Reserve shall be adjusted accordingly; <u>provided</u>, <u>however</u>, that the Reorganizing Debtors Claim Reserve shall be approved by the Bankruptcy Court in the Confirmation Order, and that such amount shall be binding on all Holders of Disputed Claims against the Reorganizing Debtors.

      (b)        <u>Liquidating Debtors</u>

On the Effective Date, the Liquidating Debtors Claims Reserve shall be held, in part, for the benefit of holders of Disputed Claims, if any, against the Liquidating Debtors.  As Disputed Claims against the Liquidating Debtors are resolved, the Plan Administrator shall make distributions under the Subplans to holders of Allowed Claims against the Liquidating Debtors and the Liquidating Debtors Claims Reserve shall be adjusted accordingly; <u>provided</u>, <u>however</u>, that the Liquidating Debtors Claim Reserve shall be approved by the Bankruptcy Court in the Confirmation Order, and that such amount shall be binding on all Holders of Disputed Claims against the Liquidating Debtors.

## ARTICLE XI

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN

**Section 11.01. Conditions Precedent to Confirmation**

It shall be a condition to Confirmation of any Subplan that the following conditions shall have been satisfied or waived pursuant to the provisions of Section 11.04 of this Plan:

(i)     the Disclosure Statement Order shall have been entered by the Bankruptcy Court on the docket of the Chapter 11 Cases in form and substance acceptable to the Debtors and the Consultation Parties, and such order shall not be subject to a stay; and

(ii)    an order shall have been entered by the Bankruptcy Court on the docket of the Chapter 11 Cases in form and substance acceptable to the Debtors and the Consultation Parties, which may be the Confirmation Order (in which case this Section 11.01(ii) shall become a condition precedent to the Effective Date pursuant to Section 11.03 of this Plan), approving the Membership Interest Purchase and Sale Agreement, if any, and authorizing the Debtors to enter into and perform under it pursuant to its terms.

## Section 11.02. Effect of Non-Occurrence of Conditions to Confirmation or Conditions Precedent to the Effective Date

If the conditions in Section 11.01 and Section 11.03 of this Plan are not satisfied for any Subplan, or if the Confirmation Order is vacated regarding any Subplan, the affected Subplan shall be null and void in all respects and nothing contained in the affected Subplan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors; (b) prejudice in any manner the rights of the Debtors, or any other Person or Entity; or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtors or any other Person or Entity in any respects.

## Section 11.03. Conditions Precedent to the Effective Date

It shall be a condition to occurrence of the Effective Date of any Subplan that the following conditions shall have been satisfied or waived pursuant to Section 11.04 of this Plan:

(i)     all conditions precedent to Confirmation have been satisfied;

(ii)    the Confirmation Order shall have been entered by the Bankruptcy Court on the docket of the Chapter 11 Cases in form and substance acceptable to the Debtors and the Consultation Parties, and such order shall not be subject to a stay;

(iii)   all closing conditions in the Membership Interest Purchase and Sale Agreement, if any, shall have been satisfied or waived in accordance with the terms thereof;

(iv)   all of the conditions precedent for effectiveness of the Exit Financing, if any, shall have been satisfied or waived in accordance with the terms thereof;

(v)    all financing provided to the Debtors pursuant to section 364 of the Bankruptcy Code, including the DIP Facility, shall have been paid or replaced, or other arrangements to the lenders providing such financing in

their discretion regarding the repayment and termination of such financing shall have been made;

(vi)   the Distribution Trust shall have been formed and the Distribution Trust Agreement, in form and substance acceptable to the Debtors and the Consultation Parties, shall have been executed and become enforceable;

(vii)   the Liquidation Trust shall have been formed and the Liquidation Trust Agreement, in form and substance acceptable to the Debtors and the Consultation Parties, shall have been executed and become enforceable;

(viii)   the appointment of the Plan Administrator shall have been confirmed pursuant to an order of the Bankruptcy Court, which may be the Confirmation Order and which shall not be subject to a stay;

(ix)   all reserves shall have been funded for the Reorganizing Debtors and Reorganized Debtors, as applicable, including the Reorganizing Debtors Claims Reserve and the Reorganizing Debtors Wind-Down Costs Reserve;

