# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Optim Energy, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 14-10262 (BLS)<br><br>(Jointly Administered)<br><br>**Hearing Date: April 22, 2015 at 11:00 a.m. (ET)**<br><br>**Objection Deadline: April 1, 2015 at 4:00 p.m. (ET)** |

### DEBTORS' MOTION FOR AN ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF CERTAIN OF THE DEBTORS' EQUITY INTERESTS, (II) SCHEDULING AN AUCTION AND (III) GRANTING RELATED RELIEF

Optim Energy, LLC ("***Optim Energy***")[2] and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "***Debtors***") hereby move (the "***Motion***") for entry of an order in the form attached hereto as **Exhibit A** (the "***Bidding Procedures Order***"), providing for, among other things, approval of the bidding procedures in the form attached hereto as **Exhibit 1** to **Exhibit A** and incorporated herein by reference (the "***Bidding Procedures***") with respect to the potential acquisition of the Debtors' interests in two gas fired power plants—the Altura Cogen Plant and the Cedar Bayou Plant (together, the "***Gas Plant Portfolio***")—through the sale (the "***Sale***") of the reorganized equity of

---

[1] The Debtors in these chapter 11 cases are: Optim Energy, LLC; OEM 1, LLC; Optim Energy Cedar Bayou 4, LLC; Optim Energy Altura Cogen, LLC; Optim Energy Marketing, LLC; Optim Energy Generation, LLC; Optim Energy Twin Oaks GP, LLC; Optim Energy Twin Oaks, LP. The Debtors' main corporate and mailing address for purposes of these chapter 11 cases is: c/o Competitive Power Ventures, Inc., 8403 Colesville Road, Suite 915, Silver Spring, MD 20910.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Bidding Procedures. All summaries of the key documents related to the Sale (as defined herein) provided in this Motion are provided for informational purposes only; in the event of any conflict between this Motion and those documents, the terms of the documents, and not this Motion, shall control.

Debtor Optim Energy Generation, LLC (or such other reorganized equity of the Debtors as may be necessary or convenient, the "**Reorganized OEG Equity Interests**") pursuant to the *Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* dated March 18, 2015 (as the same may be subsequently amended or modified, the "**Plan**").  The Plan, filed contemporaneously herewith, contemplates a potential Sale of the Gas Plant Portfolio at a value to the Debtors in cash of at least $355 million (net of all deductions and/or adjustments and with no right of set off) (the "**Reserve Price**"), on terms satisfactory to the Debtors as well as the DIP Lenders and the Pre-Petition Secured Parties (each as defined in the Plan and, together in such capacity, the "**Consultation Parties**"), to serve as a floor for further bidding.

If the Debtors receive only one Qualifying Bid that meets or exceeds the Reserve Price on terms satisfactory to the Debtors and the Consultation Parties, the Debtors intend to execute an ownership interest purchase and sale agreement with such Qualifying Bidder (the "**Membership Interest Purchase and Sale Agreement**") in the form substantially attached to the *Disclosure Statement for the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* dated March 18, 2015 (as the same may be subsequently amended or modified), and seek Confirmation of the Plan to effectuate the Sale to the Qualifying Bidder pursuant to the Bidding Procedures.  Alternatively, if the Debtors receive more than one Qualifying Bid that meets or exceeds the Reserve Price on terms satisfactory to the Debtors and the Consultation Parties, the Debtors intend to conduct an Auction for the Sale of the Reorganized OEG Equity Interests pursuant to the Bidding Procedures, after which the Debtors intend to execute a Membership Interest Purchase and Sale Agreement and seek Confirmation of the Plan to effectuate the Sale to the Prevailing Bidder.  Finally, if the Debtors do not receive a Qualifying Bid that meets or exceeds the Reserve Price on terms satisfactory to the Debtors and

the Consultation Parties by the Bid Deadline, the Debtors will suspend the Sale process and seek Confirmation of the Plan, which in such circumstance, would, in part, provide for the delivery of the Reorganized OEG Equity Interests to the Pre-Petition Secured Parties in satisfaction of the Allowed Pre-Petition Secured Parties Secured Claims.

