## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Optim Energy, LLC, *et al.*, | Case No. 14-10262 (BLS) |
| Debtors.[1] | (Jointly Administered) |

## ~~FIRST~~SECOND AMENDED JOINT PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**BRACEWELL & GIULIANI LLP**

Kurt Mayr (admitted *pro hac vice*)
Mark E. Dendinger (admitted *pro hac vice*)
CityPlace I, 34th Floor
185 Asylum Street
Hartford, Connecticut 06103
Telephone: (860) 947-9000
Facsimile: (800) 404-3970

-and-

Robert G. Burns (admitted *pro hac vice*)
1251 Avenue of Americas, 49th Floor
New York, New York 10020-1104
Telephone: (212) 508-6100
Facsimile: (800) 404-3970

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

Robert J. Dehney (No. 3578)
Eric D. Schwartz (No. 3134)
Erin R. Fay (No. 5268)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel to Optim Energy, LLC, OEM 1, LLC, Optim Energy Marketing, LLC, Optim Energy Generation, LLC, Optim Energy Twin Oaks GP, LLC and Optim Energy Twin Oaks, LP*

Dated: ~~September 8,~~October 6, 2015

---

[1] The Debtors in these chapter 11 cases are: Optim Energy, LLC; OEM 1, ~~LLC; Optim Energy Cedar Bayou 4, LLC; Optim Energy Altura Cogen,~~ LLC; Optim Energy Marketing, LLC; Optim Energy Generation, LLC; Optim Energy Twin Oaks GP, LLC; and Optim Energy Twin Oaks, LP. The Debtors' main corporate and mailing address for purposes of these chapter 11 cases is: c/o Competitive Power Ventures, Inc., 8403 Colesville Road, Suite 915, Silver Spring, MD 20910.

**TABLE OF CONTENTS**

**Page**

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND OTHER REFERENCES** ................................................................................ 1
    Section 1.01. Defined Terms .......................................................................... 1
    Section 1.02. Rules of Interpretation ............................................................ 15
    Section 1.03. Computation of Time .............................................................. 15
    Section 1.04. Governing Law ........................................................................ 16
    Section 1.05. Reference to Monetary Figures ............................................... 16
    Section 1.06. Severability of Plan Provisions .............................................. 16
    Section 1.07. No Substantive Consolidation ................................................ 16
    Section 1.08. Limited Effect on Reorganizing Debtors or Reorganized Debtors, as Applicable ............................................................................. 16
    Section 1.09. Blackstone ............................................................................... 17

**ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS** ....................................... 17
    Section 2.01. DIP Facility Claims ................................................................. 17
    Section 2.02. Administrative Claims ............................................................. 17
    Section 2.03. Priority Tax Claims ................................................................. 18

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS** .................................................................................. ~~18~~19
    Section 3.01. Classification .......................................................................... ~~19~~20
    Section 3.02. Subplan OE: Treatment of Claims Against and Equity Interests in Optim Energy ....................................................................... ~~20~~21
    Section 3.03. Subplan TOLP: Treatment of Claims Against and Equity Interests in Twin Oaks LP ................................................................. ~~24~~25

**ARTICLE IV ACCEPTANCE OR REJECTION OF THE SUBPLANS** ...................... 29
    Section 4.01. Acceptance by an Impaired Class ........................................... 29
    Section 4.02. Nonconsensual Confirmation ................................................. 29
    Section 4.03. Limited Deficiency Waiver .................................................... ~~29~~30

**ARTICLE V IMPLEMENTATION OF THE PLAN** ...................................................... ~~29~~30
    Section 5.01. Compromise and Settlement .................................................. ~~29~~30
    Section 5.02. Corporate Action ..................................................................... 30
    Section 5.03. Corporate Governance ............................................................ ~~30~~31
    Section 5.04. Funding of Reserves ............................................................... 31
    Section 5.05. Liquidation Trust ..................................................................... 31
    Section 5.06. Causes of Action ..................................................................... 35

**ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND LEASES** .......... 36
    Section 6.01. Treatment of Executory Contracts and Unexpired Leases ...... 36
    Section 6.02. Effect of Confirmation Order on Rejection ............................ 36
    Section 6.03. Rejection Damages Claims and Objections to Rejection ........ ~~36~~37

## <u>TABLE OF CONTENTS (CONT'D)</u>

<u>Page</u>

Section 6.04. Preexisting Obligations Under Executory Contracts and Unexpired
Leases .................................................................................................... 36̶37

Section 6.05. Reservation of Rights .......................................................... 37

**ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS** ........................ **37**

Section 7.01. Amount of Distributions ...................................................... 37

Section 7.02. Method of Distributions ...................................................... 37̶38

Section 7.03. Delivery of Distributions ..................................................... 38

Section 7.04. No Fractional or De Minimis Distributions .......................... 38

Section 7.05. Undeliverable Distributions ................................................ 38̶39

Section 7.06. Tax Withholding From Distributions .................................... 39

Section 7.07. Allocations ......................................................................... 39̶40

Section 7.08. Time Bar to Cash Payments ................................................ 40

Section 7.09. Means of Cash Payments .................................................... 40

Section 7.10. Foreign Currency Exchange Rates ....................................... 40

Section 7.11. Setoffs ............................................................................... 40̶41

Section 7.12. Claims Paid or Payable by Third Parties .............................. 40̶41

**ARTICLE VIII PROCEDURES FOR RESOLVING DISPUTED CLAIMS** .......... **41**

Section 8.01. Prosecution of Objections to Claims .................................... 41

Section 8.02. Estimation of Claims .......................................................... 41̶42

Section 8.03. No Distributions on Disputed Claims ................................... 42

Section 8.04. Reserve of Cash for Disputed Claims ................................... 42

**ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THIS PLAN** .......................................................... **42̶43**

Section 9.01. Conditions Precedent to Confirmation ................................. 42̶43

Section 9.02. Effect of Non-Occurrence of Conditions to Confirmation or
Conditions Precedent to the Effective Date ....................... 43

Section 9.03. Conditions Precedent to the Effective Date .......................... 43

Section 9.04. Waiver of Conditions Precedent ........................................... 44

**ARTICLE X EFFECT OF CONFIRMATION OF THIS PLAN** ......................... **44**

Section 10.01. Effect of Plan on Claims Against and Equity Interests in the
Liquidating Debtors and the Merging Debtors .................... 44

Section 10.02. Certain Releases by the Liquidating Debtors and the Merging
Debtors ............................................................................. 44̶45

Section 10.03. Certain Releases by Holders of Claims and Equity Interests . 46

Section 10.04. Exculpation ....................................................................... 47

Section 10.05. Injunction ......................................................................... 47

Section 10.06. Protection Against Discriminatory Treatment ...................... 47̶48

Section 10.07. Release of Liens ................................................................ 48

Section 10.08. Cancellation of Securities and Notes Against the Liquidating
Debtors and the Merging Debtors ...................................... 48

**TABLE OF CONTENTS (CONT'D)**

**Page**

**ARTICLE XI MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN** ........................................................................................... **~~48~~49**

    Section 11.01. Modification of a Subplan ................................................. ~~48~~49

    Section 11.02. Revocation or Withdrawal of Plan ................................ 49

**ARTICLE XII RETENTION OF JURISDICTION** ................................... **~~49~~50**

**ARTICLE XIII MISCELLANEOUS PROVISIONS** ................................ **51**

    Section 13.01. Corporate Action ............................................................. 51

    Section 13.02. General Settlement of Claims ......................................... ~~51~~52

    Section 13.03. Preservation of Causes of Action Not Expressly Released ... 52

    Section 13.04. Sales and Use Tax Obligations ...................................... ~~53~~54

    Section 13.05. Environmental and Other Liabilities to Governmental Units ... ~~53~~54

    Section 13.06. Section 1146(a) Exemption ............................................. ~~53~~54

    Section 13.07. Elimination of Vacant Classes ...................................... 54

    Section 13.08. Intercompany Claims ...................................................... 54

    Section 13.09. Additional Documents .................................................... ~~54~~55

    Section 13.10. Successors and Assigns ................................................. ~~54~~55

    Section 13.11. Reservation of Rights ..................................................... ~~54~~55

    Section 13.12. Notices ............................................................................ 55

    Section 13.13. Term of Injunctions or Stay .......................................... ~~55~~56

    Section 13.14. Entire Agreement ........................................................... 56

    Section 13.15. Plan Supplement Exhibits .............................................. 56

    Section 13.16. Severability ..................................................................... ~~56~~57

    Section 13.17. Substantial Consummation ............................................ ~~56~~57

Optim Energy, LLC and Optim Energy Twin Oaks, LP (together, the "Liquidating Debtors") and OEM 1, LLC, Optim Energy Marketing, LLC, Optim Energy Generation, LLC, and Optim Energy Twin Oaks GP, LLC (collectively, the "Merging Debtors") hereby respectfully propose the following ~~first~~second amended joint plan of liquidation (including the subplans contained herein).  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan, and certain related matters.  There are other agreements and documents, which have been or will be filed with the Bankruptcy Court that are referenced in this Plan or the Disclosure Statement as exhibits, the Plan Supplement or otherwise.  All such agreements, documents, exhibits and the Plan Supplement are incorporated into and are made a part herein as if fully set forth herein.

# ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND OTHER REFERENCES

### Section 1.01.  Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in this Plan:

"Administrative Claim" means a Claim under section 503(b) of the Bankruptcy Code, and referred to in section 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) Claim(s) under section 503(b)(9) of the Bankruptcy Code, including the WC 503(b)(9) Claim, (b) any actual and necessary costs and expenses of preserving the Estate(s), (c) any actual and necessary costs and expenses of operating the Liquidating Debtors' and the Merging Debtors' businesses after the Petition Date, (d) all Professional Claims, (e) any fees or charges assessed against the Estates under section 1930 of chapter 123 of title 28 of the United States Code, (f) all post-petition taxes of the Liquidating Debtors and the Merging Debtors, (g) the DIP Facility Claims, and (h) all other Claim(s) entitled to administrative expense status pursuant to a Final Order of the Bankruptcy Court, in each case relating to the period from the Petition Date through and including the Effective Date but not beyond (but excluding any Intercompany Claims); provided, however, that the DIP Facility Claims are superpriority administrative claims under the Final DIP Order pursuant to section 364(c)(1) of the Bankruptcy Code.

"Administrative Claims Bar Date" means (a) May 27, 2015 at 5:00 p.m. ET for Administrative Claims (other than any Excluded Claims) arising on or before March 31, 2015, pursuant to the *Order (I) Fixing Deadline for Filing Requests for Allowance of Administrative Claims Arising on or Before March 31, 2015, and (II) Designating Form and Manner of Notice Thereof*, entered by the Bankruptcy Court on April 20, 2015 [Docket No. 852], or (b) the first Business Day that is thirty (30) days after the Effective Date (or such date(s) otherwise ordered by the Bankruptcy Court) for Administrative Claims arising on or after April 1, 2015.  For the avoidance of doubt, holders of the DIP Facility Claims and the WC 503(b)(9) Claim  shall not be subject to the Administrative Claims Bar Date.

"<u>Affiliate</u>" (and, with a correlative meaning "affiliated") means, with respect to any Person, any Person who would be an "affiliate" pursuant to section 101(2) of the Bankruptcy Code, as well as any direct or indirect subsidiary of such Person, and any other Person that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with such first Person.  As used in this definition, "control" (including with correlative meanings, "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of such Person (whether through ownership of securities or partnership or other ownership interests, by contract or otherwise).

"<u>Allowed</u>" means, as to a Claim or Equity Interest, or applicable portion thereof, (a) that has been listed in the Schedules (and thereafter continues to be listed in any subsequently filed amended versions of such Schedules) as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim or proof of Equity Interest has been filed, (b) where a Proof of Claim or proof of Equity Interest was timely and properly filed by the applicable deadline under the Bar Date Order as to which (i) such Claim or Equity Interest is not Disputed, or (ii) an objection has been interposed and such Claim or Equity Interest has been allowed, in whole or in part, by a Final Order and/or by the agreement of the holder of such Claim or Equity Interest, on the one hand, and the Liquidating Debtors and/or the Merging Debtors, on the other, or (c) that has been allowed under the Final DIP Order, any other Final Order, or a Subplan whether or not such Claim or Equity Interest was scheduled or is the subject of a filed Proof of Claim or proof of Equity Interest; <u>provided</u>, <u>however</u>, that any Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.  Unless otherwise specified herein or pursuant to a Final Order of the Bankruptcy Court, "Allowed" shall not include interest, fees, or charges for the period on and after the Petition Date.  When used in this Plan or Disclosure Statement with respect to the timing of distributions, "Allowed" means on the date a Claim or Equity Interest has been allowed or as soon as reasonably practicable thereafter.

"<u>Allowed Pre-Petition Secured Parties Deficiency Claim</u>" means the Allowed Pre-Petition Secured Parties Secured Claim <u>less</u> the value of the Collateral securing such Claim, determined in accordance with section 506(a) of the Bankruptcy Code.

"<u>Allowed Pre-Petition Secured Parties Secured Claim</u>" means the Secured Claim arising under the Pre-Petition Reimbursement Agreement Security Documents in the amount of $712,974,677.95, exclusive of any paydowns and distributions under the Third Amended Plan.  For the avoidance of doubt, the Allowed Pre-Petition Secured Parties Secured Claim has been deemed Allowed pursuant to the terms of the Final DIP Order.

"<u>Altura Cogen</u>" means Optim Energy Altura Cogen, LLC.

"<u>Assets</u>" means all tangible and intangible assets of every kind and nature of the Liquidating Debtors, the Merging Debtors and their respective Estates, including, without limitation, all Causes of Action (except those released by this Plan, the Final DIP Order, the Confirmation Order or other Final Order) and all proceeds thereof, existing as of the Effective Date.

"Avoidance Actions" means any and all Causes of Action that may be brought by or on behalf of the Liquidating Debtors, the Merging Debtors or their respective Estates or other authorized parties in interest under Chapter 5 of the Bankruptcy Code, including under sections 502, 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code, or similar avoidance or fraudulent transfer actions under applicable non-bankruptcy law.

"Ballot" means each of the ballots distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject a Subplan and on which such holder is to indicate, among other things, acceptance or rejection of the Subplan.

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with all amendments and modifications thereto that are subsequently made applicable to the Chapter 11 Cases.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases.

"Bankruptcy Rules" means: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code; (b) the applicable Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court; and (c) any general or specific chamber rules or procedures, or standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, and each of the foregoing together with all amendments and modifications thereto that are subsequently made and as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

"Bar Date Order" means the *Order (I) Establishing Bar Dates for Filing Proofs of Claim; (II) Approving Proof of Claim Form, Bar Date Notices, and Mailing and Publication Procedures; (III) Implementing Uniform Procedures Regarding 503(b)(9) Claims; and (IV) Providing Certain Supplemental Relief*, entered by the Bankruptcy Court on May 9, 2014 [Docket No. 275].

"Blackstone" means, collectively: (a) Black Walnut Mining, LLC; (b) Lonestar; (c) Major Oak Power, LLC; (d) The Blackstone Group L.P.; (e) Walnut Creek; and (f) the respective Related Persons of each of the foregoing.

"Blackstone General Unsecured Claims" means, collectively, the TOLP Scheduled Claim, the WC Unsecured Lignite Claim and the WC Rejection Damages Claim. For the avoidance of doubt, the Blackstone General Unsecured Claims shall be deemed Allowed Class OE 6 and TOLP 6 Claims in the amount of $3,932,376.61, and shall receive a total cash payment of $1,478,101.00 pursuant to the PSA (as approved by the PSA Approval Order) and Section 3.03(f) of this Plan.

"Business Day" means any day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

"Cascade" means Cascade Investment, L.L.C.

"Cash" means the legal tender of the U.S. or the equivalent thereof, including bank deposits and checks.

"Causes of Action" means any and all claims, actions, causes of action (including Avoidance Actions), suits, debts, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims of the Liquidating Debtors, the Merging Debtors and their respective Estates, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, that are or may be pending on the Effective Date or commenced after the Effective Date against any Entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order, unless otherwise waived or released pursuant to this Plan, the Confirmation Order, the Final DIP Order, a Final Order or by the Liquidating Debtors and/or the Merging Debtors.  For the avoidance of doubt, on the Effective Date of the Subplans any and all Avoidance Actions relating to the Liquidating Debtors and/or the Merging Debtors shall be deemed waived and released pursuant to Section 5.06(a) of this Plan.