(x)   all reserves shall have been funded for the Liquidating Debtors, including the Liquidating Debtors Claims Reserve and the Liquidating Debtors Wind-Down Costs Reserve;

(xi)   the Professional Claims Reserve shall have been funded;

(xii)   all other actions and documents necessary to implement the provisions of this Plan to be effectuated on or before the Effective Date (including but not limited to the Plan Supplement and the Exit Financing Facility Documents) shall be reasonably satisfactory to the Debtors and the Consultation Parties; and

(xiii)   the Debtors shall have received all authorizations, consents, approvals, regulatory approvals, rulings, letters, opinions or documents, if any, necessary to implement this Plan.

## Section 11.04. Waiver of Conditions Precedent

The Debtors, with the written approval of the Consultation Parties, may waive any of the conditions precedent set forth in Section 11.01 and Section 11.03 of this Plan in whole or in part at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to confirm and/or consummate this Plan.

## ARTICLE XII

## EFFECT OF CONFIRMATION OF THIS PLAN

**Section 12.01. Discharge of Claims**

Except as otherwise provided for herein and effective as of the Effective Date: (a) the rights afforded in this Plan and the treatment of all Claims and Equity Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Equity Interests in the Debtors, their property and Estates of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date; (b) this Plan shall bind all holders of Claims and Equity Interests, notwithstanding whether any such holders failed to vote to accept or reject this Plan or voted to reject this Plan; (c) the Debtors shall be deemed discharged and released under and to the fullest extent provided under the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever and all Claims against and Equity Interests in the Debtors, their property and Estates shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Reorganizing Debtors, the Reorganized Debtors, the Distribution Trust, the Liquidating Debtors, the Liquidation Trust, their Estates, their successors and assigns and their assets and properties any and all Claims, Equity Interests, damages, debts, and other liabilities based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

**Section 12.02. Certain Releases by the Debtors**

Notwithstanding anything contained herein to the contrary, as of the Effective Date, and to the fullest extent authorized by applicable law, for good and valuable consideration, the adequacy of which is hereby confirmed, the Released Parties are deemed released and discharged by the Debtors, the Reorganizing Debtors, the Reorganized Debtors, the Liquidating Debtors, the Estates and any Person or Entity seeking to exercise the rights of the Debtors, the Reorganizing Debtors, the Reorganized Debtors, the Liquidating Debtors or the Estates (including the Plan Administrator or any third-party disbursing agent) from any and all claims, obligations, suits, judgments, damages, demands, debts, remedies, Causes of Action, rights of setoff, other rights, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws, Avoidance Actions, including any derivative claims, asserted or that could possibly have been asserted directly or indirectly on behalf of the Debtors, the Reorganizing Debtors, the Reorganized Debtors, the Liquidating Debtors, the Estates or their Affiliates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, and any and all Causes of Action asserted or that could possibly have been asserted on behalf of the Debtors, the Reorganizing Debtors, the Reorganized Debtors, the Liquidating Debtors, the Estates or their Affiliates (whether individually or collectively) or on behalf of the holder of any Claim

73

or Equity Interest or other Entity, based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganizing Debtors, the Reorganized Debtors, the Liquidating Debtors, the Estates or their Affiliates, the conduct of the Debtors' businesses, the in-court or out-of-court efforts to implement the Sale, the Membership Interest Purchase and Sale Agreement and/or the Exit Financing, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Disclosure Statement or Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement, or the Plan, the filing and prosecution of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganizing Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtors, the Reorganizing Debtors, the Liquidating Debtors, the Estates or their Affiliates, on the one hand, and any Released Party, on the other hand, prepetition contracts and agreements with one or more Debtors, or any other act or omission, transaction, agreement, event, or other occurrence taking place before the Effective Date; provided that to the extent that a claim or Cause of Action is determined by a Final Order to have resulted from fraud, gross negligence or willful misconduct of a Released Party, such claim or Cause of Action shall not be so released against such Released Party; provided, however, and for the avoidance of doubt, the release set forth above does not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 12.02, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by this Section 12.02; (c) in the best interests of the Debtors, their Estates and all holders of Claims and Equity Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any Entity asserting any claim or Cause of Action released by this Section 12.02.