In support of the Motion, the Debtors submit (a) the *Declaration of Nick Rahn, Chief Executive Officer of Optim Energy, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 4] (the "**First Day Declaration**") and (b) the *Declaration of George Mack in Support of Debtors' Motion for an Order (I) Approving Bidding Procedures in Connection with the Sale of Certain of the Debtors' Equity Interests, (II) Scheduling an Auction and (III) Granting Related Relief* incorporated herein by reference and attached hereto as **Exhibit B** (the "**Mack Declaration**"). In further support of the Motion, the Debtors respectfully state as follows:

### Jurisdiction

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection with this Motion consistent with Article III of the United States Constitution.

2.  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 9006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rule 6004-1.

**Background**

4.     On February 12, 2014 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.     The Debtors continue to operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only under Case No. 14-10262 (BLS). No trustee, examiner, or official committee of unsecured creditors has been appointed in the Debtors' cases.

6.     A full description of the Debtors' business, corporate structure, prepetition indebtedness, and events leading to these chapter 11 cases is set forth in the First Day Declaration, which was filed on the Petition Date and incorporated herein by reference.

**A.     The Gas Plant Portfolio**

7.     At the commencement of these cases, the Debtors owned interests in three power plants—the Twin Oaks Plant, the Altura Cogen Plant and the Cedar Bayou Plant. After a successful marketing and auction process, the Debtors have sold the Twin Oaks Plant and the Debtors' principal remaining assets are their interests in the Gas Plant Portfolio.

8.     Debtor Optim Energy Generation, LLC owns all of the equity interests in Debtor Optim Energy Altura Cogen, LLC ("**Altura Cogen**") and Debtor Optim Energy Cedar Bayou 4, LLC ("**Optim Cedar Bayou**"). (First Day Decl., ¶ 21). Altura Cogen and Optim Cedar Bayou own the following plants comprising the Gas Plant Portfolio as follows:

- Altura Cogen owns the Altura Cogen Plant, a natural-gas powered plant capable of producing 600 megawatts located in Harris County, Texas, which sells the majority of its energy in the ERCOT market. The Altura

4

Cogen Plant has been commercially operating since 1985 and is located within a complex of petrochemical facilities owned by Lyondell Chemical Company ("**Lyondell**"). Altura Cogen leases the land under which the power plant is situated from Lyondell pursuant to a ground lease entitled the "Lease and Easement Agreement" dated September 6, 2005. (*Id.*, ¶ 15).

- Optim Cedar Bayou owns a 50% undivided interest in the Cedar Bayou Plant, a natural-gas powered plant capable of producing 550 megawatts located in Chambers County, Texas, which operates in ERCOT's Houston Zone. NRG Cedar Bayou Development Company, LLC ("**NRG Cedar Bayou**") owns the remaining 50% undivided interest. The Cedar Bayou Plant began operating in 2009 and is located within a complex of electric generation facilities owned by NRG Texas Power LLC ("**NRG Texas**"), which owns the real property upon which the Cedar Bayou Plant is situated. Cedar Bayou and NRG Cedar Bayou are co-lessees from NRG Texas of the real property upon which the Cedar Bayou Plant is located pursuant to that certain Premises Lease dated August 1, 2007. The Cedar Bayou Plant is operated by NRG Cedar Bayou in accordance with a Joint Ownership Agreement (as amended and restated), dated August 1, 2007 between Optim Cedar Bayou and NRG Cedar Bayou. (*Id.*, ¶ 17).