"Cedar Bayou" means Optim Energy Cedar Bayou 4, LLC.

"Certificate" means any instrument evidencing a Claim or an Equity Interest.

"Chapter 11 Case(s)" means the chapter 11 cases of the Liquidating Debtors and the Merging Debtors pending before the Bankruptcy Court as Case Nos. 14-10262 (BLS), 14-10263 (BLS), 14-10264 (BLS), 14-10266 (BLS), 14-10268 (BLS) and 14-10269 (BLS), jointly administered for procedural purposes only under the lead Case No. 14-10262 (BLS).

"Claim" means any "claim" against the Liquidating Debtors and/or the Merging Debtors, if any, as set forth in section 101(5) of the Bankruptcy Code.

"Claims and Solicitation Agent" means Prime Clerk LLC, or such other the claims and solicitation agent retained in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court.

"Claims Objection Deadline" means the last day for filing objections to Claims, other than Administrative Claims and Professional Claims, which day shall be: (a) the later of (i) one hundred eighty (180) days after the Effective Date or (ii) one hundred eighty (180) days after the filing of a Proof of Claim for, or request for payment of, such Claim; or (b) such other date as the Bankruptcy Court may order.  The filing of a motion to extend the Claims Objection Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered on such motion.  In the event that such motion to extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the then-current Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Claims Objection Deadline.

"Claims Register" means the official register of Claims maintained by the Claims and Solicitation Agent.

"Class" means a category of holders of Claims or Equity Interests under section 1122(a) of the Bankruptcy Code.

"Collateral" means any property or interest in property of the Estate subject to a Lien, not otherwise subject to avoidance under the Bankruptcy Code, to secure the payment or performance of a Claim.

"Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

"Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code.

"Confirmation Order" means the order of the Bankruptcy Court confirming any Subplan(s) pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance acceptable to the Liquidating Debtors, the Merging Debtors and the Consultation Parties.

"Consultation Parties" means the DIP Lender and the Pre-Petition Secured Parties.

"Consummation" means the occurrence of the Effective Date.

"Convenience Class Claim" means a General Unsecured Claim included in a separate class of the type referred to in section 1122(b) of the Bankruptcy Code, either: (a) because such General Unsecured Claim is in an amount equal to or less than $10,000.00; or (b) the holder of a General Unsecured Claim in excess of $10,000.00 has agreed by an irrevocable written election to reduce the amount of its General Unsecured Claim to $10,000.00.

"Creditor" has the meaning set forth in section 101(10) of the Bankruptcy Code.

"Debtors" means, collectively, (a) the Liquidating Debtors, (b) the Merging Debtors and (c) the Reorganizing Debtors or the Reorganized Debtors, as applicable.

"DIP Agent" means Wells Fargo.

"DIP Credit Agreement" means the Senior Secured Debtor in Possession Credit, Security and Guaranty Agreement dated as of February 12, 2014, by and among the lenders from time to time party thereto, Wells Fargo and the Debtors, as may be amended, restated, supplemented or otherwise modified from time to time in accordance with the terms therein or the Final DIP Order.

"DIP Facility" means the post-petition debtor in possession loan facility pursuant to: (a) the DIP Credit Agreement and any and all documents, instruments or agreements executed or delivered in connection therewith; and (b) the DIP Orders.

"DIP Facility Claims" means any and all of the first-priority senior secured, superpriority Administrative Claims, pursuant to sections 364(c) and (d) of the Bankruptcy Code, held by the DIP Agent and the DIP Lender arising under or in connection with the DIP Facility, and includes any Claims that have been paid but not on a full, final and infeasible basis.

"DIP Lender" means Cascade and its successors in interest as lenders under the DIP Facility.

"DIP Orders" means, together, the Interim DIP Order, the Final DIP Order and any amendment, modification or supplement of such orders in form and substance acceptable to the Majority Lenders (as defined in the DIP Credit Agreement).

"Disclosure Statement" means the *Disclosure Statement for the First Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code*, dated September 8, 2015, including all exhibits and schedules thereto, as the same may be altered, amended, modified or supplemented from time to time subject to the written approval of the Consultation Parties, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

"Disclosure Statement Order" means the *Order (A) Approving the Disclosure Statement, (B) Approving the Solicitation Procedures, (C) Approving the Form of Ballots and Notices in Connection Therewith, (D) Establishing the Plan Confirmation Schedule and (E) Granting Related Relief*, entered by the Bankruptcy Court on September 8 [Docket No. 1248].

"Disputed" means any Claim, or any portion thereof, that: (a) is listed on the Schedules as unliquidated, disputed, or contingent, which dispute has not been withdrawn, resolved or overruled by a Final Order; (b) is the subject of an objection or request for estimation filed in the Bankruptcy Court and which objection or request for estimation has not been withdrawn, resolved or overruled by a Final Order of the Bankruptcy Court; or (c) is otherwise disputed by the Liquidating Debtors and/or the Merging Debtors, in accordance with applicable law; provided, however, that for purposes of determining the status (i.e., Allowed or Disputed) of a particular Claim prior to the Claims Objection Deadline, any such Claim that has not been previously allowed or disallowed by Final Order of the Bankruptcy Court or Subplan shall be deemed a Disputed Claim unless such Claim is specifically identified by the Liquidating Debtors and/or the Merging Debtors, as being an Allowed Claim.

"Distribution Agent" means Competitive Power Ventures, Inc.

"Distribution Record Date" means the record date for purposes of making distributions under this Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date designated in the Confirmation Order.

"ECJV" means ECJV Holdings, LLC.

"Effective Date" means, as to either Subplan, the first Business Day upon which all conditions precedent to the occurrence of the Effective Date set forth in Section 9.03 of this Plan have been satisfied or waived in accordance with Section 9.04 of this Plan. When used in this Plan or Disclosure Statement with respect to the timing of distributions, "Effective Date" means "on the Effective Date or as soon as reasonably practicable thereafter."

"Effective Date Class OE 1 Distributable Cash" means the Cash (which is Cash Collateral) being held by each of the Liquidating Debtors and/or the Merging Debtors on the Effective Date (including any Cash being held in any account of any Liquidating Debtor that is listed in Docket Nos. 30 or 140) less each of the following, on the Effective Date: (a) Cash in an amount to pay in full in Cash the Allowed DIP Facility Claims against the Liquidating Debtors and/or the Merging Debtors; (b) Cash in an amount to be deposited into the Liquidating Debtors Claims Reserve; and (c) Cash in an amount to be deposited into the Liquidating Debtors Wind-Down Costs Reserve.  For the avoidance of doubt, the Effective Date Class OE 1 Distributable Cash shall be paid in accordance with Section 3.02(a)(ii) of this Plan and shall not be a Liquidation Trust Asset.

"Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

"Equity Interest" means all issued, unissued, authorized, or outstanding shares of stock, membership interests, and other ownership interests of an Entity, together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

"Estate(s)" means the bankruptcy estate(s) of the Liquidating Debtors and/or the Merging Debtors created under sections 301 and 541 of the Bankruptcy Code on the Petition Date.

"Excluded Claims" means, collectively, the following Administrative Claims: (a) any Claims by the DIP Agent, L/C Issuer, DIP Lender or Pre-Petition Secured Parties under the terms of the DIP Credit Agreement and the Final DIP Order; (b) any Claims that may be asserted pursuant to section 503(b)(9) of the Bankruptcy Code required to be asserted in accordance with the Bar Date Order; (c) any Professional Claims; (d) any Administrative Claims that (i) have been previously paid by the Liquidating Debtors and/or the Merging Debtors in the ordinary course of business or otherwise, or (ii) have otherwise been satisfied; (e) any Administrative Claims previously filed with the Claims and Solicitation Agent or the Bankruptcy Court; (f) any Claims for fees payable to the clerk of the Bankruptcy Court; (g) any fees payable to the U.S. Trustee under 28 U.S.C. § 1930(a)(6) or accrued interest thereon arising under 31 U.S.C. § 3717; (h) any Claims by a Governmental Unit for a tax or penalty described in sections 503(b)(1)(B) and (C) of the Bankruptcy Code, as provided for in section 503(b)(1)(D) of the Bankruptcy Code; and (i) any Administrative Claims arising on or after April 1, 2015.

"Exculpated Claim" means a Claim arising out of or related to any act or omission in connection with or relating to: (a) the formulation, preparation, solicitation, dissemination, negotiation, or filing of the PSA, this Plan, the Plan Supplement and/or the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing; (b) the Chapter 11 Cases; (c) the pursuit of Confirmation; (d) the pursuit of Consummation; (e) the administration and implementation of this Plan; and/or (f) the distribution of property under this Plan.

"Exculpated Parties" means, collectively: (a) the Liquidating Debtors; (b) the Merging Debtors; ~~(c) the Liquidation Trustee for and on behalf of the Liquidation Trust; (d) the Liquidation Trust; and (e)~~and (c) the respective Related Persons of each of the foregoing Entities.

"Executory Contract" means a contract to which one or more of the Liquidating Debtors and/or the Merging Debtors is a party that is subject to rejection under sections 365 or 1123 of the Bankruptcy Code.

"Federal Judgment Rate" means 0.12% per annum, which is the post-judgment interest rate in effect as of the Petition Date established by Section 1961 of Title 28 of the United States Code and provided by the Federal Reserve and published every Monday for the preceding week.

"Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

"Final DIP Order" means the *Final Order (I) Authorizing Debtors to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) Utilize Cash Collateral of Pre-Petition Secured Parties Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; and (III) Granting Related Relief*, entered by the Bankruptcy Court on March 6, 2014 [Docket No. 144], and any amendment, modification or supplement of such order in form and substance acceptable to the Majority Lenders (as defined in the DIP Credit Agreement) and approved by the Bankruptcy Court.

"Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, which has been entered on the docket, and that has not been stayed, reversed, modified or amended and as to which the time to file an appeal, a motion for re-hearing, re-argument or reconsideration or a petition for writ of certiorari has expired or been waived by the Liquidating Debtors and/or the Merging Debtors, and as to which no appeal, petition for certiorari, or other proceedings for re-argument, reconsideration or re-hearing are then pending; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

"General Unsecured Claim" means a Claim that is not an Administrative Claim, DIP Facility Claim, Intercompany Claim, Other Priority Claim, Other Secured Claim, Allowed Pre-Petition Secured Parties Secured Claim, Priority Tax Claim, Professional Claim or Subordinated Claim.

"Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"Impaired" means, with respect to any Class of Claims or Equity Interests, a Claim or an Equity Interest that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

"Intercompany Claim" means any Claim(s) held by any Liquidating Debtor or Merging Debtor against any other Liquidating Debtor or Merging Debtor; provided, however, notwithstanding anything to the contrary in this Plan, (a) any claim(s) previously settled and compromised pursuant to the Third Amended Plan, and (b) any Claim(s) pursuant to any Executory Contract, Unexpired Lease or license to use any property, in each case, is expressly excluded from the definition of "Intercompany Claim" when such term is used in this Plan.

"Interim DIP Order" means the *Interim Order (I) Authorizing Debtors to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) Utilize Cash Collateral of Pre-Petition Secured Parties Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; and (III) Granting Related Relief*, entered by the Bankruptcy Court on February 12, 2014 [Docket No. 36].

"Intellectual Property" means all worldwide intellectual property and rights and other similar rights, whether registered or unregistered, and wholly or jointly owned, assigned or registered to any Liquidating Debtor or Merging Debtor, including all rights arising from or in respect of the following: all (a) inventions, whether or not patentable and whether or not reduced to practice, invention disclosures, discoveries, industrial designs, business methods, patents and patent applications (including provisional and Patent Cooperation Treaty applications), including continuations, divisionals, continuations-in-part, reexaminations and reissues, extensions, renewals and any patents that may be issued with respect to the foregoing; (b) trademarks, service marks, certification marks, collective marks, trade names, business names, assumed names, d/b/a's, fictitious names, brand names, trade dress, logos, slogans, symbols, Internet domain names and corporate names, and general intangibles of a like nature, whether registered, unregistered or arising under Law, and all applications, registrations, and renewals for any of the foregoing, together with the goodwill associated with and symbolized by each of the foregoing; (c) mask works published and unpublished works of authorship in any medium, whether copyrightable or not (including databases and other compilations of information, Software, and other similar materials and Internet website content), copyrights and moral rights therein and thereto, and registrations and applications therefor, and all issuances, renewals, extensions, restorations and reversions thereof; and (d) confidential and proprietary information, trade secrets, and knowhow, including methods, processes, business plans, schematics, concepts, Software, formulae, drawings, prototypes, models, designs, devices, technology, research and development and customer information and lists.

"L/C Issuer" means Wells Fargo, in its capacity as the issuer of the post-petition commercial, standby, or documentary letters of credit issued pursuant to the DIP Credit Agreement and the DIP Facility.

"Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"Liquidating Debtors Claims Reserve" means Cash on hand (which is Cash Collateral) in an amount approved by the Bankruptcy Court pursuant to the Confirmation Order sufficient to fund: (a) the anticipated Allowed Claims (other than DIP Facility Claims), to the extent unpaid; and (b) the anticipated Allowed amount of Disputed Claims, if any; provided, that as to (a) and (b) with respect to the amounts related to the Claims in Classes OE 4, OE 5, TOLP 4 and TOLP 5 the limited total amounts available for those Classes of Claims shall be taken into account.

"Liquidating Debtors Wind-Down Costs Reserve" means Cash on hand (which is Cash Collateral) sufficient to fund the anticipated fees, costs and expenses for winding down the Liquidating Debtors' and the Merging Debtors' Chapter 11 Cases after the Effective Date, as set forth in the Wind-Down Budget and approved by the Bankruptcy Court pursuant to the

Confirmation Order.  For the avoidance of doubt, the Liquidating Debtors Wind-Down Costs Reserve shall not be a Liquidation Trust Asset.

"Liquidation Trust" means the trust to be created on the Effective Date in accordance with the provisions of Section 5.05 of this Plan and the Liquidation Trust Agreement for the benefit of the holders of Allowed Claims.

"Liquidation Trust Agreement" means the agreement establishing and governing the Liquidation Trust, in form and substance acceptable to the Liquidating Debtors and the Consultation Parties, in substantially the form included in the Plan Supplement.

"Liquidation Trust Assets" means, collectively, the Liquidating Debtors Claims Reserve and Causes of Action of the Liquidating Debtors and/or the Merging Debtors.

"Liquidation Trustee" means the Person or Entity announced in the Plan Supplement, or such other Person or Entity established as Liquidation Trustee pursuant to the Liquidation Trust Agreement.

"Lonestar" means Lonestar Generation LLC.

"Major Oak" means Major Oak Power, LLC.

"Optim Energy" means Optim Energy, LLC.

"Other Priority Claim" means a Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code (other than an Administrative Claim or a Priority Tax Claim).

"Other Secured Claim" means a Secured Claim (other than a DIP Facility Claim or an Allowed Pre-Petition Secured Parties Secured Claim).

"Person" means any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

"Petition Date" means February 12, 2014.

"Plan" means this ~~First~~Second *Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (as it may be altered, amended, modified or supplemented from time to time subject to the written approval of the Consultation Parties, and including the Plan Supplement).

"Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to this Plan, which shall be filed in the Chapter 11 Cases no later than ten (10) days prior to the date first scheduled for the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, as may be amended or supplemented by additional documents filed in the Chapter 11 Cases prior to the Effective Date as amendments to the Plan Supplement.

"Post-Petition Interest" means simple interest per annum at the Federal Judgment Rate, based on a three hundred sixty (360)-day year for the period from the Petition Date to, but excluding, the Effective Date.

"Pre-Petition Reimbursement Agreement" means the Guaranty Reimbursement Agreement, dated as of June 1, 2007, between the Debtors and the Pre-Petition Secured Parties (as amended, restated, supplemented or otherwise modified from time to time).

"Pre-Petition Reimbursement Agreement Security Documents" means (a) the Pledge & Security Agreement dated as of June 1, 2007, by and among Optim Energy, Cascade, as collateral agent for the benefit of itself and ECJV, and each other party signatory thereto (as amended, restated, supplemented or otherwise modified), (b) the Deed of Trust, Assignment of Rents and Security Agreement dated as of June 1, 2007 by Altura Power L.P. (as amended, restated, supplemented or otherwise modified), and (c) all other mortgages, security agreements, control agreements and other instruments or documents delivered by any Debtor to create or grant to the Pre-Petition Secured Parties any lien on any property as security for liabilities under the Pre-Petition Reimbursement Agreement or to perfect, assure or preserve any lien or any rights or remedies created thereby.