Section 12.03. Certain Releases by Holders of Claims and Equity Interests

Notwithstanding anything contained herein to the contrary, as of the Effective Date, and to the fullest extent authorized by applicable law, the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, remedies, Causes of Action, rights of setoff, other rights, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws, Avoidance Actions, including any derivative claims, asserted or that could possibly have been asserted directly or indirectly on behalf of the Releasing Parties or their Affiliates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured,

known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, and any and all Causes of Action asserted or that could possibly have been asserted on behalf of the Releasing Parties or their Affiliates (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Entity, based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganizing Debtors, the Liquidating Debtors, the Estates or their Affiliates, the conduct of the Debtors' businesses, the in-court or out-of-court efforts to implement the Sale, the Membership Interest Purchase and Sale Agreement and/or the Exit Financing, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Disclosure Statement or Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the Disclosure Statement, or the Plan; the filing and prosecution of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganizing Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtors, the Reorganizing Debtors, the Liquidating Debtors, the Estates or their Affiliates, on the one hand, and any Released Party, on the other hand, prepetition contracts and agreements with one or more Debtors, or any other act or omission, transaction, agreement, event, or other occurrence taking place <u>before the Effective Date</u>; <u>provided</u> that to the extent that a claim or Cause of Action is determined by a Final Order to have resulted from fraud, gross negligence or willful misconduct of a Released Party, such claim or Cause of Action shall not be so released against such Released Party.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date of any party under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 12.03, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by this Section 12.03; (c) in the best interests of the Debtors and all holders of Claims and Equity Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any Entity granting a release under this Section 12.03 from asserting any claim or Cause of Action released by this Section 12.03.

Section 12.04. Exculpation

Effective as of the Effective Date and to the fullest extent authorized by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim except to the extent determined in a Final Order to have resulted from actual fraud, gross negligence or willful misconduct of such Exculpated Party.  The

**Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

## Section 12.05. Injunction

**Except as otherwise provided herein or in the Confirmation Order, from and after the Effective Date and to the fullest extent authorized by applicable law, all Entities are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined and forever barred from taking any of the following actions against, as applicable, the Released Parties, the Reorganized Debtors, the Reorganized Debtors, the Liquidating Debtors, the Distribution Trust, the Liquidation Trust and/or the Exculpated Parties and their respective properties and Assets: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Claims against or Equity Interests in the Debtors; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such Claims or Equity Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such Claims or Equity Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, exculpated or settled pursuant to the Plan.**

## Section 12.06. Protection Against Discriminatory Treatment

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganizing Debtor, Reorganized Debtor or Liquidating Debtor, as applicable, or any Entity with which a Reorganizing Debtor, Reorganized Debtor or Liquidating Debtor has been or is associated, solely because such Reorganizing Debtor, Reorganized Debtor or Liquidating Debtor was a debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Reorganizing Debtor, Reorganized Debtor or Liquidating Debtor was granted a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

## Section 12.07. Release of Liens

Except as otherwise provided herein, in the Confirmation Order, or in any contract, instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against

any property of the Estates shall be fully released, settled and discharged, and all of the rights, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Distribution Trust, the Liquidation Trust, the Plan Administrator or third-party disbursing agent, as applicable.

**Section 12.08. Cancellation of Securities**

So long as the treatments provided for in, and the distributions contemplated by, ARTICLE II, ARTICLE III and ARTICLE IV of this Plan are effectuated or made, on the Effective Date, but subject to this Section 12.08, each of (a) the Pre-Petition Reimbursement Agreement; (b) the DIP Credit Agreement; (c) the Equity Interests in Optim Generation; (d) the Equity Interests in Optim Energy; (e) the Equity Interests in Optim Marketing; (f) the Equity Interests in OEM; (g) the Equity Interests in Twin Oaks GP; (h) the Equity Interests in Twin Oaks LP; and (i) any other notes, bonds, indentures, certificates or other instruments or documents evidencing or creating any Claims or Equity Interests that are Impaired by this Plan, shall be cancelled and deemed terminated and satisfied and discharged with respect to the Debtors, and the holders thereof shall have no further rights or entitlements in respect thereof against the Debtors, except the rights to receive the distributions, if any, to which the holders thereof are entitled under this Plan.