**B.     The Marketing Process**

9.    In light of the successful Twin Oaks Plant sale, the Debtors carefully considered whether a similar process should be explored with respect to the Gas Plant Portfolio. In consultation with the Debtors' advisors, their independent directors and the Consultation Parties, the Debtors ultimately determined that, in light of existing market conditions and the nature of the Debtors' operations and assets after the Twin Oaks Plant sale, marketing the Gas Plant Portfolio may be the best alternative to maximize value for the Debtors' estates and to reorganize their affairs.

10.   As described in the Mack Declaration, in November 2014 the Debtors initiated a broad-based marketing process led by Barclays Capital, Inc. ("**Barclays**"), the Debtors' investment banker retained in these chapter 11 cases. (Mack Decl., ¶ 8.) As was done with the Twin Oaks Plant, Barclays prepared a high level "teaser" that provided basic information regarding the opportunity to purchase the Gas Plant Portfolio. (*Id.*) The teaser was sent to more

than seventy (70) parties that Barclays believed, based on its experience with the Twin Oaks Plant and in conducting sales of assets in distressed situations and sales of power plant facilities, might have an interest in acquiring the Gas Plant Portfolio. (*Id.*) The recipients of the teaser included private equity investors and strategic industry participants. (*Id.*)

11. Barclays received a high level of initial interest in the Gas Plant Portfolio. (*Id.*, ¶ 9.) Nearly thirty (30) parties executed confidentiality agreements (collectively, the "**Potential Purchasers**"). (*Id.*) Potential Purchasers received a Confidential Information Memorandum setting forth detailed information about the Gas Plant Portfolio, including technical descriptions of the facilities, a summary of existing commercial arrangements and key contracts, historical operating data, and market and environmental overviews. (*Id.*) The Debtors also provided Potential Purchasers with access to Barclays and the facilities' management for their preliminary due diligence. (*Id.*) The Debtors requested that Potential Purchasers submit non-binding preliminary proposals to purchase the Gas Plant Portfolio (the "**Preliminary Proposals**") by November 21, 2014. (*Id.*) Several Potential Purchasers submitted Preliminary Proposals. (*Id.*)

12. The Debtors, in consultation with their advisors and independent directors, reviewed the Preliminary Proposals with the Consultation Parties. (*Id.*, ¶ 10) After a thorough review process, the Debtors invited several Potential Purchasers to participate in a second round of the marketing process (the "**Round Two Participants**"). (*Id.*) The Debtors and their advisors provided Round Two Participants with access to an electronic data room containing extensive information about the Gas Plant Portfolio. (*Id.*) The data room included copies of the applicable Debtors' significant contracts, detailed financial reports, and comprehensive operational data. (*Id.*) The Debtors and their advisors designed the second round of the marketing process to elicit detailed binding proposals from the Round Two Participants. (*Id.*)

13. The Debtors provided each of the Round Two Participants an opportunity to tour the facilities, attend a management presentation and participate in detailed question and answer sessions. (*Id.*, ¶ 11) Several of the Round Two Participants retained independent consultants and advisors to assist with their due diligence and bid preparation. (*Id.*) The Debtors distributed a proposed form of purchase agreement to Round Two Participants and established a deadline for Round Two Participants to submit definitive documented bids. (*Id.*) The Debtors, in consultation with their advisors, independent directors and the Consultation Parties, reviewed the bids received from Round Two Participants. (*Id.*) The Debtors have determined that the best path forward for a potential sale of the Gas Plant Portfolio is through a court-approved process in accordance with the Bidding Procedures. (*Id.*) As further described below, the Debtors respectfully request that the Court approve this Motion.

## Relief Requested

14. By this Motion, the Debtors request entry of the Bidding Procedures Order, which will, among other things, establish the following dates and deadlines that would be applicable if the Debtors pursue the sale of the Gas Plant Portfolio and enter into a Purchase Agreement with the Prevailing Bidder, if any:

- Bid Deadline: The date that is no later than 3:00 p.m. (prevailing Eastern Time) on May 1, 2015, as the last date by which parties wishing to participate in the Auction must deliver bid documents required to participate in the Auction ("***Potential Bidders***") pursuant to the Bidding Procedures (the "***Bid Deadline***"); and

- Auction: The Auction, if one is needed, to be held at the New York office of Bracewell & Giuliani LLP, 1251 Avenue of the Americas, 49th Floor, New York, New York 10020-1100, on a date that shall be at least seven (7) days after the Bid Deadline.