"Pre-Petition Secured Parties" means, collectively, Cascade and ECJV, and additionally any successor-in-interest to either of the foregoing.

"Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"Pro Rata" means the proportion that an Allowed Claim or an Allowed Equity Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Equity Interests in that Class.

"Professional" means a Person or Entity: (a) employed in the Chapter 11 Cases in accordance with sections 327, 328 and/or 1103 of the Bankruptcy Code pursuant to a Final Order and to be compensated for services rendered from the Petition Date through and including the Effective Date, but not beyond, pursuant to sections 327 through 331 and/or 1103 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

"Professional Claim" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation and reimbursement of expenses incurred from the Petition Date through and including the Effective Date, but not beyond, under sections 327, 328, 330, 331, 503(b), 1103, or 1129(a)(4) of the Bankruptcy Code, to the extent unpaid by a Reorganizing Debtor or a Reorganized Debtor, as applicable.

"Professional Claims Bar Date" means the date that is ~~sixty~~thirty (~~60~~30) days after the Effective Date.

"Professional Claims Reserve" means Cash on hand (which is Cash Collateral) sufficient to fund the anticipated Allowed Professional Claims as estimated in good faith by the Debtors'

Professionals and approved by the Bankruptcy Court pursuant to the Confirmation Order. For the avoidance of doubt, the Professional Claims Reserve shall not be a Liquidation Trust Asset.

"Proof of Claim" means a proof of Claim filed in Chapter 11 Cases in a manner consistent with the Bar Date Order.

"PSA" means that certain plan support agreement, dated as of August 13, 2015, as approved by the Bankruptcy Court pursuant to PSA Approval Order.

"PSA Approval Order" means the *Order Authorizing Debtors' Entry Into And Performance Under A Plan Support Agreement*, entered by the Bankruptcy Court on August 18, 2015 [Docket No. 1217].

"Reinstatement" means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Equity Interest entitles the holder thereof so as to leave such Claim or Equity Interest Unimpaired or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Equity Interest to demand or receive accelerated payment of such Claim or Equity Interest after the occurrence of a default (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity of such Claim as such maturity existed before such default (to the extent such maturity has not otherwise accrued by the passage of time); (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be reinstated in order to accomplish reinstatement.

"Rejection Damages Claim" means a Claim for damages arising from the rejection of any Executory Contract or Unexpired Lease by any Liquidating Debtor or Merging Debtor pursuant to sections 365 or 1123 of the Bankruptcy Code.

"Related Persons" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and with respect to each of the foregoing, each of their respective current and former officers, directors, principals, employees, shareholders, members, managers, management companies, advisory board members, partners, limited partners, general partners, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and any Person claiming by or through any of them, including heirs, executors, estates, servants, and nominees. For the avoidance of doubt, Related Persons shall not include the Reorganizing Debtors or the Reorganized Debtors, as applicable.

"Released Parties" means, collectively, the following in its/their capacity as such: (a) the Liquidating Debtors and their Estates; (b) each of the Liquidating Debtors' current and former officers, managers and directors; (c) the Liquidation Trustee for and on behalf of the Liquidation Trust; (d) the Liquidation Trust; (e) the Merging Debtors and their Estates; (fd) each of the Merging Debtors' current and former officers, managers and directors; (ge) the Pre-Petition Secured Parties; (hf) the DIP Agent; (ig) the DIP Lender; (jh) the L/C Issuer; (ki) solely with respect to the release provided by Section 10.02 of the Plan, Blackstone; and (lj) the respective Related Persons of each of the foregoing.

"Releasing Parties" means each holder of a Claim or Equity Interest that (i) affirmatively votes to accept the applicable Subplan and who does not mark its Ballot indicating its desire to opt out of the releases provided in Section 10.03 of this Plan, (ii) is Unimpaired pursuant to the applicable Subplan and therefore is deemed to accept the applicable Subplan pursuant to section 1126(f) of the Bankruptcy Code, or (iii) receives a Ballot but rejects this Plan or abstains from voting on the applicable Subplan and does not mark its Ballot indicating its desire to opt out of the releases provided in Section 10.03 of this Plan; provided, however, that a holder of a Convenience Class Claim, General Unsecured Claim and/or Blackstone General Unsecured Claim who votes to reject the applicable Subplan and does not mark its Ballot(s) indicating its desire to opt out of the releases provided in Section 10.03 of this Plan shall only be a "Releasing Party" in the event that the Class votes to accept the applicable Subplan.  For the avoidance of doubt, "Releasing Party" shall not include holders of Claims or Equity Interests that are deemed to reject the applicable Subplan pursuant to section 1126(g) of the Bankruptcy Code.

"Reorganizing Debtors" means, together, Altura Cogen and Cedar Bayou.

"Reorganized Debtors" means the Reorganizing Debtors, on and after the effective date of the Third Amended Plan.

"Reserves" means, collectively: (a) the Liquidating Debtors Claims Reserve; (b) the Liquidating Debtors Wind-Down Costs Reserve; and (c) the Professional Claims Reserve.

"Schedules" means, collectively, the schedules of assets and liabilities, the list of holders of Equity Interests and the statements of financial affairs and such other documents filed by the Liquidating Debtors and/or the Merging Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments pursuant to Bankruptcy Rule 1009 and modifications thereto through the Confirmation Date.

"Secured Claim" means a Claim: (a) secured by a Lien on property of an Estate to the extent of the value of such property; or (b) subject to a valid right of setoff to the extent of the amount subject to valid setoff pursuant to section 553 of the Bankruptcy Code.

"Software" means any and all (a) computer programs, including any and all software implementations of algorithms, models and methodologies, libraries, APIs, whether in source code or object code, (b) databases and compilations, including any and all data and collections of data, whether machine readable or otherwise, (c) descriptions, schematics, flow charts and other work product used to design, plan, organize and develop any of the foregoing and (d) all

documentation, user manuals and training materials, relating to any of the foregoing, owned or used by any Liquidating Debtor or Merging Debtor in the conduct of its business.

"Subordinated Claim" means a Claim arising from rescission of a purchase or sale of a security of a Debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such Claim, or any Claim that has been otherwise subordinated by Final Order of the Bankruptcy Court.

"Subplan" means this Plan for each Liquidating Debtor or Merging Debtor.

"TOLP Scheduled Claim" means unsecured claim in the amount of $10,642.43 scheduled against Twin Oaks LP, which was transferred to Lonestar pursuant to that certain *Transfer of Claim Other Than for Security* [Docket No. 930].

"Third Amended Plan" means the *Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 937] (as may be subsequently modified, subsequently amended, and/or subsequently supplemented from time to time), as confirmed and consummated.

"Twin Oaks LP" means Optim Energy Twin Oaks, LP.

"U.S." means the United States of America.

"U.S. Trustee" means the United States Trustee for the District of Delaware.

"Undeliverable Distribution" means any distribution under this Plan on account of an Allowed Claim to a holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Liquidation Trustee or the Distribution Agent of an intent to accept a particular distribution; (c) responded to the Liquidation Trustee or the Distribution Agent's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

"Unexpired Lease" means an unexpired lease to which one or more of the Liquidating Debtors or the Merging Debtors is a party that is subject to rejection under sections 365 or 1123 of the Bankruptcy Code.

"Unimpaired" means a Class of Claims or Equity Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

"Voting Deadline" means October 7, 2015 at 4:00 p.m. ET, or such other date approved by the Bankruptcy Court.

"Walnut Creek" means Walnut Creek Mining Company.

"WC 503(b)(9) Claim" means the portion of the proofs of claim (claim No. 52 and 63) filed by Walnut Creek against each of Optim Energy and Twin Oaks LP in the amount of $3,121,898.89, which is a request for payment of an administrative expense pursuant to section

503(b)(9) of the Bankruptcy Code.  For the avoidance of doubt, the WC 503(b)(9) Claim shall be deemed an Allowed Administrative Claim in the amount of $3,121,899.00, and shall receive a total Cash payment of $3,121,899.00 pursuant to the PSA (as approved by the PSA Approval Order) and Section 2.02 of this Plan.

"WC Rejection Damages Claim" means the filed proofs of claim (claim No. 113, 114 and 115) against each of Optim Energy and Twin Oaks LP asserting general unsecured claims in the amount of $190,090,392.00.

"WC Unsecured Lignite Claim" means the portion of the proofs of claim (claim No. 52 and 63) filed by Walnut Creek against each of Optim Energy and Twin Oaks LP asserting general unsecured claims in the amount of $3,921,734.18.

"Wells Fargo" means Wells Fargo Bank, National Association.

"Wind-Down Budget" means the budget mutually agreed to by the Liquidating Debtors, the Merging Debtors and Cascade, in substantially the form included in the Plan Supplement, and approved by the Bankruptcy Court pursuant to the Confirmation Order.

## Section 1.02.  Rules of Interpretation

For purposes herein, the following rules of interpretation apply: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections herein or hereto; (e) the words "herein" and "hereto" refer to this Plan in its entirety rather than to any particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of, or to affect, the interpretation herein; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

## Section 1.03.  Computation of Time

Bankruptcy Rule 9006(a) applies in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur, or be required to be done, shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### Section 1.04.   Governing Law

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflict-of-laws principles; <u>provided</u> that the corporate or limited liability company governance matters shall be governed by the laws of the state of incorporation or formation of the applicable Entity.

### Section 1.05.   Reference to Monetary Figures

All references in this Plan to monetary figures refer to currency of the U.S., unless otherwise expressly provided.

### Section 1.06.   Severability of Plan Provisions

Although styled as a "joint" plan, this Plan consists of separate Subplans (one for Optim Energy and, by virtue of the merger, for the Merging Debtors, and one for Twin Oaks LP), and each Liquidating Debtor and Merging Debtor is a proponent herein within the meaning of section 1129 of the Bankruptcy Code in its respective Chapter 11 Case.  If a Subplan is not confirmed, then the Liquidating Debtors and the Merging Debtors reserve the right, subject to the written approval of the Consultation Parties, to either (a) request that the other Subplans be confirmed or (b) withdraw any of the Subplans.  The Liquidating Debtors' and the Merging Debtors' inability to confirm, or election to withdraw, any of the Subplan(s) shall not impair the Confirmation of the other Subplan(s).

### Section 1.07.   No Substantive Consolidation

The Estates of the Liquidating Debtors and/or the Merging Debtors have not been substantively consolidated.  Nothing in this Plan shall constitute or be deemed to constitute an admission that any Liquidating Debtor or Merging Debtor is subject to or liable for any Claim against the other Liquidating Debtor or Merging Debtor.

### Section 1.08.   Limited Effect on Reorganizing Debtors or Reorganized Debtors, as Applicable

With the exception of the claim(s) (as defined in section 101(5) of the Bankruptcy Code) in the PSA being settled pursuant to Section 13.02 of this Plan, this Plan only relates to Claim(s) against the Liquidating Debtors and/or the Merging Debtors.  If a holder of Claim(s) against the Liquidating Debtor(s) and/or the Merging Debtor(s) also holds claim(s) (as set forth in section 101(5) of the Bankruptcy Code) against the Reorganizing Debtors or the Reorganized Debtors, as applicable, such claim(s) against the Reorganizing Debtors or the Reorganized Debtors, as applicable, are not being treated in this Plan and shall remain intact as claim(s) against the Reorganizing Debtors or the Reorganized Debtors, as applicable, and subject to the terms of the Third Amended Plan.

**Section 1.09.  Blackstone**

Pursuant to the PSA (as approved by the PSA Approval Order), the Plan and any proposed order approving the Plan submitted to the Court shall be in form and substance acceptable to Blackstone solely with respect to the provisions and terms that directly affect Blackstone.  For the avoidance of doubt, any alteration, modification, amendment or supplement to the Plan (including by virtue of any provision in the order approving the Plan or any other order) which directly affects Blackstone shall not be made without Blackstone's written consent.

For the avoidance of doubt, the PSA (as approved by the PSA Approval Order) is incorporated into and is a part of this Plan and remains in full effect and binding on all parties to the PSA through and after the Effective Date.  Except for the effectiveness of the releases in the PSA being conditioned upon this Plan becoming effective, nothing in this Plan shall affect the releases provided to Blackstone under the PSA.

# ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, DIP Facility Claims, Administrative Claims (including Professional Claims) and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in ARTICLE III of this Plan.  For either Subplan, the following designation and treatment of unclassified Claims applies:

**Section 2.01.  DIP Facility Claims**

Consistent with the Final DIP Order, all DIP Facility Claims are and shall be deemed Allowed Claims against each Liquidating Debtor.  On the Effective Date the Subplan for each Liquidating Debtor, the holders of the Allowed DIP Facility Claims shall receive, in full and final satisfaction of such Claims, an amount of Cash equal to the amount of such Claims (including, without limitation, all outstanding principal and accrued but unpaid interest, costs, fees and expenses owing as of the Effective Date, or any other amounts due and owing under the DIP Facility) to the extent not previously paid during the Chapter 11 Cases.

**Section 2.02.  Administrative Claims**

To the extent not previously paid during the Chapter 11 Cases, except as otherwise provided herein or unless the holder agrees to a different treatment, each holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, and release and discharge of such Claim, an amount of Cash equal to the amount of such Allowed Administrative Claim on the later of: (a) the Effective Date; or (b) the date such Administrative Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by a Liquidating Debtor in the ordinary course of business during the Chapter 11 Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto (x) on or prior to the Effective Date, by the Liquidating Debtors from their operating accounts, and (y)

after the Effective Date, by the Liquidation Trustee or the Distribution Agent, as applicable, in the ordinary course of business solely from the Liquidating Debtors Claims Reserve, subject to the provisions of this Plan; and provided, further, however, that the WC 503(b)(9) Claim is deemed an Allowed Administrative Claim and shall be paid in full in Cash on the Effective Date.

      (a)      Administrative Claims Bar Date

Holders of Administrative Claims (other than Professional Claims and the WC 503(b)(9) Claim) shall file any request for allowance and payment of Administrative Claims by the Administrative Claims Bar Date or otherwise be forever barred, estopped, and enjoined from asserting such Claims against the Liquidating Debtors, their respective Estates and property, the Liquidation Trust, the Liquidation Trustee or the Distribution Agent, or otherwise, and such Administrative Claim shall be deemed discharged and released as of the Effective Date.

      (b)      Professional Claims Bar Date

Holders of Professional Claims shall file any request for allowance and payment of such Professional Claims by the Professional Claims Bar Date or otherwise be forever barred, estopped, and enjoined from asserting such Claims against the Liquidating Debtors, their respective Estates and property, the Liquidation Trust, the Liquidation Trustee or the Distribution Agent, or otherwise, and such Professional Claims shall be deemed discharged released as of the Effective Date. For the avoidance of doubt, Allowed Professional Claims shall be paid from the Professional Claims Reserve after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and other Bankruptcy Court orders.

      (c)      Post-Effective Date Professional Fees

From and after the Effective Date, the Liquidation Trustee shall pay in Cash from the Liquidating Debtors Wind-Down Costs Reserve the reasonable legal fees and expenses incurred by the Liquidating Debtors', the Merging Debtors' or the Liquidation Trustee's professionals, as applicable, incurred in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court. For the avoidance of doubt, following the Effective Date any requirement that a professional comply with sections 327 through 331 of the Bankruptcy Code in seeking compensation for services rendered after such date shall terminate.

      (d)      U.S. Trustee Fees

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the applicable Liquidating Debtor, Merging Debtor or the Liquidation Trust, as applicable, for each quarter (including any fraction therein) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

**Section 2.03.  Priority Tax Claims**

To the extent not previously paid during the Chapter 11 Cases, unless the holder agrees to a different treatment each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, and release and discharge of such Claim, an amount of Cash equal to the

amount of such Allowed Priority Tax Claim on the later of: (a) the Effective Date; or (b) the date such Priority Tax Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court. For the avoidance of doubt, Allowed Priority Tax Claims shall be paid in Cash solely from the Liquidating Debtors Claims Reserve, subject to the provisions of this Plan.