## ARTICLE XIII

## MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN

**Section 13.01. Modification of a Subplan**

The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, and subject to the written approval of the Consultation Parties, to amend or modify this Plan or any Subplan before the entry of the Confirmation Order, subject to the limitations set forth herein and the Membership Interest Purchase and Sale Agreement, if any. After entry of the Confirmation Order for any Subplan, the Debtors may amend or modify such Subplan, subject to the written approval of the Consultation Parties and in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistency in such Subplan in such manner as may be necessary to carry out the purpose and intent of the Subplan, provided that such post-Confirmation amendment or modification shall be subject in all cases to the limitations set forth in the Membership Interest Purchase and Sale Agreement, if any.

Entry of a Confirmation Order shall mean that all modifications or amendments to this Plan or any Subplan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**Section 13.02. Revocation or Withdrawal of a Subplan**

The Debtors reserve the right, subject to the written approval of the Consultation Parties to revoke or withdraw this Plan or any Subplan before the Confirmation Date and to file subsequent chapter 11 Subplans.   If the Debtors revoke or withdraw a Subplan, or if Confirmation or the Effective Date does not occur with respect to any Subplan, then: (a) the affected Subplan will be null and void in all respects; (b) any settlement or compromise embodied in the Subplan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Subplan, and any document or agreement executed pursuant hereto shall be null and void in all respects; and (c) and nothing contained in the affected Subplan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors; (ii) prejudice in any manner the rights of the Debtors or any other Entity, or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtors or any other Entity in any respects; provided that this Section 13.02 subject in all cases to the limitations set forth in the Membership Interest Purchase and Sale Agreement, if any.

## ARTICLE XIV

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date for any Subplan, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases after the Effective Date as legally permissible, including jurisdiction to:

(i) allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

(ii) grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

(iii) resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease (including Cure Costs) to which the Debtors are parties or with respect to which the Debtors may be liable, including but not limited to matters related to the Walnut Creek Claims;

(iv) ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(v) decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(vi)     enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with this Plan, the Disclosure Statement, the Membership Interest Purchase and Sale Agreement and/or the Exit Financing;

(vii)    enter and enforce any order related to the Sale or otherwise in connection with any sale of property pursuant to sections 363 or 1123 of the Bankruptcy Code;

(viii)   decide or resolve any Causes of Action arising under the Bankruptcy Code, including, without limitation, Avoidance Actions and Claims under sections 362, 510, 542 and 543 of the Bankruptcy Code;

(ix)     resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Subplan, or any Person's or Entity's obligations incurred in connection with this Plan or any Subplan;

(x)      issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with Consummation or enforcement of this Plan or any Subplan, except as otherwise provided herein;

(xi)     resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in ARTICLE XII of this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunction and other provisions;

(xii)    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(xiii)   determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Membership Interest Purchase and Sale Agreement and/or the Exit Financing, or any contract, instrument, release, indenture or other agreement or document created in connection with this Plan or the Disclosure Statement;

(xiv)    enter order(s) and/or Final Decree(s) concluding the Chapter 11 Cases;

(xv)     consider any post-Confirmation property sale(s) of the type specified in Section 6.09 of this Plan, and enter an order(s) with respect thereto;

(xvi)    hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

79

(xvii)  consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Court, including the Confirmation Order; and

(xviii)  hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XV

## MISCELLANEOUS PROVISIONS

### Section 15.01. Corporate Action

Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Equity Interests, directors, managers or officers of the Plan Administrator, the Plan Administrator, the Reorganizing Debtors, the Reorganized Debtors, the Liquidating Debtors or any other Entity or Person, as applicable, including: (a) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of this Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (c) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; (d) selection of the board of directors of Reorganized Generation or any employees or trustee of the Distribution Trust or the Liquidation Trust; (e) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; (f) the consummation of the transactions contemplated by the Membership Interest Purchase and Sale Agreement, if any; (g) the consummation of the transactions contemplated by the Exit Financing and the execution of all documents related thereto; (h) the issuance of the Reorganized OEG Equity Interests and the execution of all documents related thereto; and (i) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law. All matters provided for in this Plan involving the company structure of the Debtors, and any company action required by the Debtors in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons or officers of the Debtors. The authorizations and approvals contemplated by this Section 15.01 shall be effective notwithstanding any requirements under nonbankruptcy law.