If the Debtors receive more than two Qualifying Bids (as defined below), the superior Qualifying Bid will serve as the baseline bid (the "***Baseline Bid***") for the Auction.

15. Whether or not an Auction is necessary, the Debtors would separately seek Court approval to consummate any Sale transaction through confirmation of the Plan. Alternatively, the Debtors reserve the right to seek approval of the sale of the Gas Plant Portfolio through one or more asset sales pursuant to a chapter 11 plan of reorganization or, *inter alia*, sections 363 and 365 of the Bankruptcy Code, in the event that an asset sale is determined by the Debtors, in their discretion, but after consultation with the Consultation Parties, to maximize value for the Gas Plant Portfolio.

## **Basis for Relief Requested**

**A.    Approval of Bidding Procedures**

16. The Bidding Procedures are designed to maximize value for the Debtors' estates and ensure that a marketing and sales process is undertaken by the Debtors in accordance with the timeline required under the DIP Credit Agreement (attached as Exhibit A to the Final DIP Order, as amended). The Bidding Procedures are summarized[3] as follows:

*(i)*    Consultation Parties.  The Debtors will reasonably consult with the Consultation Parties, and their respective advisors, throughout the Bidding Process.  (*See* Bidding Procedures, ¶ 1.)

*(ii)*   Participation Requirements: Potential Bidders, other than the DIP Lenders and the Pre-Petition Secured Parties, must provide, so as to be received no later than 3:00 p.m. (prevailing Eastern Time) on April 24, 2015: (a) an executed confidentiality agreement (to the extent that a Potential Bidder has not already entered into a confidentiality agreement with Optim Energy concerning the Debtors' confidential information); (b) financial information acceptable to the Debtors to determine that the Potential Bidder has the financial wherewithal to consummate the Sale; and (c) evidence that the Potential Bidder has the internal corporate, legal or other authorizations or approval to engage in and close the Sale. Satisfaction of (a), (b), and (c) herein, subject to the Debtors' reserved rights and

---

[3] Local Rule 6004-1 requires this Motion to highlight certain material terms requested in the Bidding Procedures. The description of the Bidding Procedures provided herein is not restated, but rather a summary and is qualified in its entirety by reference to the Bidding Procedures attached as **Exhibit 1** to **Exhibit A** hereto.

consultation with the Consultation Parties will deem a Potential Bidder a "*Qualifying Bidder*." (*See* Bidding Procedures, ¶ 2.)

*(iii)* Due Diligence. The Debtors will provide any Qualifying Bidder with reasonably requested diligence access. (*See* Bidding Procedures, ¶ 3.)

*(iv)* Bid Requirements. Subject to and qualified by paragraph 9 of the Bidding Procedures, to be deemed a "*Qualifying Bid*," a bid must be received no later than the Bid Deadline and must, among other things, satisfy each of the following requirements: (a) the bid states that the Qualifying Bidder offers to purchase the Reorganized OEG Equity Interests; (b) the bid identifies the aggregate "*Purchase Price*" (which is at least the Reserve Price in cash) and the form (if other forms than cash above the Reserve Price) and source of consideration thereof; (c) the bid is accompanied by a clean and duly authorized and executed membership interest purchase and sale agreement and/or similar agreement(s), together with all exhibits and schedules thereto, pursuant to which the Qualifying Bidder proposes to effectuate the acquisition of the Reorganized OEG Equity Interests (the "*Purchase Agreement*") marked to show any variations from the form of membership interest purchase and sale agreement provided to Potential Bidders in the data room, provided, however, that the Debtors, in consultation with the Consultation Parties, may declare the bid not to be a Qualifying Bid due to variations the Debtors do not find acceptable; (d) the bid states that the bid is irrevocable until the selection of the Prevailing Bidder and the Back-up Bidder (if applicable), and to the extent the bidder is selected as the Prevailing Bidder or the Back-up Bidder, shall remain irrevocable until the earlier of (1) the "Closing Date" (with respect to the Prevailing Bidder) and (2) the "Outside Back-up Date" (with respect to the Back-up Bidder); and (e) the bid shall be accompanied by a cash deposit equal to 10% of the aggregate Purchase Price (the "*Good Faith Deposit*"). (*See* Bidding Procedures, ¶ 5.)