The Texas Comptroller of Public Accounts shall have an Allowed Priority Tax Claim pursuant to 11 U.S.C. § 507(a)(8)(C) in the amount of $108,000.00, which shall be paid in full in one lump sum payment on or no later than ten (10) calendar days after the Effective Date of this Plan, and which shall constitute a general settlement and compromise of all Claims the Texas Comptroller of Public Accounts has asserted, or may assert, against the Liquidating Debtors and the Merging Debtors pursuant to Section 13.02 of this Plan, including but not limited to proofs of claim numbers 106, 107, 120 and 122 filed in the Chapter 11 Cases. Notwithstanding any provision to the contrary in this Plan, nothing shall: (a) affect the ability of the Texas Comptroller of Public Accounts to pursue any non-Debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal or state tax liabilities owed by the Debtors or the Debtors' Estates; or (b) from and after the Effective Date, permit or allow the Liquidation Trustee, for and on behalf of the Liquidation Trust, to violate any state or federal law relating to federal or state tax liabilities or duties.

# ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

For the avoidance of doubt, unless otherwise specified in this ARTICLE III, any holder of Claim(s) that is entitled to receive Cash on account of such Allowed Claim(s) under the Subplan(s) for the applicable Liquidating Debtor(s) shall be paid in Cash solely from the Liquidating Debtors Claims Reserve, subject to the provisions of this Plan, without recourse to the Liquidating Debtors, their respective Estates and property, the Liquidation Trust, the Liquidation Trustee or the Distribution Agent, or any of their property or Assets. Notwithstanding any other provision of this Plan, for obligations on which the Liquidating Debtors, the Reorganizing Debtors or the Reorganized Debtors, as applicable, are jointly and severally liable, a distribution on account of any Allowed Claim arising from such obligations under a Liquidating Debtor's confirmed Subplan shall not operate as a discharge, release and/or satisfaction of such Allowed Claim asserted against any other Liquidating Debtor for which a Subplan or Subplans are not confirmed (or do not become effective) unless and until such time that such Allowed Claim is paid in full. In the event no holder of a Claim with respect to a specific Class for a particular Liquidating Debtor timely submits a Ballot that complies with the Disclosure Statement Order indicating acceptance or rejection of this Plan, such Class will be deemed to have accepted this Plan (including for purposes of satisfying section 1129(a)(10) of the Bankruptcy Code). IF A CLASS(ES) OF GENERAL UNSECURED CLAIMS, CONVENIENCE CLASS CLAIMS OR BLACKSTONE GENERAL UNSECURED CLAIMS VOTES TO REJECT THE PLAN, THE HOLDERS OF CLAIMS IN SUCH CLASS(ES) WILL NOT RECEIVE A DISTRIBUTION UNDER THIS PLAN. FURTHER, ANY HOLDER OF A CLAIM(S) AGAINST A LIQUIDATING DEBTOR(S) WHO REJECTS THIS PLAN AND OPTS OUT OF THE RELEASES DESCRIBED IN SECTION 10.03 OF THIS PLAN WILL

NOT RECEIVE ANY DISTRIBUTION(S) UNDER THE SUBPLAN(S) FOR THE APPLICABLE LIQUIDATING DEBTOR(S).

### Section 3.01.  Classification

This Plan constitutes a separate Subplan with respect to each Liquidating Debtor.  The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation and distribution pursuant to either Subplan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

Holders of Allowed Other Secured Claims shall receive Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any) on account of such Allowed Claims.  Holders of Allowed Other Priority Claims shall receive Post-Petition Interest on account of such Allowed Claims.

Claims against (other than those listed in ARTICLE II of this Plan, which are not required to be classified pursuant to section 1123(a)(1) of the Bankruptcy Code) and Equity Interests are classified as follows:

(a)     Subplan OE: Claims Against and Equity Interests in Optim Energy

| Class | Claim or Equity Interest | Status | Voting Rights |
|-------|--------------------------|--------|---------------|
| OE 1 | Allowed Pre-Petition Secured Parties Secured Claim | Impaired | Entitled to Vote |
| OE 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| OE 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| OE 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| OE 5 | Convenience Class Claims | Impaired | Entitled to Vote |
| OE 6 | Blackstone General Unsecured Claims | Impaired | Entitled to Vote |
| OE 7 | Subordinated Claims | Impaired | Deemed to Reject |
| OE 8 | Equity Interests | Impaired | Deemed to Reject |

(b)     Subplan TOLP: Claims Against and Equity Interests in Twin Oaks LP

| Class | Claim or Equity Interest | Status | Voting Rights |
|-------|--------------------------|--------|---------------|
| TOLP 1 | Allowed Pre-Petition Secured Parties Secured Claim | Impaired | Entitled to Vote |
| TOLP 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| TOLP 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| TOLP 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| TOLP 5 | Convenience Class Claims | Impaired | Entitled to Vote |
| TOLP 6 | Blackstone General Unsecured Claims | Impaired | Entitled to Vote |

| Class | Claim or Equity Interest | Status | Voting Rights |
|-------|--------------------------|--------|---------------|
| TOLP 7 | Subordinated Claims | Impaired | Deemed to Reject |
| TOLP 8 | Equity Interests | Impaired | Deemed to Reject |

## Section 3.02.  Subplan OE: Treatment of Claims Against and Equity Interests in Optim Energy

(a)    Class OE 1—Allowed Pre-Petition Secured Parties Secured Claim

(i)    *Allowance*: The Class OE 1 Allowed Pre-Petition Secured Parties Secured Claim against Optim Energy have been deemed Allowed against Optim Energy pursuant to the terms of the Final DIP Order.

(ii)    *Treatment*: The holders of Class OE 1 Allowed Pre-Petition Secured Parties Secured Claim against Optim Energy shall receive, in exchange for their Class OE 1 Allowed Pre-Petition Secured Parties Secured Claim against Optim Energy: (v) the Effective Date Class OE 1 Distributable Cash, on the Effective Date; (w) the assignment of the Intellectual Property at the direction of Cascade; (x) the residual Cash in the Liquidating Debtors Wind-Down Costs Reserve, if any, following payment of all amounts budgeted for thereunder; (y) the residual Cash in the Professional Claims Reserve, if any, following payment of all amounts budgeted for thereunder; and (z) the residual Liquidation Trust Assets, if any, following dissolution of the Liquidation Trust in accordance with Section 5.05(j) of this Plan.

(iii)    *Voting*: Class OE 1 is Impaired.  The holders of the Class OE 1 Allowed Pre-Petition Secured Parties Secured Claim against Optim Energy are entitled to vote to accept or reject the Subplan for Optim Energy.

(b)    Class OE 2—Other Secured Claims

(i)    *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class OE 2 Allowed Other Secured Claim against Optim Energy shall receive, in Optim Energy's sole discretion and in full and final satisfaction, release, and settlement and discharge of, and in exchange for, such holder's Allowed Other Secured Claim, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court:

a.    Cash equal to the amount of such Allowed Other Secured Claim plus Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any), payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement;

b. Reinstatement of the legal, equitable and contractual rights of the holder of such Allowed Other Secured Claim, subject to the provisions of the Subplan for Optim Energy;

c. the Collateral securing such Allowed Other Secured Claim <u>plus</u> Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any); or

d. such other treatment as necessary to satisfy the requirements of section 1124(2) of the Bankruptcy Code for such Allowed Other Secured Claim to be rendered Unimpaired.

(ii) *Voting*: Class OE 2 is Unimpaired. The holders of Class OE 2 Allowed Other Secured Claims against Optim Energy are conclusively deemed to accept the Subplan for Optim Energy pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(c) <u>Class OE 3—Other Priority Claims</u>

(i) *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class OE 3 Allowed Other Priority Claim against Optim Energy shall receive, in full and final satisfaction, release, and settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to the amount of such Allowed Claim, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.

(ii) *Voting*: Class OE 3 is Unimpaired. The holders of Class OE 3 Allowed Other Priority Claims against Optim Energy are conclusively deemed to accept the Subplan for Optim Energy pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(d) <u>Class OE 4—General Unsecured Claims</u>

(i) *Treatment*: In the event that Class OE 4 votes to accept the Subplan for Optim Energy, unless the holder agrees to a different treatment each holder of a Class OE 4 Allowed General Unsecured Claim against Optim Energy (other than a holder of a Class OE 4 Allowed Pre-Petition Secured Parties Deficiency Claim against Optim Energy) shall receive, in full and final satisfaction, release, and settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to its Pro Rata share of $10,000.00 (not to exceed such holder's possible percentage recovery under Class OE 5), payable solely from the Liquidating Debtors Claims Reserve subject to the

22

provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.  For the avoidance of doubt, in consideration for the Class OE 1—Allowed Pre-Petition Secured Parties Secured Claim treatment in Section 3.02(a)(ii) of this Plan, and in the event that Class OE 4 votes to accept the Subplan for Optim Energy, the holders of Class OE 4 Allowed Pre-Petition Secured Parties Deficiency Claim against Optim Energy have agreed to waive and withdraw such Claims on the Effective Date.

In the event that Class OE 4 does not vote to accept the Subplan for Optim Energy, on the Effective Date each holder of a Class OE 4 Allowed General Unsecured Claim against Optim Energy: (x) shall be enjoined from pursuing any Class OE 4 Allowed General Unsecured Claim against Optim Energy; and (y) shall not receive or retain any distribution on account of its Class OE 4 Allowed General Unsecured Claim under the Subplan for Optim Energy.

(ii)     *Voting*: Class OE 4 is Impaired.  The holders of Class OE 4 Allowed General Unsecured Claims against Optim Energy are entitled to vote to accept or reject the Subplan for Optim Energy.

(e)     Class OE 5—Convenience Class Claims

(i)     *Treatment*: In the event that Class OE 5 votes to accept the Subplan for Optim Energy, unless the holder agrees to a different treatment each holder of a Class OE 5 Allowed Convenience Class Claim against Optim Energy shall receive, in full and final satisfaction, release, and settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to its Pro Rata share of $10,000.00, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.  For the avoidance of doubt, in consideration for the Class OE 1—Allowed Pre-Petition Secured Parties Secured Claim treatment in Section 3.02(a)(ii) of this Plan, and in the event that Class O5 4 votes to accept the Subplan for Optim Energy, the holders of Class OE 4 Allowed Pre-Petition Secured Parties Deficiency Claim against Optim Energy have agreed to waive and withdraw such Claims on the Effective Date.

In the event that Class OE 5 does not vote to accept the Subplan for Optim Energy, on the Effective Date each holder of a Class OE 5 Allowed Convenience Class Claim against Optim Energy: (x) shall be enjoined from pursuing any Class OE 5 Allowed Convenience Class Claim against Optim Energy; and (y) shall not receive or retain any distribution on account of its

23

Class OE 5 Allowed Convenience Class Claim under the Subplan for Optim Energy.

(ii) *Voting*: Class OE 5 is Impaired.  The holders of Class OE 5 Allowed Convenience Class Claims against Optim Energy are entitled to vote to accept or reject the Subplan for Optim Energy.

(f)    Class OE 6—Blackstone General Unsecured Claims

(i) *Allowance*: The Blackstone General Unsecured Claims have been deemed Allowed Class OE 6 Claims in the amount of $3,932,376.61 pursuant to the PSA (as approved by the PSA Approval Order) and this Section 3.03(f).

(ii) *Treatment*: In the event that Class OE 6 votes to accept the Subplan for Optim Energy, unless the holder agrees to a different treatment each holder of a Class OE 6 Allowed Blackstone General Unsecured Claim against Optim Energy shall receive on the Effective Date, in full and final satisfaction, release, and settlement ~~and discharge~~ of, and in exchange for, its Allowed Claim, the Class TOLP 6—Allowed Blackstone General Unsecured Claims treatment in Section 3.03(f)(ii) of this Plan.  For the avoidance of doubt, (a) Blackstone will receive only one Cash distribution under Section 3.03(f)(ii) of this Plan in full and final satisfaction, release, and settlement ~~and discharge~~ of, and in exchange for, its Allowed Blackstone General Unsecured Claims against the Liquidating Debtors; and (b) in consideration for the Allowed Claim Class OE 1—Allowed Pre-Petition Secured Parties Secured Claim treatment in Section 3.02(a)(ii) of this Plan, and in the event that Class OE 6 votes to accept the Subplan for Optim Energy, the holders of Class OE 4 Allowed Pre-Petition Secured Parties Deficiency Claim against Optim Energy have agreed to waive and withdraw such Claims on the Effective Date.

In the event that Class OE 6 does not vote to accept the Subplan for Optim Energy, on the Effective Date each holder of a Class OE 6 Allowed Blackstone General Unsecured Claim against Optim Energy: (x) shall be enjoined from pursuing any Class OE 6 Allowed Blackstone General Unsecured Claim against Optim Energy; and (y) shall not receive or retain any distribution on account of its Class OE 6 Allowed Blackstone General Unsecured Claim under the Subplan for Optim Energy.

(iii) *Voting*: Class OE 6 is Impaired.  The holders of Class OE 6 Allowed Blackstone General Unsecured Claims against Optim Energy are entitled to vote to accept or reject the Subplan for Optim Energy.

(g)    Class OE 7—Subordinated Claims

(i) *Allowance*: A Subordinated Claim (if any) against Optim Energy may only become Allowed by Final Order of the Bankruptcy Court.

(ii)    *Treatment*: On the Effective Date, each holder of a Class OE 7 Allowed Subordinated Claim against Optim Energy: (x) shall be enjoined from pursuing any Class OE 7 Subordinated Claim against Optim Energy; and (y) shall not receive or retain any distribution on account of its Class OE 7 Subordinated Claim under the Subplan for Optim Energy.

(iii)    *Voting*: Class OE 7 is Impaired. The holders of Class OE 7 Allowed Subordinated Claims against Optim Energy are conclusively deemed to reject the Subplan for Optim Energy pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(h)    <u>Class OE 8—Equity Interests</u>

(i)    *Treatment*: On the Effective Date, the Class OE 8 Equity Interests in Optim Energy shall be cancelled, and extinguished and discharged and each holder thereof shall not receive or retain any distribution on account of its Class OE 8 Equity Interests under the Subplan for Optim Energy.

(ii)    *Voting*: Class OE 8 is Impaired. The holders of the Equity Interests in Optim Energy are conclusively deemed to reject the Subplan for Optim Energy pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

**Section 3.03.  Subplan TOLP: Treatment of Claims Against and Equity Interests in Twin Oaks LP**

(a)    <u>Class TOLP 1—Allowed Pre-Petition Secured Parties Secured Claim</u>

(i)    *Allowance*: The Class TOLP 1 Allowed Pre-Petition Secured Parties Secured Claim against Twin Oaks LP have been deemed Allowed against Twin Oaks LP pursuant to the terms of the Final DIP Order.

(ii)    *Treatment*: On the Effective Date, the holders of Class TOLP 1 Allowed Pre-Petition Secured Parties Secured Claim against Twin Oaks LP shall release, and settle and discharge their Class TOLP 1—Allowed Pre-Petition Secured Parties Secured Claim against Twin Oaks LP in consideration for the Class OE 1—Allowed Pre-Petition Secured Parties Secured Claim treatment in Section 3.02(a)(ii) of this Plan.

(iii)    *Voting*: Class TOLP 1 is Impaired. The holders of the Class TOLP 1 Allowed Pre-Petition Secured Parties Secured Claim against Twin Oaks LP are entitled to vote to accept or reject the Subplan for Twin Oaks LP.

(b)    <u>Class TOLP 2—Other Secured Claims</u>

(i)    *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class TOLP 2 Allowed Other Secured Claim against Twin Oaks LP shall

receive, in Twin Oaks LP's sole discretion and in full and final satisfaction, release, and settlement and discharge of, and in exchange for, such holder's Allowed Other Secured Claim, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court:

a.  Cash equal to the amount of such Allowed Other Secured Claim plus Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any), payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement;

b.  Reinstatement of the legal, equitable and contractual rights of the holder of such Allowed Other Secured Claim, subject to the provisions of the Subplan for Twin Oaks LP;

c.  the Collateral securing such Allowed Other Secured Claim plus Post-Petition Interest required to be paid under section 506(b) of the Bankruptcy Code (if any); or

d.  such other treatment as necessary to satisfy the requirements of section 1124(2) of the Bankruptcy Code for such Allowed Other Secured Claim to be rendered Unimpaired.

(ii)    *Voting*: Class TOLP 2 is Unimpaired.  The holders of Class TOLP 2 Allowed Other Secured Claims against Twin Oaks LP are conclusively deemed to accept the Subplan for Twin Oaks LP pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(c)    Class TOLP 3—Other Priority Claims

(i)    *Treatment*: Unless the holder agrees to a different treatment, each holder of a Class TOLP 3 Allowed Other Priority Claim against Twin Oaks LP shall receive, in full and final satisfaction, release, and settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to the amount of such Allowed Claim, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.