### Section 15.02. Securities Issued Under this Plan

The new Reorganized OEG Equity Interests will be issued under this Plan. The Reorganized OEG Equity Interests will be exempt from registration under Section 4(a)(2) of the

Securities Act of 1933 or, if issued to the Pre-Petition Secured Parties, then under section 1145(a) of the Bankruptcy Code.

## Section 15.03. General Settlement of Claims

Unless otherwise set forth in this Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, on the Effective Date, the provisions of this Plan constitute a good-faith compromise and settlement of all Claims and Equity Interests.

## Section 15.04. Preservation of Causes of Action Not Expressly Released

The Plan Administrator, on behalf of the Distribution Trust and the Liquidation Trust, as applicable, retains all rights on behalf of the Reorganizing Debtors, the Reorganized Debtors and the Liquidating Debtors, respectively, to commence and pursue, as appropriate, any and all claims or Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Debtors' Chapter 11 Cases other than Avoidance Actions or any Causes of Action released under this Plan. The failure to list any potential or existing claims or Causes of Action is not intended to limit the rights of the Plan Administrator to pursue any claims or Causes of Action not listed or identified.

Unless a claim or Cause of Action against a Creditor or other Person or Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order, the Debtors expressly reserve such claim or Cause of Action for later adjudication by the Plan Administrator for and on behalf of the Debtors, the Reorganizing Debtors, the Reorganized Debtors and the Liquidating Debtors (including, without limitation, claims and Causes of Action not specifically identified or which Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to Debtors at this time or facts or circumstances which may change or be different from those which the Debtors now believe to exist). No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation or Consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such claims or Causes of Action have been released in this Plan or other Final Order. In addition, the Debtors and their successor entities under this Plan expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Except as otherwise provided in this Plan or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, any claims, rights, and Causes of Action that the respective Debtors, Reorganizing Debtors, Reorganized Debtors or Liquidating Debtors may hold against any Person, shall vest in the Distribution Trust and the Liquidation Trust, and the Distribution Trust and the Liquidation Trust, through their authorized agents or representatives,

shall retain and may exclusively enforce any and all such claims, rights or Causes of Action. The Plan Administrator, for and on behalf of the Distribution Trust and Liquidation Trust, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and Causes of Action without the consent or approval of any third party and without any further order of court.

Delivery (by any means) of this Plan or Disclosure Statement to any Person to whom the Debtors, the Reorganizing Debtors, the Reorganized Debtors or the Liquidating Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors, the Reorganizing Debtors, the Reorganized Debtors or the Liquidating Debtors, or a transfer of money or property of the Debtors, the Reorganizing Debtors, the Reorganized Debtors or the Liquidating Debtors, or who has transacted business with Debtors, the Reorganizing Debtors, the Reorganized Debtors or the Liquidating Debtors, or leased equipment or property from the Debtors, the Reorganizing Debtors, the Reorganized Debtors or the Liquidating Debtors, shall constitute actual notice that such obligation, transfer, or transaction may be reviewed by the Debtors, the Reorganizing Debtors, the Reorganized Debtors, the Liquidating Debtors or the Plan Administrator subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not: (a) such Person has filed a Proof of Claim against Debtors, the Reorganizing Debtors, the Reorganized Debtors or the Liquidating Debtors in these Chapter 11 Cases; (b) such Person's Proof of Claim has been objected to by the Debtors, the Reorganizing Debtors, the Reorganized Debtors, the Liquidating Debtors or the Plan Administrator; (c) such Person's Claim was included in Debtors' Schedules; (d) such Person's scheduled Claim has been objected to by the Debtors, the Reorganizing Debtors, Reorganized Debtors, the Liquidating Debtors or the Plan Administrator or has been identified by the Debtors, the Reorganizing Debtors, Reorganized Debtors, the Liquidating Debtors or the Plan Administrator as a Disputed Claim; or (e) such action falls within the list of affirmative Causes of Action in the Plan Supplement.