*(v)* Auction. If the Debtors receive more than one Qualifying Bid that meets or exceeds the Reserve Price on terms satisfactory to the Debtors and the Consultation Parties, the Debtors will identify the Baseline Bid for the Auction and provide a copy of the Baseline Bid to all Qualifying Bidders within three (3) business days after the Bid Deadline. (*See* Bidding Procedures, ¶ 6.)

The Debtors shall conduct the auction at the New York office of Bracewell & Giuliani LLP, 1251 Avenue of the Americas, 49th Floor, New York, New York 10020-1100 (the "*Auction*"), starting at 10:00 a.m. (prevailing Eastern Time) or such other time as announced by the Debtors no later than two (2) business days prior to the Auction, on a date to be determined but in any event at least seven (7) days after the Bid Deadline. The Auction shall be governed by the following procedures:

      i.    <u>Participation at the Auction</u>. Only the Debtors, the Consultation Parties, the other Qualifying Bidders who have made a Qualifying Bid and any creditor of the Debtors, in each case, along with their advisors, shall be entitled to attend the Auction; <u>provided</u> that only the Qualifying Bidders may make bids at the Auction. (*See* Bidding Procedures, ¶ 6(a).)

      ii.    <u>No Discussions with Other Bidders, Etc</u>. Each Qualifying Bidder shall be required to confirm that, since the Petition Date, it has not engaged in any collusion with, or directly or indirectly initiated or caused to be initiated or maintained any communication with, any other bidder or potential bidder or any joint or co-owner, customer, vendor or supplier to the Debtors, with respect to the Bidding Process or the Sale. (*See* Bidding Procedures, ¶ 6(b).)

      iii.    <u>Overbids</u>. Each Qualifying Bidder may submit successive bids in increments of at least $1,000,000 higher than the Baseline Bid at which the Auction commenced and then continue in minimum increments of at least $1,000,000 higher in value to the Debtors than the previous bid. (*See* Bidding Procedures, ¶ 6(f).)

      iv.    <u>Conclusion of the Auction</u>: Prior to the conclusion of the Auction, to the extent it occurs, the Debtors shall announce the party who is the Prevailing Bidder and the party who is the Back-Up Bidder. The Debtors shall formally announce the close of the Auction after choosing the Prevailing Bidder and the Back-Up Bidder. No later than 12:00 p.m. (prevailing Eastern Time) the next business day after the close of the Auction, the Debtors shall file a notice announcing the identity of the Prevailing Bidder and the Back-Up Bidder with the Bankruptcy Court. (*See* Bidding Procedures, ¶ 7.)

*(vi)*   <u>One Qualifying Bid</u>. If the Debtors receive only one Qualifying Bid that meets or exceeds the Reserve Price on terms satisfactory to the Debtors and the Consultation Parties, such Qualifying Bid shall become the Prevailing Bid and such bidder shall become the Prevailing Bidder, and the Debtors will negotiate in good faith with such Prevailing Bidder regarding execution of the Purchase Agreement on terms satisfactory to the Debtors and the Consultation Parties. (*See* Bidding Procedures, ¶ 8.)