(ii)    *Voting*: Class TOLP 3 is Unimpaired.  The holders of Class TOLP 3 Allowed Other Priority Claims against Twin Oaks LP are conclusively deemed to accept the Subplan for Twin Oaks LP pursuant to section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

26

(d)     Class TOLP 4—General Unsecured Claims

    (i)     *Treatment*: In the event that Class TOLP 4 votes to accept the Subplan for Twin Oaks LP, unless the holder agrees to a different treatment each holder of a Class TOLP 4 Allowed General Unsecured Claim against Twin Oaks LP (other than a holder of a Class TOLP 4 Allowed Pre-Petition Secured Parties Deficiency Claim against Twin Oaks LP) shall receive, in full and final satisfaction, release, and settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to its Pro Rata share of $80,000.00 (not to exceed such holder's possible percentage recovery under Class TOLP 5), payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.   For the avoidance of doubt, in consideration for the Class OE 1—Allowed Pre-Petition Secured Parties Secured Claim treatment in Section 3.02(a)(ii) of this Plan, and in the event that Class TOLP 4 votes to accept the Subplan for Twin Oaks LP, the holders of Class TOLP 4 Allowed Pre-Petition Secured Parties Deficiency Claim against Twin Oaks LP have agreed to waive and withdraw such Claims on the Effective Date.

    In the event that Class TOLP 4 does not vote to accept the Subplan for Twin Oaks LP, on the Effective Date each holder of a Class TOLP 4 Allowed General Unsecured Claim against Twin Oaks LP: (x) shall be enjoined from pursuing any Class TOLP 4 Allowed General Unsecured Claim against Twin Oaks LP; and (y) shall not receive or retain any distribution on account of its Class TOLP 4 Allowed General Unsecured Claim under the Subplan for Twin Oaks LP.

    (ii)    *Voting*: Class TOLP 4 is Impaired.  The holders of Class TOLP 4 Allowed General Unsecured Claims against Twin Oaks LP are entitled to vote to accept or reject the Subplan for Twin Oaks LP.

(e)     Class TOLP 5—Convenience Class Claims

    (i)     *Treatment*: In the event that Class TOLP 5 votes to accept the Subplan for Twin Oaks LP, unless the holder agrees to a different treatment each holder of a Class TOLP 5 Allowed Convenience Class Claim against Twin Oaks LP shall receive, in full and final satisfaction, release, and settlement and discharge of, and in exchange for, its Allowed Claim, Cash equal to its Pro Rata share of $80,000.00, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan and the Liquidation Trust Agreement, on the later of: (x) the Effective Date; or (y) the date such Claim becomes due and Allowed or as otherwise ordered by the Bankruptcy Court.  For the avoidance of doubt, in consideration for the Class OE 1—Allowed Pre-Petition Secured Parties Secured Claim treatment in Section 3.02(a)(ii) of this Plan, and in the event that Class

27

TOLP 5 votes to accept the Subplan for Twin Oaks LP, the holders of Class TOLP 4 Allowed Pre-Petition Secured Parties Deficiency Claim against Twin Oaks LP have agreed to waive and withdraw such Claims on the Effective Date.

In the event that Class TOLP 5 does not vote to accept the Subplan for Twin Oaks LP, on the Effective Date each holder of a Class TOLP 5 Allowed Convenience Class Claim against Twin Oaks LP: (x) shall be enjoined from pursuing any Class TOLP 5 Allowed Convenience Class Claim against Twin Oaks LP; and (y) shall not receive or retain any distribution on account of its Class TOLP 5 Allowed Convenience Class Claim under the Subplan for Twin Oaks LP.

    (ii)    *Voting*: Class TOLP 5 is Impaired.  The holders of Class TOLP 5 Allowed Convenience Class Claims against Twin Oaks LP are entitled to vote to accept or reject the Subplan for Twin Oaks LP.

(f)    Class TOLP 6—Blackstone General Unsecured Claims

    (i)    *Allowance*: The Blackstone General Unsecured Claims have been deemed Allowed Class TOLP 6 Claims in the amount of $3,932,376.61 pursuant to the PSA (as approved by the PSA Approval Order) and this Section 3.03(f).

    (ii)    *Treatment*: In the event that Class TOLP 6 votes to accept the Subplan for Twin Oaks LP, each holder of a Class TOLP 6 Allowed Blackstone General Unsecured Claim against Twin Oaks LP shall receive, in full and final satisfaction, release, and settlement ~~and discharge~~ of, and in exchange for, its Allowed Claim, $1,478,101.00, payable solely from the Liquidating Debtors Claims Reserve subject to the provisions of this Plan ~~and the Liquidation Trust Agreement~~, on the Effective Date.  For the avoidance of doubt, in consideration for the Class OE 1—Allowed Pre-Petition Secured Parties Secured Claim treatment in Section 3.02(a)(ii) of this Plan, and in the event that Class TOLP 6 votes to accept the Subplan for Twin Oaks LP, the holders of Class TOLP 4 Allowed Pre-Petition Secured Parties Deficiency Claim against Twin Oaks LP have agreed to waive and withdraw such Claims on the Effective Date.

In the event that Class TOLP 6 does not vote to accept the Subplan for Twin Oaks LP, on the Effective Date each holder of a Class TOLP 6 Allowed Blackstone General Unsecured Claim against Twin Oaks LP: (x) shall be enjoined from pursuing any Class TOLP 6 Allowed Blackstone General Unsecured Claim against Twin Oaks LP; and (y) shall not receive or retain any distribution on account of its Class TOLP 6 Allowed Blackstone General Unsecured Claim under the Subplan for Twin Oaks LP.

28

      (iii)    *Voting*: Class TOLP 6 is Impaired. The holders of Class TOLP 6 Allowed Blackstone General Unsecured Claims against Twin Oaks LP are entitled to vote to accept or reject the Subplan for Twin Oaks LP.

(g)    <u>Class TOLP 7—Subordinated Claims</u>

      (i)    *Allowance*: A Subordinated Claim (if any) against Twin Oaks LP may only become Allowed by Final Order of the Bankruptcy Court.

      (ii)    *Treatment*: On the Effective Date, each holder of a Class TOLP 7 Allowed Subordinated Claim against Twin Oaks LP: (x) shall be enjoined from pursuing any Class TOLP 7 Subordinated Claim against Twin Oaks LP; and (y) shall not receive or retain any distribution on account of its Class TOLP 7 Subordinated Claim under the Subplan for Twin Oaks LP.

      (iii)    *Voting*: Class TOLP 7 is Impaired. The holders of Class TOLP 7 Allowed Subordinated Claims against Twin Oaks LP are conclusively deemed to reject the Subplan for Twin Oaks LP pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

(h)    <u>Class TOLP 8—Equity Interests</u>

      (i)    *Treatment*: On the Effective Date, the Class TOLP 8 Equity Interests in Twin Oaks LP shall be cancelled, and extinguished and discharged and each holder thereof shall not receive or retain any distribution on account of its Class TOLP 8 Equity Interests under the Subplan for Twin Oaks LP.

      (ii)    *Voting*: Class TOLP 8 is Impaired. The holders of the Equity Interests in Twin Oaks LP are conclusively deemed to reject the Subplan for Twin Oaks LP pursuant to section 1126(g) of the Bankruptcy Code, and are not entitled to vote to accept or reject such Subplan.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE SUBPLANS

**Section 4.01.  Acceptance by an Impaired Class**

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, Impaired Classes entitled to vote under a Subplan shall have accepted the applicable Subplan if it is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims that have timely and properly voted to accept or reject the Subplan or if no holder of a Claim with respect to a specific Class for a particular Liquidating Debtor timely submits Ballot that complies with the Disclosure Statement Order indicating acceptance or rejection of this Plan.

**Section 4.02.  Nonconsensual Confirmation**

The Liquidating Debtors may request confirmation under section 1129(b) of the Bankruptcy Code with respect to (a) any Impaired Class of Claims and Equity Interests that have not accepted a Subplan in accordance with sections 1126 and 1129(a)(8) of the Bankruptcy Code and (b) any Class that is deemed to reject the applicable Subplan pursuant to section 1126(g) of the Bankruptcy Code or the terms of the Subplan or otherwise.  The Liquidating Debtors reserve the right, subject to the written approval of the Consultation Parties to amend or modify either Subplan in accordance with Section 11.01 of this Plan to the extent, if any, that Confirmation of the Subplan pursuant to section 1129(b) of the Bankruptcy Code requires such amendment or modification.  If either Subplan is not confirmed, then the Liquidating Debtors reserve the right, subject to the written approval of the Consultation Parties, to either (a) request that other Subplan be confirmed or (b) withdraw such Subplan.  The Liquidating Debtors' inability to confirm or election to withdraw either Subplan shall not impair the Confirmation of the other Subplan.

**Section 4.03.  Limited Deficiency Waiver**

For the avoidance of doubt, the holders of the Allowed Pre-Petition Secured Parties Deficiency Claim agree to waive and withdraw such Claims on the Effective Date only if the respective Class of General Unsecured Claims against a particular Liquidating Debtor votes, as a Class, to accept the Subplan for the relevant Liquidating Debtor.

## ARTICLE V

## IMPLEMENTATION OF THE PLAN

The transactions required to implement the Plan shall be implemented in accordance with this ARTICLE V.

**Section 5.01.  Compromise and Settlement**

Pursuant to Bankruptcy Rule 9019 and Section 13.02 of this Plan, the Plan incorporates the PSA (as approved by the PSA Approval Order) among the Debtors, the Pre-Petition Secured Parties and, the DIP Lender, and Blackstone of all issues relating to the validity, priority, amount, and extent of the claims (as defined in section 101(5) of the Bankruptcy Code) or Claims that Blackstone may have against the Debtors and their estates.  For the avoidance of doubt, to the extent that a provision of the PSA is not expressly incorporated herein, such provision is deemed to be included in the Plan by reference.

**Section 5.02.  Corporate Action**

(a)    ~~Liquidation,~~ Merger ~~and Dissolution~~ of the Merging Debtors into Optim Energy

On the Effective Date, each of the Merging Debtors shall be deemed merged ~~with~~into Optim Energy without further limited liability company action.  Claims against the Merging Debtors, if any, shall become Claims against Optim Energy.  The Equity Interests of each of the

Merging Debtors shall be deemed cancelled and of no further force and effect, and deemed extinguished without any further limited liability company action. The manager of each of the Merging Debtors shall be deemed to have been removed, and each of the Merging Debtors shall be deemed dissolved cease to exist for all purposes without any further limited liability company action.

>   (b)    Transfer of Liquidation Trust Assets

Upon the transfer of the Assets and liabilities in accordance with Section 5.02(a) of this Plan, the Liquidating Debtors shall cause the Liquidation Trust Assets to be transferred to, and vest in, the Liquidation Trust in accordance with Section 5.05(b) of this Plan, on the Effective Date free and clear of Liens, Claims and encumbrances (except for Claims and obligations provided for in the Subplans for the Liquidating Debtors), without any further corporate action.

>   (c)    Liquidation and Dissolution of the Liquidating Debtors

Upon Following the merger of the Merging Debtors into Optim Energy in accordance with Section 5.02(a) of this Plan, and upon the transfer of the Liquidation Trust Assets in accordance with Section 5.05(b) of this Plan, on the Effective Date the Equity Interests of each of the Liquidating Debtors shall be deemed cancelled and of no further force and effect, and deemed extinguished without any further limited liability company or partnership action. The officer and the members of the board of directors of Optim Energy, and the manager of Twin Oaks LP, shall all be deemed to have been removed, and each of the Liquidating Debtors shall be deemed dissolved for all purposes without any further limited liability company or partnership action.

**Section 5.03.  Corporate Governance**

On and after the Effective Date, the Liquidating Debtors' affairs will be managed by and under the direction of the Liquidation Trustee pursuant to the Liquidation Trust Agreement. Within the time determined by the Liquidation Trustee as necessary or appropriate under the circumstances, the Liquidation Trustee shall wind up the affairs of each Liquidating Debtor shall be dissolved without any further action by its former stockholders, officers, members, or directors. The Liquidation Trustee may, in his or her discretion, file all necessary certificates of dissolution and take any other actions necessary or appropriate to effect such dissolution under applicable non-bankruptcy law. All applicable regulatory or governmental agencies shall accept any certificates of dissolution or other papers filed by the Liquidation Trustee on behalf of each Liquidating Debtor and shall take all steps necessary to allow and effect the prompt dissolution as provided herein, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates, except as the Liquidation Trustee may determine in its sole discretion. Upon entry of a Final Decree in each Chapter 11 Case of each Liquidating Debtor, if not previously dissolved, the applicable Liquidating Debtor shall be deemed automatically dissolved and wound up without any further action or formality which might otherwise be required under applicable non-bankruptcy laws.

**Section 5.04.  Funding of Reserves**

On the Effective Date, the Reserves shall be funded with Cash on hand (which is Cash Collateral) and shall be deemed authorized and approved by the Bankruptcy Court pursuant to the Confirmation Order.

**Section 5.05.  Liquidation Trust[2]**

(a)    <u>Creation of the Liquidation Trust</u>

On the Effective Date, the Liquidation Trust shall be created and established by the execution and delivery of the Liquidation Trust Agreement.

(b)    <u>Transfer of the Liquidation Trust Assets</u>

On the Effective Date, the Liquidation Trust Assets shall be deemed irrevocably transferred to the Liquidation Trust free and clear of all Liens, Claims, and encumbrances (except for Liens Claims or obligations provided for in the Plan), for and on behalf of the holders of Allowed Claims), with no reversionary interest in the Liquidating Debtors.

(c)    <u>Purpose of the Liquidation Trust</u>

The Liquidation Trust shall be established for the sole purpose of making distributions to holders of Allowed Claims under the Subplans for the Liquidating Debtors (to the extent such Allowed Claims were not previously paid under the Subplans), and winding up the remaining affairs of the Liquidating Debtors' Estates in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidation Trust.

(d)    <u>Administration of the Liquidation Trust</u>

The Liquidation Trust shall be administered by the Liquidation Trustee pursuant to the Liquidation Trust Agreement and the Subplans for the Liquidating Debtors.

(e)    <u>Powers and Duties of the Liquidation Trustee</u>

The Liquidation Trustee shall be a representative of the Estates of the Liquidating Debtors pursuant to section 1123 of the Bankruptcy Code, shall have the rights and powers set forth in the Liquidation Trust Agreement, and shall be governed in all respects by the terms of the Liquidation Trust Agreement and the Subplans for the Liquidating Debtors.  The Liquidation Trustee shall have reasonable access to the Liquidating Debtors' books and records to the extent necessary to carry out its duties under the Liquidation Trust Agreement.  Subject to the terms of the Liquidation Trust Agreement, the Liquidation Trustee shall be authorized, empowered, and directed to take all actions necessary to comply with the Subplans for the Liquidating Debtors and exercise and fulfill the duties and obligations arising thereunder, including, without

---

[2] This Section 5.05 is a general description of the Liquidation Trust and its provisions.  The Liquidation Trust Agreement shall be included in the Plan Supplement.  To the extent that this Section 5.05 is inconsistent with the Liquidation Trust Agreement, the Liquidation Trust Agreement shall control for all purposes.

limitation, to: (i) act as the trustee for the Liquidation Trust and administer the Liquidation Trust; (ii) take any action necessary to transfer the Liquidation Trust Assets to the Liquidation Trust, establish the Liquidation Trust, and dissolve the Liquidating Debtors in accordance with the Subplans for the Liquidating Debtors and applicable law, including, without limitation, in respect of the establishment of the Liquidation Trust for the allocation of assets, the making of related reserves and the attribution of rights of holders of beneficial interests based on the classification schemes of the applicable Subplans for the Liquidating Debtors; (iii) retain attorneys, advisors, and other professionals as may be necessary and appropriate to perform the duties required of, and the obligations assumed by, the Liquidation Trustee under the applicable Subplans for the Liquidating Debtors and the Liquidation Trust Agreement, and pursuant to Section 5.05(g) of this Plan; (iv) execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Liquidation Trust; (v) open, maintain, and administer bank accounts as necessary to discharge the duties of the Liquidation Trustee under the applicable Subplans for the Liquidating Debtors and the Liquidation Trust Agreement; (vi) administer, sell, liquidate, or otherwise dispose of the Liquidation Trust Assets in accordance with the applicable Subplans for the Liquidating Debtors; (vii) make, on behalf of the Liquidating Debtors and their Estates, all transfers and distributions required to be made pursuant to the Subplans for the Liquidating Debtors on and after the Effective Date, including, without limitation, distributions from the proceeds of the Liquidation Trust Assets; (viii) file and prosecute objections to, and negotiate, settle, or otherwise resolve without Bankruptcy Court approval, any and all Disputed Claims against the Liquidating Debtors and their Estates; (ix) review all Proofs of Claim filed against the Liquidating Debtors and, if warranted, object thereto; (x) represent the Liquidation Trust before the Bankruptcy Court and other courts of competent jurisdiction with respect to matters concerning the Liquidation Trust; (xi) investigate, commence, and prosecute all Causes of Action transferred to the Liquidation Trust under the Subplans for the Liquidating Debtors to judgment or settlement, and take all other necessary and appropriate steps to collect, recover, liquidate, or otherwise reduce such Causes of Action and accounts receivable to Cash; (xii) prepare and file quarterly financial reports with the Bankruptcy Court; and (xiii) comply with applicable orders of the Bankruptcy Court and any other court of competent jurisdiction over the matters set forth herein, and all applicable laws and regulations concerning the matters set forth herein.  The Liquidation Trustee may purchase any insurance the Liquidation Trustee reasonably deems necessary or appropriate for the benefit of the Liquidating Debtors pursuant to the Liquidation Trust Agreement.  The Liquidation Trustee shall have the authority, but not the obligation, to destroy the Liquidating Debtors' books and records following termination of the Liquidation Trust pursuant to Section 5.05(j) of this Plan.