## Section 15.05. Section 1146(a) Exemption

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under this Plan (including the Sale, if any) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording tax, or other similar tax or governmental assessment. Upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax, fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

## Section 15.06. Elimination of Vacant Classes

Any Class of Claims against, or Equity Interests in, the Debtors that is not populated as of the commencement of the Confirmation Hearing by an Allowed Claim or Equity Interest or a Claim or Equity Interest temporarily allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the applicable Subplan for purposes of: (a) voting to accept or reject the

Subplan; and (b) determining the acceptance or rejection of the Subplan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### Section 15.07. Intercompany Claims

On the Effective Date, all Intercompany Claims shall be cancelled, extinguished and discharged and the holders of Intercompany Claims shall not receive or retain any property under this Plan on account of such Intercompany Claims.  This determination was made by the Debtors in consultation with the Consultation Parties.

### Section 15.08. Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Subplans for the Reorganizing Debtors or the Liquidating Debtors.  The Debtors, the Reorganizing Debtors, the Reorganized Debtors or the Liquidating Debtors, as applicable, and all holders of Claims and Equity Interests receiving distributions pursuant to any Subplan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### Section 15.09. Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### Section 15.10. Reservation of Rights

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither this Plan, any statement or provision contained in this Plan, nor any action taken or not taken by any Debtor with respect to this Plan, the Disclosure Statement, the Confirmation Order or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the holders of Claims or Equity Interests prior to the Effective Date.

### Section 15.11. Notices

Except as otherwise set forth in this Plan, all notices or requests in connection with this Plan shall be in writing and will be deemed to have been given when received by personal delivery, facsimile, e-mail, overnight courier or first class mail and addressed to:

| If to the Debtors: | Bracewell & Giuliani LLP<br>CityPlace I, 34th Floor<br>185 Asylum Street<br>Hartford, Connecticut 06103 |
| --- | --- |

|  | Attn: Kurt Mayr<br><br>with a copy to:<br><br>Bracewell & Giuliani LLP<br>1251 Avenue of Americas, 49th Floor<br>New York, New York 10020<br>Attn: Robert G. Burns |
| **If to the Consultation Parties:** | Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Attn: Lindsee P. Granfield<br>        Luke A. Barefoot |

### Section 15.12. Term of Injunctions or Stay

**Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

### Section 15.13. Entire Agreement

Except as otherwise indicated, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.  To the extent the Confirmation Order is inconsistent with this Plan, the Confirmation Order shall control for all purposes.

### Section 15.14. Plan Supplement Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full in this Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Claims and Solicitation Agent's website at https://cases.primeclerk.com/optim/Home-DocketInfo or the Bankruptcy Court's website at www.deb.uscourts.gov.

**Section 15.15. Severability**

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, and subject to the written approval of the Consultation Parties, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms; (b) integral to this Plan; and (c) non-severable and mutually dependent.

**Section 15.16. Substantial Consummation**

On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

Dated: March 18, 2015
Wilmington, Delaware

Respectfully submitted,

Optim Energy, LLC

By: _____
     Name:  Nicholas R. Rahn
     Title:   Chief Executive Officer

Optim Energy Marketing, LLC

By: _____
     Name:  Nicholas R. Rahn
     Title:   Manager

OEM 1, LLC

By: _____
     Name:  Nicholas R. Rahn
     Title:   Manager

Optim Energy Generation, LLC

By: _____
     Name:  Nicholas R. Rahn
     Title:   Manager

Optim Energy Cedar Bayou 4, LLC

By: _____
     Name:  Nicholas R. Rahn
     Title:   Manager

Optim Energy Altura Cogen, LLC

By: _____
    Name: Nicholas R. Rahn
    Title:  Manager


Optim Energy Twin Oaks GP, LLC

By: _____
    Name: Nicholas R. Rahn
    Title:  Manager


Optim Energy Twin Oaks, LP

By Optim Energy Twin Oaks GP, LLC its General
Partner

By: _____
    Name: Nicholas R. Rahn
    Title:  Manager

87