*(vii)*   <u>No Qualifying Bids</u>. If the Debtors do not receive a Qualifying Bid prior to the Bid Deadline that meets or exceeds the Reserve Price on terms satisfactory to the Debtors and the Consultation Parties, the Debtors will

not hold an Auction and instead shall promptly proceed to seek confirmation and consummation of their Plan. (*See* Bidding Procedures, ¶ 9.)

Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize sale value, and, as such, do not impair the Debtors' ability to consider all bid proposals, and preserve the Debtors' rights, after consultation with the Consultation Parties, to modify the Bidding Procedures as necessary or appropriate to maximize value for their estates as set forth in the Bidding Procedures. (*See* Bidding Procedures, ¶ 6(k), 16.)

### B. Good Faith Deposits

17. A Good Faith Deposit must accompany each Qualifying Bid. Each bidder shall, in accordance with the Bidding Procedures, deposit cash equal to 10% of the aggregate Purchase Price by wire transfer of immediately available funds to an account designated by the Debtors. In accordance with the Bidding Procedures and notwithstanding anything in the DIP Orders [D.I. 36, 144], the Good Faith Deposits shall be returned to each bidder not selected as the Prevailing Bidder or the Back-up Bidder no later than five (5) business days following the conclusion of the Auction (Bidding Procedures, ¶ 13.). The Good Faith Deposits of the Prevailing Bidder and Back-up Bidder will be treated as described in the Bidding Procedures.

### Arguments and Authorities

### A. The Bidding Procedures are Fair and are Designed to Maximize the Value Received for the Reorganized OEG Equity Interests

18. The Debtors submit that the proposed Bidding Procedures should be approved as a valid exercise of the Debtors' business judgment because they are reasonably designed to maximize the value of the Gas Plant Portfolio. Bidding procedures should be approved when they maximize the value of a debtor's estate. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.),* 181 F.3d 527, 535-537 (3d Cir. 1999) (detailing situations

where bidding incentives are appropriate in bankruptcy because they provide a benefit to the estate.); *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate.").

19.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004) (debtor in possession "had a fiduciary duty to protect and maximize the estate's assets"); *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573 (3rd Cir. 2003) (same); *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand").  To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales.  *See In re O'Brien Envtl. Energy,* 181 F.3d at 537; *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures "encourage bidding and ... maximize the value of the debtor's assets"); *see also In re Financial News Network, Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991) (as amended) ("court-imposed rules for the disposition of assets ... [should] provide an adequate basis for comparison of offers, and [should] provide for an [sic] fair and efficient resolution of bankrupt estates").

20.     The Bidding Procedures proposed herein are designed to maximize the value received for the Reorganized OEG Equity Interests by facilitating a competitive bidding process in which all Potential Bidders are encouraged to participate and submit competing bids.  The

Bidding Procedures contemplate a Reserve Price for the Gas Plant Portfolio of at least $355 million (net of all deductions and/or adjustments and with no right of set off) in cash, on terms satisfactory to the Debtors and the Consultation Parties.  At the same time, the Bidding Procedures contemplate a potential Auction of the Gas Plant Portfolio (if the Reserve Price is met and a Baseline Bid is identified) providing the Debtors with the opportunity to consider all competing offers and to select the highest or best offer for the Reorganized OEG Equity Interests.  Such a process will increase the likelihood that the Debtors receive the best possible consideration for the Gas Plant Portfolio by helping ensure a competitive and fair bidding process.  Accordingly, the Debtors and all parties in interest can be assured that, taking into account the financial condition of the Debtors, the consideration paid for the Reorganized OEG Equity Interests will be fair, reasonable, and in the best interest of the Debtors' estates and creditors, and there are sound business reasons to approve the Bidding Procedures.