In no event shall the Liquidation Trustee or any agent, employee, attorney, advisor or other professional retained by the Liquidation Trustee have any recourse against the Debtors, the Liquidating Debtors, the Consultation Parties, or any of their respective Related Persons, with respect to compensation for services rendered, and reimbursement for expenses incurred by, the Liquidation Trustee or any agent, employee, attorney, advisor or other professional retained by the Liquidation Trustee, with respect to the administration of the Subplans for the Liquidating Debtors, regardless of whether sufficient Cash or other property remains for payment of such compensation or reimbursement in the Wind-Down Budget at the time such request for compensation or reimbursement is made.

Neither the Liquidation Trustee, nor any other Person or Entity shall have the right to disgorge, avoid or otherwise recover the payments made (or the amounts paid) under this Plan to Blackstone on account of the WC 503(b)(9) Claim or the Blackstone General Unsecured Claims.

(f)    Cash Investments

All Cash held by the Liquidation Trust shall be held in a non-interest-bearing account at domestic bank selected by the Liquidation Trustee and shall not be invested or reinvested.

(g)    Retention of Professionals

The Liquidation Trustee is authorized to retain, employ, and compensate any attorneys, advisors, or other professionals necessary to assist the Liquidation Trustee in carrying out its duties under this Plan and the Liquidation Trust Agreement, without further order of the Bankruptcy Court.  The past or current retention of any Professional in the Chapter 11 Cases shall not be asserted by any party in interest as a basis to disqualify such Professional from being retained by the Liquidation Trust.  From and after the Effective Date, the Liquidation Trustee, for and on behalf of the Liquidation Trust, shall pay in Cash the reasonable legal fees and expenses incurred by the professionals retained by the Liquidation Trustee pursuant to the Wind-Down Budget, in the ordinary course of business and without any further notice to or action, order or approval of the Bankruptcy Court.  For the avoidance of doubt, any requirement that a professional retained by the Liquidation Trustee comply with sections 327 through 331 and/or 1103 of the Bankruptcy Code in seeking compensation for services rendered, for and on behalf of the Liquidation Trust, shall terminate.

In no event shall the Liquidation Trustee or any agent, employee, attorney, advisor or other professional retained by the Liquidation Trustee have any recourse against the Debtors, the Liquidating Debtors, the Consultation Parties, or any of their respective Related Persons, with respect to compensation for services rendered, and reimbursement for expenses incurred by, the Liquidation Trustee or any agent, employee, attorney, advisor or other professional retained by the Liquidation Trustee, with respect to the administration of the Subplans for the Liquidating Debtors, regardless of whether sufficient Cash or other property remains for payment of such compensation or reimbursement in the Wind-Down Budget at the time such request for compensation or reimbursement is made.

(h)    Accounting and Reporting

The Liquidation Trustee shall maintain an accounting of receipts and disbursements with respect to the Liquidation Trust, which shall be open to inspection and review by the Bankruptcy Court and any holder of an Allowed Claim against the Liquidating Debtors, upon reasonable notice to the Liquidation Trustee.  After the Effective Date, the Liquidation Trustee shall continue the reporting obligations for the Estate of each Liquidating Debtor pursuant to U.S. Trustee guidelines until the Bankruptcy Court enters a Final Decree closing each of the Chapter 11 Cases of the Liquidating Debtors.

      (i)      <u>Resignation/Removal of Liquidation Trustee</u>

The Liquidation Trustee for the Liquidation Trust may resign or be removed in accordance with the Liquidation Trust Agreement. Any successor Liquidation Trustee for the Liquidation Trust shall be appointed in accordance with the Liquidation Trust Agreement and subject to the written approval of the Consultation Parties.

      (j)      <u>Termination of the Liquidation Trust; Final Distribution</u>

The Liquidation Trust shall terminate upon the earlier of: (x) satisfaction of all Allowed Claims; (y) the three (3) year anniversary of the Effective Date; or (z) the entry by the Bankruptcy Court of a Final Decree(s) closing each of the Chapter 11 Cases of the Liquidating Debtors, and submission by the Liquidation Trustee of the final financial report to the Bankruptcy Court pursuant to the applicable Subplan for each Liquidating Debtor. On or prior to the date of termination of the Liquidation Trust, the Bankruptcy Court, upon motion by the Liquidation Trustee, may extend the term of the Liquidation Trust for cause shown. Upon termination of the Liquidation Trust and as soon as practicable thereafter, the balance of any Cash and other assets of the Liquidation Trust shall be transferred to the Pre-Petition Secured Parties pursuant to Section 3.02(a)(ii) of this Plan.

      (k)      <u>Governing Law</u>

The establishment of the Liquidation Trust and all transfers to the Liquidation Trust shall be governed by the laws of the State of Delaware.

      (l)      <u>Limitation on Liability</u>

No recourse shall ever be had, directly or indirectly, against the Liquidation Trustee or its officers, directors, agents, employees, attorneys, advisors or other professionals by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, or upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidation Trustee under the Subplans for the Liquidating Debtors or the Liquidation Trust Agreement, or by reason of the creation of any indebtedness by the Liquidation Trustee under the Subplans for the Liquidating Debtors for any purpose authorized by such Subplans. Every undertaking, contract, covenant or agreement entered into in writing by the Liquidation Trustee shall provide expressly against the personal liability of the Liquidation Trustee under the Liquidation Trust Agreement. The Liquidation Trustee and its officers, directors, agents, employees, attorneys, advisors and other professionals shall not be liable for any act they may do, or omit to do under the Liquidation Trust Agreement in good faith and in the exercise of their respective best judgment, and the fact that such act or omission was advised, directed or approved by an attorney acting as counsel for the Liquidation Trustee shall be conclusive evidence of such good faith and best judgment; <u>provided</u>, <u>however</u>, that this Section 5.05(l) shall not apply to any bad faith, fraud, gross negligence or willful misconduct by the Liquidation Trustee under the Liquidation Trust Agreement or its officers, directors, agents, employees, attorneys, advisors or other professionals.

(m)    Reliance on Documents

The Liquidation Trustee may rely, and shall be protected in acting or refraining from acting, upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper Entity.

**Section 5.06.  Causes of Action**

(a)    Preservation of Causes of Action Other Than Avoidance Actions

In accordance with section 1123(b) of the Bankruptcy Code or any corresponding provision of federal or state laws, and except as expressly released by this Plan, the Final DIP Order, the Confirmation Order, the PSA, the PSA Approval Order or other Final Order: (i) on the Effective Date, all Causes of Action shall be transferred to and vest in the Liquidation Trust as part of the Liquidation Trust Assets; and (ii) on and after the Effective Date, all such Causes of Action shall be retained by the Liquidation Trust, and the Liquidation Trustee, for and on behalf of the Liquidation Trust, may, in accordance with the Liquidation Trust Agreement, enforce, sue on, settle, or compromise (or decline to do any of the foregoing) any or all of such Causes of Action; provided, however, that as of the Effective Date, all Avoidance Actions of the Liquidating Debtors and/or the Merging Debtors shall be waived and released.

(b)    No Waiver

Except as otherwise provided in Section 10.02 of this Plan, or as released by the Final DIP Order, the Confirmation Order, the PSA, the PSA Approval Order or other Final Order, nothing in this Plan shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, account receivable, right of setoff, or other legal or equitable right or defense that the Liquidating Debtors, the Merging Debtors or the Liquidation Trustee for and on behalf of the Liquidation Trust, may have or choose to assert on behalf of the Liquidating Debtors, the Merging Debtors or their respective Estates, or the Liquidation Trust, as applicable, under any provision of the Bankruptcy Code or any applicable non-bankruptcy law.  No Person or Entity may rely on the absence of a specific reference in this Plan to any Cause of Action or account receivable against it as an indication that the Liquidating Debtors, the Merging Debtors or the Liquidation Trustee for and on behalf of the Liquidation Trust, will not pursue any and all available Causes of Action or accounts receivable against it, and all such rights to prosecute or pursue any and all Causes of Action or accounts receivable against any such Person or Entity are expressly reserved for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action or accounts receivable upon or after the Confirmation or Consummation of the Subplans for the Liquidating Debtors.

# ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND LEASES

### Section 6.01.   Treatment of Executory Contracts and Unexpired Leases

Except as otherwise expressly provided in (a) the Subplans, (b) the Plan Supplement, or (c) any other filing made before the Confirmation Hearing, all Executory Contracts and Unexpired Leases shall be rejected as of the Effective Date in accordance with, and subject to the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code; provided, however, that this Section 6.01 shall not apply to any Executory Contract and Unexpired Lease that expired or terminated pursuant to its own terms prior to the Petition Date.

### Section 6.02.   Effect of Confirmation Order on Rejection

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order of the Bankruptcy Court pursuant to sections 365 and 1123(b) of the Bankruptcy Code approving the rejection of the Executory Contracts and Unexpired Leases as of the Effective Date and determining that with respect to such rejections, such rejected Executory Contracts and Unexpired Leases no longer benefit the Estates  and that the rejection is in the best interests of the Estates.

### Section 6.03.   Rejection Damages Claims and Objections to Rejection

Claims arising out of the rejection of Executory Contracts or Unexpired Leases pursuant to this Plan must be filed and served pursuant to the procedures specified in the Bar Date Order, or another order of the Bankruptcy Court, no later than thirty (30) days after the Effective Date. Holders of any Claim not filed within such time will be forever barred from asserting such Claim.  Unless otherwise ordered by the Bankruptcy Court or specified in this Plan, all Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be treated as General Unsecured Claims under this Plan.

### Section 6.04.   Preexisting Obligations Under Executory Contracts and Unexpired Leases

The Liquidating Debtors and/or the Merging Debtors reserve the right to assert that rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of obligations owed to the Liquidating Debtors and/or the Merging Debtors under such contracts or leases prior to the rejection of such contracts or leases. Notwithstanding any nonbankruptcy law to the contrary, the Liquidating Debtors and/or the Merging Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, by the contracting Liquidating Debtors and/or the Merging Debtors from counterparties to rejected Executory Contracts and Unexpired Leases.

**Section 6.05.  Reservation of Rights**

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Liquidating Debtors and/or the Merging Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Liquidating Debtors and/or the Merging Debtors have any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of rejection, the Liquidating Debtors and/or the Merging Debtors or the Liquidation Trustee, for and on behalf of the Liquidation Trust, as applicable, shall have ninety (90) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

**Section 7.01.  Amount of Distributions**

Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim to the extent payable in accordance with this Plan.

**Section 7.02.  Method of Distributions**

The Liquidation Trustee, for and on behalf of the Liquidation Trust, shall have the authority to enter into agreements with the Distribution Agent to facilitate the distributions required hereunder.  To the extent the Liquidation Trustee determines to utilize the Distribution Agent to facilitate the distributions under the Plan to holders of Allowed Claims, any such Distribution Agent would first be required to: (a) affirm its obligation to facilitate the prompt distribution of any documents; (b) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required under the Plan; (c) waive any right or ability to setoff, deduct from or assert any Lien or encumbrance against the distributions required under the Plan to be distributed by such Distribution Agent; and (d) post a bond, obtain or surety or provide some other form of security for the performance of its duties, the costs and expenses of procuring which shall be borne by the Liquidation Trust.

The Liquidation Trustee, for and on behalf of the Liquidation Trust, shall pay to any Distribution Agent that is engaged all reasonable and documented fees and expenses of the Distribution Agent without the need for any approvals, authorizations, actions, or consents.  The Distribution Agent shall submit detailed invoices to the Liquidation Trustee for all fees and expenses for which the Distribution Agent seeks reimbursement and the Liquidation Trustee, for and on behalf of the Liquidation Trust shall pay those amounts that it deems reasonable, and shall object in writing to those fees and expenses, if any, that it deems to be unreasonable.  These payments will be made on terms agreed to with the Liquidation Trustee, and will not be deducted from distributions to be made pursuant to the Subplans for the Liquidating Debtors to holders of Allowed Claims receiving distributions from the Distribution Agent.

In the event that the Liquidation Trustee objects to all or any portion of the amounts requested to be reimbursed in the Distribution Agent's invoice, the Liquidation Trustee and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses.  In the event that the Liquidation Trustee and the Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

**Section 7.03.  Delivery of Distributions**

Distributions to holders of Allowed Claims shall be made at the address of the holder of such Claim as indicated in the Claims Register as of the Distribution Record Date.  The Liquidation Trustee or the Distribution Agent, as applicable, shall have no obligation to recognize the transfer of or sale of any Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those holders of Allowed Claims who are holders as of the close of business on the Distribution Record Date.

**Section 7.04.  No Fractional or De Minimis Distributions**

Notwithstanding anything contained herein to the contrary, payments of fractional dollars will not be made.  Whenever any payment of a fraction of a dollar under the applicable Subplan would otherwise be called for, the actual payment made will reflect a rounding down of such fractions.  The Liquidation Trustee or the Distribution Agent, as applicable, shall not be required to make any payment of less than $20.00 on any distribution.

**Section 7.05.  Undeliverable Distributions**

(a)      Holding of Undeliverable Distributions

If any distribution to a holder of an Allowed Claim is returned to the Liquidation Trustee or the Distribution Agent, as applicable, as undeliverable, no further distributions shall be made to such holder unless and until such Liquidation Trustee or Distribution Agent is notified in writing of such holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such holder as soon as practicable.  Undeliverable Distributions shall remain vested in the Liquidation Trust until such time as a distribution becomes deliverable, and shall not be supplemented with any interest, dividends or other accruals of any kind.

(b)      Failure to Claim Undeliverable Distributions

Any holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an Undeliverable Distribution within one hundred eighty (180) days after the distribution is distributed shall be deemed to have waived its Claim for such Undeliverable Distribution and shall be forever barred from asserting any such Claim against the Liquidating Debtors, the Merging Debtor, the Liquidation Trust or their property.  In such cases, notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary, any Cash held for distribution on account of such Undeliverable Distribution shall be property of the

Liquidation Trust, free of any restrictions thereon.  Nothing contained in this Plan shall require the Liquidating Debtors, the Merging Debtors or the Liquidation Trustee, for and on behalf of the Liquidation Trust, or any Distribution Agent to attempt to locate any holder of an Allowed Claim following one hundred eighty (180) days after the distribution is distributed. Notwithstanding any provision herein to the contrary, Undeliverable Distributions that become property of the Liquidation Trust shall be distributed to the holders of the Allowed Pre-Petition Secured Parties Secured Claim following dissolution of the Liquidation Trust in accordance with Section 5.05(j) of this Plan.