21.    The proposed Bidding Procedures should promote active bidding from interested parties and thus dispel any doubts as to the highest or best offer reasonably available for the Gas Plant Portfolio.  The Bidding Procedures are consistent with other procedures previously approved by this Court, and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy cases.  Notably, the Bid Procedures proposed in this Motion are substantially similar to the bid procedures approved by this Court for the Twin Oaks Sale process.  The main differences are (a) the assets being sold, (b) the structure of the proposed transaction (i.e., sale of equity interests pursuant to a chapter 11 plan of reorganization), and the Debtors are not seeking Court approval of any break-up fee or expense reimbursement in connection with the Sale.  Accordingly, the proposed Bidding Procedures are

reasonable, appropriate, within the Debtors' sound business judgment under the circumstances, and should be approved.

### B. Relief from the Fourteen-Day Waiting Periods Under Bankruptcy Rule 6004(h) is Appropriate

22.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen (14) days after the entry of the order, unless the court orders otherwise."  The Debtors request that the Bidding Procedures Order be effective immediately by providing that the fourteen (14) day stay under Bankruptcy Rules 6004(h) be waived.  Here, a waiver of the stay may be necessary in order to meet the timelines imposed by the Debtors' post-petition financing and because of the current operating performance of the Debtors' electric generation facilities.  Moreover, as described in the Mack Declaration, the Sale was extensively marketed and notice of the Sale will be adequately provided to all parties in interest.  Accordingly, the Debtors hereby request that the Court waive the fourteen (14) day stay period under Bankruptcy Rule 6004(h).

### The Debtors' Reservation of Rights

23.     By this Motion, the Debtors seek only this Court's approval of the Bidding Procedures, but not the direction to pursue any Sale of the Gas Plant Portfolio.  Nothing included in or omitted from this Motion or the proposed Bidding Procedures Order, nor as a result of any actions to be taken pursuant the proposed Bidding Procedures Order, shall impair, prejudice, waive or otherwise affect the rights of the Debtors (which rights the Debtors expressly reserve) to, after consultation with the Consultation Parties, terminate or modify, at any time, the effort to market or sell the Gas Plant Portfolio or to convert the Sale to an Asset Sale pursuant to sections 363 or 1123 of the Bankruptcy Code.  The foregoing full reservation of rights shall include, without limitation, the Debtors' rights of assumption, assignment to the Prevailing Bidder, and/or

rejection of any executory contracts and unexpired leases pursuant to the requirements of sections 365 or 1123 of the Bankruptcy Code, and the Debtors hereby expressly reserve their rights consistent with the foregoing in all respects.

### **Notice**

24. The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) Cascade Investment, L.L.C. and ECJV Holdings, LLC; and (c) any party who has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and in the Bidding Procedures Order attached hereto as **Exhibit A**, and grant such other and further relief as is just and proper.

Dated: March 18, 2015
Wilmington, Delaware

| **MORRIS, NICHOLS, ARSHT & TUNNELL LLP** | **BRACEWELL & GIULIANI LLP** |
|---|---|
| */s/ William M. Alleman, Jr.* | Kurt Mayr (*admitted pro hac vice*) |
| Robert J. Dehney (No. 3578) | Mark E. Dendinger (*admitted pro hac vice*) |
| Eric D. Schwartz (No. 3134) | CityPlace I, 34th Floor |
| William M. Alleman, Jr. (No. 5449) | 185 Asylum Street |
| 1201 North Market Street, 16th Floor | Hartford, Connecticut 06103 |
| P.O. Box 1347 | Telephone: (860) 947-9000 |
| Wilmington, Delaware 19899 | Facsimile: (800) 404-3970 |
| Telephone: (302) 658-9200 | Kurt.Mayr@bgllp.com |
| Facsimile: (302) 658-3989 | Mark.Dendinger@bgllp.com |
| rdehney@mnat.com | -and- |
| eschwartz@mnat.com | Robert G. Burns (*admitted pro hac vice*) |
| walleman@mnat.com | 1251 Avenue of Americas, 49th Floor |
| | New York, New York 10020-1104 |
| | Telephone: (212) 508-6100 |
| | Facsimile: (800) 404-3970 |
| | Robert.Burns@bgllp.com |

*Counsel for the Debtors and Debtors In Possession*