### Section 7.06.   Tax Withholding From Distributions

The Liquidation Trustee, for and on behalf of the Liquidation Trust, or the Distribution Agent shall withhold all amounts required by law to be withheld from payments made under this Plan.  Any amounts so withheld from any payment made under the Plan shall be deemed paid to the holder of the Allowed Claim subject to withholding.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any Governmental Unit on account of such distribution, except for taxes withheld from payments made under the Plan.  The Liquidation Trustee or the Distribution Agent has the right, but not the obligation, not to make a distribution until such holder has made arrangements satisfactory to a the Liquidation Trustee or the Distribution Agent for payment of any withholding tax obligations.  If the Liquidation Trustee or the Distribution Agent fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse the Liquidation Trustee or the Distribution Agent.  Notwithstanding any provision in this Plan to the contrary, the Liquidation Trustee or the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms it believes are reasonable and appropriate.  The Liquidation Trustee or the Distribution Agent may require, as a condition to the receipt of a distribution, that the holder complete the appropriate Form W-8 or Form W-9, as applicable to each holder.  If the holder fails to comply with such a request within six (6) months, such distribution shall be deemed an Undeliverable Distribution.  Finally, the Liquidation Trustee or the Distribution Agent reserves the right to allocate all distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

### Section 7.07.   Allocations

Unless otherwise provided in this Plan, distributions in respect of Allowed Claims shall be allocated first to the principal amount (as determined for U.S. federal income tax purposes) of such Allowed Claims, and then, to the extent the consideration exceeds the principal amount of such Allowed Claims, to any portion of such Allowed Claims for accrued but unpaid interest.

**Section 7.08.  Time Bar to Cash Payments**

Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance therein.  Requests for reissuance of any check shall be made in writing directly to the Liquidation Trustee, for and on behalf of the Liquidation Trust, as applicable, or the Distribution Agent by the holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made in writing on or before the later of one hundred eighty (180) days after the Effective Date or ninety (90) days after the date of issuance of such check.  After such date, all Claims in respect of void checks shall be ~~discharged~~extinguished and forever barred and the distribution on account of such Claims shall be treated in accordance with Section 7.05 of this Plan.

**Section 7.09.  Means of Cash Payments**

Any Cash payment to be made pursuant to this Plan will be made in U.S. dollars by checks drawn on or by wire transfer from a domestic bank selected by the Liquidation Trustee, for and on behalf of the Liquidation Trust, or the Distribution Agent.  No post-Effective Date interest shall be paid on Cash distributions hereunder.

**Section 7.10.  Foreign Currency Exchange Rates**

As of the Effective Date, any Claim asserted in currency(ies) other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the mid-range spot rate of exchange for the applicable currency as published in *The Wall Street Journal*, National Edition, the day after the Petition Date.

**Section 7.11.  Setoffs**

The Liquidation Trustee, for and on behalf of the Liquidation Trust, or the Distribution Agent may, pursuant to section 553 of the Bankruptcy Code and applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and Causes of Action the Liquidation Trustee, for and on behalf of the Liquidation Trust, may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claims, rights and Causes of Action that the Liquidation Trustee, for and on behalf of the Liquidation Trust, may possess against such holder.

**Section 7.12.  Claims Paid or Payable by Third Parties**

A Claim shall be reduced in full and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to, or action, order or approval of, the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Liquidation Trustee, for and on behalf of the Liquidation Trust, or the Distribution Agent.  To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment on account of such Claim from a party that is not a the Liquidation Trustee, for and on behalf of the Liquidation Trust, or the Distribution Agent, such holder shall repay, return or deliver any distribution held by or

transferred to the holder to the Liquidation Trustee, for and on behalf of the Liquidation Trust, or the Distribution Agent, to the extent the holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan.

No distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Liquidating Debtors' or the Merging Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Liquidating Debtors' or the Merging Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### Section 8.01.   Prosecution of Objections to Claims

After the Effective Date, subject to the terms of the Liquidation Trust Agreement, the Liquidation Trustee shall have and shall retain any and all rights and defenses that the Liquidating Debtors and/or the Merging Debtors had with respect to any Claim and shall have the exclusive authority to file objections and to settle, compromise, withdraw or litigate to judgment objections to Claims against the Liquidating Debtors and/or the Merging Debtors (except those Allowed by, or released by, this Plan, or by the Final DIP Order, the Confirmation Order or other Final Order).  The Liquidation Trustee shall file objections to any Disputed Claims in accordance with the Bankruptcy Rules on or before the Claims Objection Deadline, as the same may be extended pursuant to the terms of this Plan or order of the Bankruptcy Court.

### Section 8.02.   Estimation of Claims

The Liquidating Debtors, the Merging Debtors and/or the Liquidation Trustee, for and on behalf of the Liquidation Trust, as applicable, may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Liquidating Debtors, the Merging Debtors or the Liquidation Trustee, for and on behalf of the Liquidation Trust, as applicable, previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to any Claim, and during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Debtors, the Merging Debtors or the Liquidation Trustee, for and on behalf of the Liquidation Trust, as applicable, may elect to pursue any supplemental proceedings to object to the allowance and any ultimate payment on

such Claim.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### Section 8.03.   No Distributions on Disputed Claims

Notwithstanding any provision in this Plan to the contrary, no distributions, partial or otherwise, shall be made with respect to a Disputed Claim until all disputes with respect to such Claim are resolved by Final Order.  Subject to the provisions of this Plan, after a Disputed Claim becomes an Allowed Claim, the holder of such an Allowed Claim will receive all distributions to which such holder is then entitled under this Plan.  No post-Effective Date interest shall be paid on distributions hereunder.  If a Creditor incorporates more than one Claim in a Proof of Claim, then: (a) the Claims will be considered one Claim for purposes of this Plan, and (b) unless the Liquidation Trustee, for and on behalf of the Liquidation Trust, otherwise agrees no Claim will be bifurcated into an Allowed portion and a Disputed portion.

### Section 8.04.   Reserve of Cash for Disputed Claims

On the Effective Date, the Liquidating Debtors Claims Reserve shall be held, in part, for the benefit of holders of Disputed Claims, if any.  As Disputed Claims are resolved, the Liquidation Trustee, for and on behalf of the Liquidation Trust, or the Distribution Agent, as applicable, shall make distributions under the Subplans to holders of Allowed Claims and the Liquidating Debtors Claims Reserve shall be adjusted accordingly; provided, however, that the Liquidating Debtors Claim Reserve shall be approved by the Bankruptcy Court in the Confirmation Order, and that such amount shall be binding on all holders of Disputed Claims.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN

### Section 9.01.   Conditions Precedent to Confirmation

It shall be a condition to Confirmation of either Subplan that the following conditions shall have been satisfied or waived pursuant to Section 9.04 of this Plan:

(i)     the PSA Approval Order shall ~~have been entered by the Bankruptcy Court on the docket of the Chapter 11 Cases, in form and substance acceptable to the Liquidating Debtors and/or the Merging Debtors, and the Consultation Parties~~<u>not have been vacated or otherwise modified</u>, and such order shall not be subject to a stay;

(ii)    the Disclosure Statement Order shall have been entered by the Bankruptcy Court on the docket of the Chapter 11 Cases, in form and substance acceptable to the Liquidating Debtors and/or the Merging Debtors, and the Consultation Parties, and such order shall not be subject to a stay; and

43

(iii)    the PSA shall not have been breached and the reconciliation of the AC General Unsecured Claims (as defined in the PSA) shall have been completed.

## Section 9.02.  Effect of Non-Occurrence of Conditions to Confirmation or Conditions Precedent to the Effective Date

If the conditions in Section 9.01 and Section 9.03 of this Plan are not satisfied for either Subplan, or if the Confirmation Order is vacated regarding either Subplan, the affected Subplan shall be null and void in all respects and nothing contained in the affected Subplan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Liquidating Debtors and/or the Merging Debtors; (b) prejudice in any manner the rights of the Liquidating Debtors and/or the Merging Debtors, or any other Person or Entity; or (c) constitute an admission, acknowledgment, offer or undertaking by the Liquidating Debtors and/or the Merging Debtors or any other Person or Entity in any respects.

## Section 9.03.  Conditions Precedent to the Effective Date

It shall be a condition to occurrence of the Effective Date of either Subplan that the following conditions shall have been satisfied or waived pursuant to Section 9.04 of this Plan:

(i)    all conditions precedent to Confirmation have been satisfied;

(ii)    the Confirmation Order shall have been entered by the Bankruptcy Court on the docket of the Chapter 11 Cases, in form and substance acceptable to the Liquidating Debtors and/or the Merging Debtors, and the Consultation Parties, and such order shall not be subject to a stay;

(iii)    all financing provided to the Liquidating Debtors and/or the Merging Debtors, pursuant to section 364 of the Bankruptcy Code, including the DIP Facility Claims, shall have been paid or replaced, or other arrangements to the lenders providing such financing in their discretion regarding the repayment and termination of such financing shall have been made;

(iv)    the Liquidation Trust shall have been formed and the Liquidation Trust Agreement, in form and substance acceptable to the Liquidating Debtors and/or the Merging Debtors, and the Consultation Parties, shall have been executed and become enforceable;

(v)    the appointment of the Liquidation Trustee shall have been confirmed pursuant to an order of the Bankruptcy Court, which may be the Confirmation Order and which shall not be subject to a stay;

(vi)    the Reserves shall have been fully funded; and

(vii)    all other actions and documents necessary to implement the provisions of this Plan to be effectuated on or before the Effective Date shall be

44

reasonably satisfactory to the Liquidating Debtors and/or the Merging Debtors, and the Consultation Parties.

**Section 9.04.  Waiver of Conditions Precedent**

The Liquidating Debtors and/or the Merging Debtors, with the written approval of the Consultation Parties, may waive any of the conditions precedent set forth in Section 9.01 and Section 9.03 of this Plan in whole or in part at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to confirm and/or consummate this Plan.

**ARTICLE X**

**EFFECT OF CONFIRMATION OF THIS PLAN**

**Section 10.01. Effect of Plan on Claims Against and Equity Interests in the Liquidating Debtors and the Merging Debtors**

**Except as otherwise provided for herein and effective as of the Effective Date: (a) the rights afforded in this Plan and the treatment of all Claims against and Equity Interests in the Liquidating Debtors and the Merging Debtors shall be in exchange for and in complete satisfaction, and release of all Claims against and Equity Interests in, their property and Estates of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date; (b) this Plan shall bind all holders of Claims against and Equity Interests in the Liquidating Debtors and the Merging Debtors, notwithstanding whether any such holders failed to vote to accept or reject this Plan or voted to reject this Plan; (c) the Liquidating Debtors and the Merging Debtors shall be deemed released under and to the fullest extent provided under the Bankruptcy Code from any and all Claims against and Equity Interests, of any kind or nature whatsoever, and all Claims against and Equity Interests in the Liquidating Debtors and the Merging Debtors, their property and Estates shall be satisfied and released in full, and the Liquidating Debtors' and the Merging Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Liquidating Debtors and the Merging Debtors, their Estates, their successors and assigns including the Liquidation Trust, and their assets and properties any and all Claims, Equity Interests, damages, debts, and other liabilities based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date; provided, however, that this Section 10.01 shall not satisfy or release any claim(s) against and equity interest(s) in the ~~Reorganizing Debtors or the~~ Reorganized Debtors~~, as applicable~~.**

**Section 10.02. Certain Releases by the Liquidating Debtors and the Merging Debtors**

**Notwithstanding anything contained herein to the contrary, as of the Effective Date, and to the fullest extent authorized by applicable law, for good and valuable consideration, the adequacy of which is hereby confirmed, the Released Parties are deemed released ~~and~~**

45

~~discharged~~ by the Liquidating Debtors and the Merging Debtors, their Estates and any Person or Entity seeking to exercise the rights of the Liquidating Debtors, the Merging Debtors or their Estates (including the Liquidation Trustee or any Distribution Agent) from any and all claims, obligations, suits, judgments, damages, demands, debts, remedies, Causes of Action, rights of setoff, other rights, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws, Avoidance Actions, including any derivative claims, asserted or that could possibly have been asserted directly or indirectly on behalf of the Liquidating Debtors, the Merging Debtors or their Estates or their Affiliates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, and any and all Causes of Action asserted or that could possibly have been asserted on behalf of the Liquidating Debtors, the Merging Debtors or their Estates or their Affiliates (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Entity, based on or in any way relating to, or in any manner arising from, in whole or in part, the Liquidating Debtors, the Merging Debtors or their Estates or their Affiliates, the conduct of the Liquidating Debtors' and the Merging Debtors' businesses, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the PSA, the Disclosure Statement or the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the PSA, the Disclosure Statement or the Plan, the filing and prosecution of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the purchase, sale, or rescission of the purchase or sale of any Security of the Liquidating Debtors or the Merging Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Liquidating Debtors, the Merging Debtors their Estates or their Affiliates, on the one hand, and any Released Party, on the other hand, prepetition contracts and agreements with one or both Liquidating Debtors, the Merging Debtors or any other act or omission, transaction, agreement, event, or other occurrence taking place before the Effective Date; <u>provided</u> that to the extent that <s>a</s><u>any such</u> claim or Cause of Action is determined by a Final Order to have resulted from fraud, gross negligence or willful misconduct of a Released Party, such claim or Cause of Action shall not be so released against such Released Party.  Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release <u>the rights of Blackstone or the Pre-Petition Secured Parties under the Third Amended Plan, as confirmed, the contractual rights and obligations of Twin Oaks LP and Major Oak under the Twin Oaks Purchase Agreement (as defined in the PSA),</u> any obligations arising on or after the Effective Date of any party under the PSA<u>, the PSA</u> Approval Order,<u> this</u> Plan, the Liquidation Trust Agreement or the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 10.02, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by this Section 10.02; (c) in the best interests of the Liquidating Debtors, the Merging Debtors their Estates and all

holders of Claims and Equity Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any Entity asserting any claim or Cause of Action released by this Section 10.02.

**Section 10.03. Certain Releases by Holders of Claims and Equity Interests**

Notwithstanding anything contained herein to the contrary, as of the Effective Date, and to the fullest extent authorized by applicable law, the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, remedies, Causes of Action, rights of setoff, other rights, and liabilities whatsoever, whether for tort, contract, violations of federal or state securities laws, Avoidance Actions, including any derivative claims, asserted or that could possibly have been asserted directly or indirectly on behalf of the Releasing Parties or their Affiliates, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, and any and all Causes of Action asserted or that could possibly have been asserted on behalf of the Releasing Parties or their Affiliates (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Entity, based on or in any way relating to, or in any manner arising from, in whole or in part, the Liquidating Debtors, the Merging Debtors their Estates or their Affiliates, the conduct of the Liquidating Debtors' or the Merging Debtors' businesses, the formulation, preparation, solicitation, dissemination, negotiation, or filing of the PSA, the Disclosure Statement or the Plan or any contract, instrument, release, or other agreement or document created or entered into in connection with or pursuant to the PSA, the Disclosure Statement or the Plan, the filing and prosecution of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the purchase, sale, or rescission of the purchase or sale of any Security of the Liquidating Debtors or the Merging Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any of the Liquidating Debtors or the Merging Debtors, their Estates or their Affiliates, on the one hand, and any Released Party, on the other hand, prepetition contracts and agreements with one or both Liquidating Debtors or the Merging Debtors, or any other act or omission, transaction, agreement, event, or other occurrence taking place before the Effective Date; provided that to the extent that a any such claim or Cause of Action is determined by a Final Order to have resulted from fraud, gross negligence or willful misconduct of a Released Party, such claim or Cause of Action shall not be so released against such Released Party. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release the rights of Blackstone or the Pre-Petition Secured Parties under the Third Amended Plan, as confirmed, the contractual rights and obligations of Twin Oaks LP and Major Oak under the Twin Oaks Purchase Agreement (as defined in the PSA), any obligations arising on or after the Effective Date of any party under the PSA, the PSA Approval Order, this Plan, the Liquidation Trust Agreement or the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

47

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Section 10.03, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by this Section 10.03; (c) in the best interests of the Liquidating Debtors, the Merging Debtors or their Estates and all holders of Claims and Equity Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any Entity granting a release under this Section 10.03 from asserting any claim or Cause of Action released by this Section 10.03.

Section 10.04. Exculpation

Effective as of the Effective Date and to the fullest extent authorized by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim except to the extent determined in a Final Order to have resulted from actual fraud, gross negligence or willful misconduct of such Exculpated Party. The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Section 10.05. Injunction

Except as otherwise provided herein or in the Confirmation Order, from and after the Effective Date and to the fullest extent authorized by applicable law, all Persons are, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined and forever barred from taking any of the following actions relating to one or more of the Debtors or the Chapter 11 Cases against, as applicable, the Released Parties and/or the Exculpated Parties and their respective properties and Assets: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any claims (as defined in section 101(5) of the Bankruptcy Code), Claims or Equity Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to any such claims, Claims or Equity Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to any such claims, Claims or Equity Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of or in connection with or with respect to any such claims, Claims or Equity Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or

with respect to any such claims, Claims or Equity Interests released, exculpated or settled pursuant to the PSA, the PSA Approval Order, the Plan or the Confirmation Order.

## Section 10.06. Protection Against Discriminatory Treatment

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Liquidating Debtor or Merging Debtor, or any Person or Entity (including, without limitation, the Liquidation Trustee for and on behalf of the Liquidation Trust, and the Distribution Agent, as applicable) with which a Liquidating Debtor or Merging Debtor has been or is associated, solely because such Liquidating Debtor or Merging Debtor was a debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases ~~but before such Liquidating Debtor or Merging Debtor was granted a discharge~~) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

## Section 10.07. Release of Liens

Except as otherwise provided herein, in the Confirmation Order, or in any contract, instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates  shall be fully released, and settled ~~and discharged~~, and all of the rights, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidation Trust.

## Section 10.08. Cancellation of Securities and Notes Against the Liquidating Debtors and the Merging Debtors

So long as the treatments provided for in, and the distributions contemplated by, ARTICLE II and ARTICLE III of this Plan are effectuated or made, on the Effective Date, but subject to this Section 10.08 and the introductory paragraph to ARTICLE III of this Plan, each of (a) the Pre-Petition Reimbursement Agreement; (b) the DIP Credit Agreement; (c) the Equity Interests in the Liquidating Debtors and the Merging Debtors; and (d) any other notes, bonds, indentures, certificates or other instruments or documents evidencing or creating any Claims or Equity Interests that are Impaired by this Plan, shall be cancelled and deemed terminated and satisfied ~~and discharged~~ solely with respect to the Liquidating Debtors and/or the Merging Debtors, and the holders thereof shall have no further rights or entitlements in respect thereof against the Liquidating Debtors and/or the Merging Debtors, except the rights to receive the distributions, if any, to which the holders thereof are entitled under this Plan.

## ARTICLE XI

## MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN

## Section 11.01. Modification of a Subplan

The Liquidating Debtors and/or the Merging Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, and subject to the written approval of the

Consultation Parties, to amend or modify this Plan before the entry of the Confirmation Order, subject to the limitations set forth herein.  After entry of the Confirmation Order, the applicable Liquidating Debtor(s) and/or Merging Debtor(s) may amend or modify the Plan, subject to the written approval of the Consultation Parties and in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistency in such Subplan in such manner as may be necessary to carry out the purpose and intent of the Subplan.

Entry of a Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and does not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

## Section 11.02. Revocation or Withdrawal of Plan

The Liquidating Debtors and/or the Merging Debtors, as applicable, reserve the right, subject to the written approval of the Consultation Parties and subject to the PSA and PSA Approval Order, to revoke or withdraw this Plan or either Subplan before the Confirmation Date and to file subsequent chapter 11 Subplans.  If a Liquidating Debtor revokes or withdraws a Subplan, or if Confirmation or Consummation does not occur with respect to either Subplan, then: (a) the affected Subplan will be null and void in all respects; (b) any settlement or compromise embodied in the Subplan, or rejection of Executory Contracts or Unexpired Leases effected by the Subplan, and any document or agreement executed pursuant hereto shall be null and void in all respects; and (c) nothing contained in the affected Subplan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the affected Liquidating Debtor; (ii) prejudice in any manner the rights of the affected Liquidating Debtor or any other Person or Entity; or (iii) constitute an admission, acknowledgment, offer or undertaking by the affected Liquidating Debtor or any other Person or Entity in any respects.

## ARTICLE XII

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date for either Subplan, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases after the Effective Date as legally permissible, including jurisdiction to:

(i)     enforce the terms of, and to hear and determine any motions, adversary proceedings, applications, contested matters, or other litigated matters relating to, the PSA and the PSA Approval Order;

(ii)    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim  and the resolution of any and all objections to the allowance or priority of Claims;

(iii)    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

(iv)    resolve any matters related to the rejection of any Executory Contract or Unexpired Lease;

(v)    ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(vi)    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Liquidating Debtors and/or the Merging Debtors that may be pending on the Effective Date;

(vii)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the PSA, this Plan and/or the Disclosure Statement, and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the foregoing;

(viii)    enter and enforce any order related to or otherwise in connection with any sale of property by the Liquidating Debtors and/or the Merging Debtors pursuant to sections 363 or 1123 of the Bankruptcy Code;

(ix)    decide or resolve any Causes of Action arising under the Bankruptcy Code, including, without limitation, Avoidance Actions and Claims under sections 362, 510, 542 and 543 of the Bankruptcy Code;

(x)    resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or either Subplan, or any Person's or Entity's obligations incurred in connection with this Plan or either Subplan;

(xi)    issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the Consummation or enforcement of this Plan or either Subplan, or with the consummation or enforcement of the PSA Approval Order, the Confirmation Order or any other order of the Bankruptcy Court except as otherwise provided herein;

(xii)    resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in ARTICLE X of this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunction and other provisions;

(xiii)    enter and implement such orders as are necessary or appropriate if the PSA Approval Order or the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(xiv)   determine any other matters that may arise in connection with or relate to the PSA, the PSA Approval Order, this Plan, the Disclosure Statement, the Disclosure Statement Order and/or the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the foregoing;

(xv)   enter order(s) and/or Final Decree(s) concluding the Chapter 11 Cases;

(xvi)   hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(xvii)   consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order; and

(xviii)   hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

### Section 13.01. Corporate Action

Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Equity Interests, directors, managers or the officer of the Liquidating Debtors and/or the Merging Debtors or any other Person or Entity (including, without limitation, the Liquidation Trustee for and on behalf of the Liquidation Trust), as applicable, including: (a) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of this Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (c) rejection of Executory Contracts and Unexpired Leases; (d) formation of the Liquidation Trust pursuant to the Liquidation Trust Agreement; (e) the filing of appropriate limited liability company agreements, certificates or articles of incorporation or organization, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (f) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.  All matters provided for in this Plan involving the company structure of the Liquidating Debtors and/or the Merging Debtors, and any limited liability company or partnership action required by the Liquidating Debtors and/or the Merging Debtors in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons or officers of the Liquidating Debtors and/or the Merging Debtors.    The authorizations and approvals

contemplated by this Section 13.01 shall be effective notwithstanding any requirements under nonbankruptcy law.

### Section 13.02. General Settlement of Claims

Unless otherwise set forth in this Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under this Plan, on the Effective Date, the provisions of the PSA (as approved by the PSA Approval Order) and this Plan shall constitute a good-faith compromise and settlement of all (a) Claims against and Equity Interests in the Liquidating Debtors and the Merging Debtors; and (b) all claims (as defined in section 101(5) of the Bankruptcy Code) set forth in the PSA.

### Section 13.03. Preservation of Causes of Action Not Expressly Released

On and after the Effective Date, the Liquidation Trustee, for and on behalf of the Liquidation Trust, retains all rights to commence and pursue, as appropriate, any and all claims or Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases, other than Avoidance Actions or any Causes of Action released under this Plan. The failure to list any potential or existing claims or Causes of Action is not intended to limit the rights of the Liquidation Trustee, for and on behalf of the Liquidation Trust, to pursue any claims or Causes of Action not listed or identified.

Unless a claim or Cause of Action against a Creditor or other Person or Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order, the Liquidating Debtors and/or the Merging Debtors expressly reserve such claim or Cause of Action for later adjudication by the Liquidation Trustee, for and on behalf of the Liquidation Trust (including, without limitation, claims and Causes of Action not specifically identified or which Liquidating Debtors and/or the Merging Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Liquidating Debtors and/or the Merging Debtors at this time or facts or circumstances which may change or be different from those which the Liquidating Debtors and/or the Merging Debtors now believe to exist). No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation or Consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such claims or Causes of Action have been released in this Plan or other Final Order. In addition, the Liquidating Debtors and/or the Merging Debtors expressly reserve for later adjudication by the Liquidation Trustee, for and on behalf of the Liquidation Trust, the right to pursue or adopt any claims alleged in any lawsuit in which the Liquidating Debtors and/or the Merging Debtors are a defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Except as otherwise provided in this Plan or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan (including the PSA and

the PSA Approval Order), in accordance with section 1123(b)(3) of the Bankruptcy Code, any claims, rights, and Causes of Action that the Liquidating Debtors and/or the Merging Debtors may hold against any Person, shall vest in the Liquidation Trust, ~~and~~such that the Liquidation Trustee, for and on behalf of the Liquidation Trust, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and Causes of Action without the consent or approval of any third party and without any further order of court.

Delivery (by any means) of this Plan or Disclosure Statement to any Person or Entity to whom the Liquidating Debtors and/or the Merging Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Liquidating Debtors and/or the Merging Debtors, or a transfer of money or property of the Liquidating Debtors and/or the Merging Debtors, or who has transacted business with the Liquidating Debtors and/or the Merging Debtors, or leased equipment or property from the Liquidating Debtors and/or the Merging Debtors, shall constitute actual notice that such obligation, transfer, or transaction may be reviewed by the Liquidation Trustee, for and on behalf of the Liquidation Trust, subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not: (a) such Person or Entity has filed a Proof of Claim against the Liquidating Debtors and/or the Merging Debtors in their Chapter 11 Cases; (b) such Person's or Entity's Proof of Claim has been objected to by the Liquidating Debtors and/or the Merging Debtors or the Liquidation Trustee, for and on behalf of the Liquidation Trust; (c) such Person's or Entity's Claim was included in the Schedules; (d) such Person's or Entity's scheduled Claim has been amended by the Liquidating Debtors and/or the Merging Debtors or the Liquidation Trustee, for and on behalf of the Liquidation Trust, or has been identified by the Liquidating Debtors and/or the Merging Debtors or the Liquidation Trustee as a Disputed Claim; or (e) such action falls within the list of affirmative Causes of Action in the Plan Supplement.

## Section 13.04. Sales and Use Tax Obligations

Notwithstanding any provision to the contrary in this Plan, nothing shall: (i) affect the ability of the Texas Comptroller of Public Accounts to pursue any non-Debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal or state tax liabilities owed by the Liquidating Debtors and/or the Merging Debtors or their Estates; or (ii) from and after the Effective Date, permit or allow the Liquidation Trustee, for and on behalf of the Liquidation Trust, or the Liquidation Trust to violate any state or federal law relating to federal or state tax liabilities or duties.

## Section 13.05. Environmental and Other Liabilities to Governmental Units

Nothing in this Plan or entry of the Confirmation Order discharges, releases, resolves, exculpates, precludes, or enjoins: (a) any environmental liability to any Governmental Unit that is not a Claim as defined in section 101(5) of the Bankruptcy Code; (b) any environmental Claim of any Governmental Unit arising on or after the Effective Date; (c) any environmental liability to any Governmental Unit on the part of any entity as the owner or operator of property after the Effective Date; (d) any liability to the United States on the part of any person or entity other than

the Debtors or the Liquidation Trust; or (e) any valid right of setoff or recoupment of any Governmental Unit.

## Section 13.06. Section 1146(a) Exemption

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording tax, or other similar tax or governmental assessment. Upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax, fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

## Section 13.07. Elimination of Vacant Classes

Any Class of Claims or Equity Interests that is not populated as of the commencement of the Confirmation Hearing by an Allowed Claim or Equity Interest, or a Claim or Equity Interest that is temporarily allowed under Bankruptcy Rule 3018, shall be deemed eliminated from the applicable Subplan for purposes of: (a) voting to accept or reject the Subplan; and (b) determining the acceptance or rejection of the Subplan by such Class pursuant to sections 1129(a)(8) and 1129(a)(10) of the Bankruptcy Code.

## Section 13.08. Intercompany Claims

Pursuant to Bankruptcy Rule 9019 (and consistent with the provisions of Section 13.02 of this Plan), the Liquidating Debtors and the Merging Debtors propose a good faith compromise and settlement of the Intercompany Claims pursuant to the provisions this Plan.  On the Effective Date, the Intercompany Claims shall be cancelled, extinguished and ~~discharged~~released and the holders of Intercompany Claims shall not receive or retain any property under this Plan on account of such Intercompany Claims.

## Section 13.09. Additional Documents

On or before the Effective Date, the Liquidating Debtors and/or the Merging Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Subplans.  The Liquidating Debtors and/or the Merging Debtors, and all holders of Claims and Equity Interests receiving distributions pursuant the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

## Section 13.10. Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**Section 13.11. Reservation of Rights**

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order.  Neither this Plan, any statement or provision contained in this Plan, nor any action taken or not taken by any Liquidating Debtor or Merging Debtor with respect to the PSA, this Plan, the Disclosure Statement, the Confirmation Order or the Plan Supplement, shall be or shall be deemed to be an admission or waiver of any rights of the Liquidating Debtors and/or the Merging Debtors with respect to the holders of Claims or Equity Interests prior to the Effective Date.

**Section 13.12. Notices**

Except as otherwise set forth in this Plan, all notices or requests in connection with this Plan shall be in writing and will be deemed to have been given when received by personal delivery, e-mail, overnight courier or first class mail and addressed to:

| | |
|---|---|
| **If to the Liquidating Debtors and/or the Merging Debtors:** | Bracewell & Giuliani LLP<br>CityPlace I, 34th Floor<br>185 Asylum Street<br>Hartford, Connecticut 06103<br>Attn: Kurt Mayr<br>Email: kurt.mayr@bgllp.com<br><br>with a copy to:<br><br>Bracewell & Giuliani LLP<br>1251 Avenue of Americas, 49th Floor<br>New York, New York 10020<br>Attn: Robert G. Burns<br>Email: robert.burns@bgllp.com |
| **If to the Liquidation Trustee, for and on behalf of the Liquidation Trust:** | [——]Nick Rahn<br>c/o Competitive Power Ventures, Inc.<br>8403 Colesville Road<br>Silver Spring, Maryland 20910 |
| **If to the Consultation Parties:** | Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, New York 10006<br>Attn: Lindsee P. Granfield<br>Email: lgranfield@cgsh.com<br>    Luke A. Barefoot<br>Email: lbarefoot@cgsh.com |

**Section 13.13. Term of Injunctions or Stay**

**Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

**Section 13.14. Entire Agreement**

Except as otherwise indicated, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan. To the extent the Confirmation Order is inconsistent with this Plan, the Confirmation Order shall control for all purposes.

**Section 13.15. Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full in this Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Liquidating Debtors' and/or the Merging Debtors' counsel at the address above or by downloading such exhibits and documents from the Claims and Solicitation Agent's website at https://cases.primeclerk.com/optim/Home-DocketInfo or the Bankruptcy Court's website at www.deb.uscourts.gov.

**Section 13.16. Severability**

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Liquidating Debtors and/or the Merging Debtors, and subject to the written approval of the Consultation Parties, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms; (b) integral to this Plan; and (c) non-severable and mutually dependent.

**Section 13.17. Substantial Consummation**

On the Effective Date, this Plan shall be deemed to be substantially consummated under

sections 1101 and 1127(b) of the Bankruptcy Code.

Dated: ~~September~~October _____, 2015
Wilmington, Delaware

Optim Energy, LLC

By: _____
     Name: Nicholas R. Rahn
     Title:  Chief Executive Officer


Optim Energy Marketing, LLC

By: _____
     Name: Nicholas R. Rahn
     Title:  Manager


OEM 1, LLC

By: _____
     Name: Nicholas R. Rahn
     Title:  Manager


Optim Energy Generation, LLC

By: _____
     Name: Nicholas R. Rahn
     Title:  Manager


Optim Energy Twin Oaks GP, LLC

By: _____
     Name: Nicholas R. Rahn
     Title:  Manager

Optim Energy Twin Oaks, LP

By Optim Energy Twin Oaks GP, LLC its General Partner

By: _____
     Name: Nicholas R. Rahn
     Title:  Manager

Document comparison by Workshare Compare on Tuesday, October 06, 2015
6:25:44 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DM/4994498/1 |
| Description | DM-#4994498-v1-Optim_-_Plan_of_Liquidation_(SOLICITATION_VERSION) |
| Document 2 ID | PowerDocs://DM/5003411/4 |
| Description | DM-#5003411-v4-Optim_-_Second_Amended_Plan_of_Liquidation |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 110 |
| Deletions | 111 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 223 |